# EXHIBIT 1

Filed
**Superior Court of California,**
**Sacramento**
09/06/2024
leurgac
By _____, Deputy
24CV017784

1  Kurt A. Kappes (SBN CA 146384)
   Alexander L. Nowinski (SBN CA 304967)
2  GREENBERG TRAURIG, LLP
   400 Capitol Mall, Suite 2400
3  Sacramento, California 95814
   Telephone: 916.442.1111
4  Facsimile: 916.448.1709
   kappesk@gtlaw.com
5  alexander.nowinski@gtlaw.com

6  Jason H. Kislin (*pro hac vice pending*)
   GREENBERG TRAURIG, LLP
7  500 Campus Drive, Suite 400
   Florham Park, New Jersey 07932
8  Telephone: 973.360.7900
   Facsimile: 973.301.8410
9  kislinj@gtlaw.com

10

11 Attorneys for Plaintiff
   ZORYA RESEARCH AND PRODUCTION ENTERPRISES

12

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
14
                        **COUNTY OF SACRAMENTO**
15

16 ZORYA RESEARCH AND PRODUCTION          Case No.:
17 ENTERPRISES,
                                          **COMPLAINT FOR RECOGNITION AND**
18        Plaintiff,                      **ENFORCEMENT OF FOREIGN-COUNTRY**
                                          **MONEY JUDGMENT IN THE AMOUNT OF**
19 v.                                     **$275,842,216.34 PLUS FEES**

20 RUSSIAN FEDERATION; and DOES 1-20,     [Uniform Foreign-Country Money Judgments
   inclusive,                             Recognition Act, Cal. Civ. Proc. Code §§ 1713 et
21                                         seq.]
          Defendant.
22

23

24

25

26

27

28

                                          1
     COMPLAINT FOR RECOGNITION AND ENFORCEMENT OF FOREIGN-COUNTRY MONEY JUDGMENT
                          PURSUANT TO CCP §§ 1713 et seq.

BY FAX

Plaintiff ZORYA RESEARCH AND PRODUCTION ENTERPRISES alleges the following

causes of action against Defendant RUSSIAN FEDERATION, and DOES 1 THROUGH 20, inclusive:

### GENERAL ALLEGATIONS

1.      Plaintiff Zorya Research and Production Enterprises ("Plaintiff" or "Zorya") is a limited

company duly organized and existing under the laws of Ukraine with its principal place of business

located in the southern part of Rubizhne, Luhansk Oblast, in eastern Ukraine.  Until the invasion,

destruction and occupation by the Russian Federation (the "RF unlawful expropriation"), which took

place in or about May 2022, Zorya owned and operated a complex industrial site that produced inorganic

chemicals, explosives and other intermediate products, including, but not limited to: crude benzene;

nitration units; industrial explosives; CNT and MWT isomers; urea-formaldehyde and pheno-

formaldehyde resins; polymer products; and fluoroplastic equipment (the "Zorya Complex").

2.      Defendant Russian Federation ("Defendant" or "Russian Federation") invaded Ukraine,

and specifically Luhansk Oblast, in February 2022, and engaged in the unlawful expropriation of the

Zorya Complex.  Defendant continues to engage in commercial activity in the United States, in

California, and within the County of Sacramento.

3.      This Court has jurisdiction over this action because the amount in controversy exceeds the

Court's jurisdictional minimum.  Pursuant to California Civil Procedure Code section 395.5, venue is

proper in the Superior Court of California, County of Sacramento because the Russian Federation

continues to engage in commercial activity in the United States, in California, and within the County of

Sacramento.

4.      In February 2022, the Russian Federation invaded Ukraine and, specifically, Luhansk

Oblast.  Over the next several months, the Russian Federation engaged in constant shelling and active

hostilities against the Luhansk region and, specifically, Rubizhne and the Zorya Complex.  In or about

March 2022, with the Russian Federation shelling and hostilities directed toward Rubizhne and the Zorya

Complex intensifying, Zorya was forced to evacuate the Zorya Complex, sending all of its personnel and

their families to safer areas controlled by Ukrainian forces.

2

COMPLAINT FOR RECOGNITION AND ENFORCEMENT OF FOREIGN-COUNTRY MONEY JUDGMENT
PURSUANT TO CCP §§ 1713 et seq.

5.     In or about May 2022, the Russian Federation took control of Rubizhne and occupied the Zorya Complex. The Russian Federation troops raised the Russian Federation flag over the Zorya Complex and issued a press release touting its takeover and occupation of the Zorya Complex. The Russian Federation also released videos showing its troops entering and occupying the Zorya Complex. As of the date of this filing, the Russian Federation remains in control of Rubizhne and the Zorya Complex, as confirmed through various reports in local and international media.

6.     At the time of the RF unlawful expropriation, Zorya owned assets worth approximately $30 million, including significant real estate, improvements on the real estate, and substantial physical assets related to the operation of the Zorya Complex. In addition, Zorya generated approximately $27.9 million of income per year. As a result of the RF unlawful expropriation, the Zorya Complex completely shut down and Zorya has no operations, no ability to operate and no ability to possess or control the Zorya Complex or its assets. Indeed, in addition to occupying and possessing the Zorya Complex, the Russian Federation destroyed virtually all the facilities that existed on the Zorya Complex, including the housing and nearly all other improvements on the real property. Thus, even if Zorya could access the Zorya Complex, which it cannot because of the Russian Federation's occupation and possession, the Zorya Complex is completely non-operational.

7.     Accordingly, in or about October 2022, Zorya filed a bankruptcy petition in the Economic Court of Zaporizhzhya Region. Consistent with the framework of the bankruptcy petition, in or about August 2023, Zorya filed a claim for damages with the First Circuit Court of Zaporizhzhia Oblast against the Russian Federation in connection with the RF expropriation of the Zorya Complex. In its complaint, Zorya sought damages in the amount of $275,842,216,34, including the value of the property and assets it lost and the lost profits it suffered as a result of the RF unlawful expropriation. That damage amount was supported by independent valuation reports.

8.     The Commercial Court of Zaporizhzhia Region (the "Ukrainian Court") accepted Zorya's

3

COMPLAINT FOR RECOGNITION AND ENFORCEMENT OF FOREIGN-COUNTRY MONEY JUDGMENT
PURSUANT TO CCP §§ 1713 et seq.

statement of claim on August 23, 2023, and opened proceedings under its general claim procedure. Zorya served its pleadings and all subsequent procedural orders on the Russian Federation consistent with the direction of the Ukrainian Court and International and local laws and rules. Despite being properly served and placed on notice of the lawsuit against it, the Russian Federation failed and refused to appear to defend itself against its expropriation of the Zorya Complex. Instead of granting Zorya a default judgment, however, the Ukrainian Court considered Zorya's application on the merits, including whether the court had jurisdiction over the Russian Federation and the impact, if any, on the question of the Russian Federation's sovereign immunity. After analyzing local and international law, the Ukrainian Court determined that it had jurisdiction, and that sovereign immunity did not apply. The Court also analyzed the damages sought by Zorya and, ultimately, entered a judgment in favor of Zorya and against the Russian Federation in the amount of $275,842,216.34 (the "Ukraine Judgment"). The damages awarded by the Ukrainian Court are comprised of losses related to the physical assets located at the Zorya Complex, including the value of the land itself, and losses for the lost profits associated with Zorya's inability to operate the Zorya Complex.

9.      Attached hereto as **Exhibit A** is a true and correct certified copy of the Ukraine Judgment and a certified English translation thereof.

## **FIRST CAUSE OF ACTION**

(Recognition and Enforcement of Ukraine Judgment under Cal. Civ. Proc. Code § 1713 et seq.)

10.     Plaintiff incorporates by reference each and every allegation set forth in the foregoing Paragraphs as though fully set forth herein and further alleges as follows:

11.     Plaintiff seeks to have the Ukraine Judgment recognized pursuant to California's Uniform Foreign-County Money Judgments Recognition Act ("UFMJRA"), Cal. Civ. Proc. Code §§ 1713 et seq.

12.     Section 1715(a) of the UFMJRA provides that "[e]xcept as otherwise provided in subdivision (b), this chapter applies to a foreign-country judgment to the extent that the judgment both: (1) Grants or denies recovery of a sum of money [and] (2) Under the law of the foreign country where rendered, is final, conclusive, and enforceable." Cal. Civ. Proc. Code § 1715(a).

13.     Section 1718(a) of the UFMJRA provides that "[i]f recognition of a foreign-country

judgment is sought as an original matter, the issue of recognition shall be raised by filing an action seeking recognition of the foreign-country judgment." Cal. Civ. Proc. Code § 1718(a).

14.    Section 1719 of the UFMJRA provides that:

> If the court in a proceeding under Section 1718 finds that the foreign-country judgment is entitled to recognition under this chapter then, to the extent that the foreign-country judgment grants or denies recovery of a sum of money, the foreign-country judgment is both of the following: (a) Conclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive [and] (b) Enforceable in the same manner and to the same extent as a judgment rendered in this state. Cal. Civ. Proc. Code § 1719.

15.    The Ukraine Judgment grants recovery of a sum of money, but is not a judgment for taxes, a fine, or other penalty. The Ukraine Judgment compensates Plaintiff for the loss of physical assets and reasonably expected, independently-confirmed profits.

16.    The Ukraine Judgment is final, conclusive, and enforceable under the law of Ukraine, where it was rendered. The Russian Federation had twenty-five days to appeal the Ukraine Judgment, which issued November 28, 2023 and entered into force on December 22, 2023. The Russian Federation did not file an appeal and the Ukraine Judgment is now final and enforceable.

17.    The Ukraine Judgment was rendered under a judicial system that provided an impartial tribunal and procedures compatible with the requirements of due process of law. To effectuate service on the Russian Federation and provide the Russian Federation with notice of the proceedings and an opportunity to be heard and oppose the claims, the Ukraine Court ordered Plaintiff to have all relevant pleadings and procedural orders translated from Ukrainian to Russian and delivered via DHL carrier to the Russian Federation's Embassies in Ukraine, the Swiss Confederation, the Federal Republic of Germany, and Belgium. In addition, the Ukraine Court notified the Russian Federation of the date, time, and place of the hearing of the case through a public announcement on the official website of the judiciary of Ukraine, as well as the opportunity to participate via video conference and oppose the relief requested without being physically present in the Ukraine Court.

18.    The Ukraine Court had personal jurisdiction over Defendant Russian Federation. In addition, the Ukraine Court had jurisdiction over the subject matter of the lawsuit which gave rise to the Ukraine Judgment. The Ukraine Court considered whether the Russian Federation was subject to judicial

1    immunity, taking into account the following: the subject matter of the claim is compensation for damage

2    caused to a legal entity as a result of the armed aggression of the Russian Federation against Ukraine and

3    illegal actions in the occupied territories; the place of damage is the territory of the sovereign state of

4    Ukraine; the damage was caused by the Russian Federation in violation of the United Nations Charter; both

5    Ukraine and the Russian Federation were parties to international treaties at the time of the damage to

6    Plaintiff—specifically The Convention on Legal Assistance (1993), the Agreement on the Procedure for

7    Settlement of Disputes Related to Economic Activities (1992)—which provide that the court of the

8    contracting party in whose territory the act or other circumstance giving rise to the claim for damages took

9    place is competent.

10       19.    An action in California to recognize the Ukraine Judgment is not barred by the applicable

11   statute of limitations.

12       20.    There is no stay of enforcement of the Ukraine Judgment in effect in Ukraine.  No action is

13   pending and no judgment has previously been entered in any proceeding in California based upon the

14   Ukraine Judgment.

15       21.    The Russian Federation is not entitled to immunity under the Foreign Sovereign Immunities

16   Act (28 U.S.C. §§ 1330, 1441, 1602-1611 ("FSIA")) since the underlying claims falls under the FSIA's

17   expropriation exception (28 U.S.C. § 1605(a)), because: (a) Plaintiff's claim and the Ukraine Judgment at

18   issue relates to Plaintiff's property interests in the Zorya Complex; (b) through its invasion and occupation

19   of Rubizhne and the Zorya Complex, the Russian Federation expropriated Plaintiff's property rights; (c)

20   the Russian Federation's conduct violates international law because it constitutes an invasion of a foreign

21   sovereign and a taking of Plaintiff's property without compensation; and (d) the Russian Federation

22   remains in control of the Zorya Complex and the Russian Federation continues to engage in commercial

23   activity in the United States, including but not limited to its purchase of mined uranium from U.S.

24   companies, and its sale and delivery of enriched uranium to U.S. companies.

25       22.    The Russian Judgment meets the requirements of the UFMJRA and it therefore is

26   enforceable in California in the same manner and to the same extent as a judgment rendered in California.

27

28

1

## **PRAYER FOR RELIEF**

2   WHEREFORE, Plaintiff prays for judgment against the Defendant, as follows:

3   1.  For recognition of the Ukraine Judgment as a valid judgment for Plaintiff, and entry of the

4 Ukraine Judgment as a California judgment in an amount of $275,842,216.34, representing the U.S. dollar

5 equivalent of the Ukraine Judgment.

6   2.  For fees associated with commencing and obtaining the Ukraine Judgment, in accordance

7 with applicable law.

8   3.  For post-judgment interest on the Ukraine Judgment, in accordance with applicable law.

9   4.  For such other relief as this Court may deem proper.

10

11 DATED: September 6, 2024     GREENBERG TRAURIG, LLP

12

13           By

14            Kurt A. Kappes
             Jason H. Kislin (*pro hac vice pending*)

15            Alexander L. Nowinski
             Attorneys for Plaintiff

16            ZORYA RESEARCH AND PRODUCTION
             ENTERPRISES

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR RECOGNITION AND ENFORCEMENT OF FOREIGN-COUNTRY MONEY JUDGMENT
PURSUANT TO CCP §§ 1713 et seq.

# EXHIBIT A

*The decision entered into force on December 22, 2023*
*Judge /signature/ O. Yuldashev*
*/seal/: Ukraine\* Economic Court Of Zaporizhzhia Region\* Identification code 03500105*

/stamp/: Copy 1
case No. 26/23/22

/coat of arms of Ukraine/

## ECONOMIC COURT OF ZAPORIZHZHIA REGION

### DECISION
### IN THE NAME OF UKRAINE

November 28, 2023
Zaporizhzhia, Zaporizhzhia region

Case No. 908/1242/22 (908/2670/23)

**Judge Yuldashev Oleksii Oleksiiovych**, having considered the materials of the commercial case on the claim of the Limited Liability Company Research and Production Enterprise Zorya, USREOU code 36999957 (69001, Zaporizhzhia, 2, Peremohy Street)
**to the defendant**: Russian Federation, location: 119991, Moscow, 14 Zhitnaya Street, building 1, ISO code: RU/RUS 643, USREOU code: unknown, official e-mail address: unknown, e-mail address: unknown;

location of the Embassy of the Russian Federation in <u>Ukraine</u>: 03049, Kyiv, 27 Povitroflotskyi avenue, tel.: +38 044 248 05 06; +38 044 246 34 69;

location of the Embassy of the Russian Federation in the <u>Swiss Confederation</u>: 3006, Bern, Brunnadernrain 37, tel.: + 41 (0)31/352 05 66; + 41 (0)31/352 64 65; - 41 (0)31/352 05 68, official e-mail address: unknown, e-mail address: <u>consbern@mid.ru; embassy, bern@mid.ru</u>

location of the Embassy of the Russian Federation in <u>Germany</u>: 10117 Berlin, Unter den Linden, 63-65, tel.: + 49-30-229-11-10; + 49-30-229-11-29; + 41-30-229-93-97, official e-mail address: unknown, e-mail address: <u>berlin@mid.ru</u>

location of the Embassy of the Russian Federation in Belgium: Avenue De Fre 66, 1180 Uccle, tel.: +32(0)2 374-34-00, +32(0)2 374-68-86, +32(0)2 375-39-18, +32(0)2 374-57-38 official website: www.belgium.mid.ru, official e-mail address: unknown, e-mail address: amrusbel@skynet.be, amrusbel@inbox.ru
**on** the recovery of UAH 10,087,163,678.13
under case No. 908/1242/22

**on the bankruptcy** of the Limited Liability Company Research and Production Enterprise Zorya
Creditors - 1/ Ayurlex Lawyers Association
2/ Private Joint Stock Company Pokrovske Mine Administration
3/ Trade Capital Fin Limited Liability Company
4/ Public Joint Stock Company MTB Bank

**With the participation of (names of the parties and other persons involved in the case):**
Plaintiff Veiediernikova Olena Serhiivna (via videoconference)

**FOUND:**

On August 22, 2023, the Commercial Court of Zaporizhzhia region has received a claim from Limited Liability Company Research and Production Enterprise Zorya (hereinafter referred to as the Plaintiff) against the Russian Federation for damages in the amount of UAH 10,087,163,678.13.

In support of the stated claims, the plaintiff refers to the fact that the armed aggression of the of the Russian Federation against Ukraine, the temporary occupation, encirclement and seizure of certain territories of the Luhansk region led to damage to the plaintiff in the form of lost as a result of which the plaintiff suffered losses totaling UAH 10,087,163,678.13.

Given the pendency of case No. 908/1242/22 on the bankruptcy of Limited Liability Company Research and Production Enterprise Zorya in the proceedings of the Commercial Court of Zaporizhzhia Region, the claim is considered within the framework of this case.

The Economic Court of Zaporizhzhia region, by its decision dated August 23, 2023, accepted the statement of claim for consideration, opened proceedings in the case under the rules of general action proceedings, and scheduled a preparatory hearing for September 26, 2023.

In determining whether the Russian Federation is subject to judicial immunity in the case under consideration, the court in its ruling dated August 23, 2023, on the opening of the proceedings in the case took into account the following.

Pursuant to part 1 of Article 79 of the Law of Ukraine "On Private International Law", filing a claim against a foreign state, involving a foreign state as a defendant or third party, seizing property owned by a foreign state and located in the territory of Ukraine, applying other means of securing a claim to such property and foreclosing on such property may be allowed only with the consent of the competent authorities of the relevant state, unless otherwise provided by an international treaty of Ukraine or the law of Ukraine.

In this case, the plaintiff filed a lawsuit against, inter alia, the Russian Federation for compensation for damage caused to him as a result of armed aggression and unlawful acts in the temporarily occupied territories by the Russian Federation on the territory of Ukraine.

In this category of disputes (on compensation for damage caused as a result of the armed aggression of the Russian Federation), the foreign defendant state does not enjoy judicial immunity against the consideration of such cases by the Ukrainian courts.

In reaching such conclusions, the court is guided by the fact that the actions of the foreign state violated its sovereign rights, as any foreign state has no right to intervene by armed aggression in another country.

Paragraph 4 of part 1 of Article 2 of the UN charter enshrines the principle that all Members of the United Nations shall refrain in their international relations from the threat or use of force against the territorial integrity or political independence of any State or in any other manner inconsistent with the Purposes of the United Nations.

According to Part 1 of Article 1 of the UN Charter, the United Nations has the purpose of maintaining international peace and security and, to that end, of taking effective collective measures to prevent and remove threats to the peace and acts of aggression or other breaches of the peace, and of bringing about by peaceful means, in accordance with the principles of justice and international law, the settlement or adjustment of international disputes or situations which may lead to a breach of the peace. According to Part 1 of Article 1 of the UN Charter, the United Nations has the purpose to maintain international peace and security, and to that end: to take effective collective measures for the prevention and removal of threats to the peace, and for the suppression of acts of aggression or other breaches of the peace, and to bring about by peaceful means, and in conformity with the principles of justice and international law, adjustment or settlement of international disputes or situations which might lead to a breach of the peace.

International law, in particular the Declaration on Principles of International Law concerning Friendly Relations and Cooperation among States in accordance with the UN Charter dated October 24, 1970, codifies the grounds for limiting the judicial immunity of a foreign state as a result of physical harm to a person or damage to property, the so-called "tort exception". The conditions necessary for the application of the "tort exception" are: 1) the principle of territoriality: the place of action/inaction must be in the territory of the court state; 2) the presence of the author of the action/inaction in the territory of the court state at the time of the action/inaction (agent or official of a foreign state); 3) the action/inaction can probably be attributed to the state 4) liability for the action/inaction is provided for by the provisions of the legislation of the forum state; 5) death, physical harm to a person, damage to property or loss thereof; 6) a causal link between the action/inaction and death, physical harm to a person, damage to property or loss thereof.

In determining whether the Russian Federation is subject to judicial immunity in this case, the court took into account the following: the subject matter of the claim is compensation for damage caused to a legal entity as a result of the armed aggression of the Russian Federation against Ukraine, temporary occupation, encirclement and illegal actions in the occupied territories; the place of damage is the territory of the sovereign state of Ukraine; it is assumed that the damage was caused by the Russian Federation, which violated the

*/QR code/*

principles and purposes enshrined in the UN Charter regarding the prohibition of military aggression committed against another state - Ukraine; the commission of acts of armed aggression by a foreign state is not an exercise of its sovereign rights, but a violation of the obligation to respect the sovereignty and territorial integrity of another state - Ukraine, as enshrined in the UN Charter: The national legislation of Ukraine proceeds from the fact that, as a general rule, damage caused to a person in Ukraine as a result of unlawful actions of any other person (entity) may be compensated by a decision of a Ukrainian court (according to the principle of "general tort").

In addition, the jurisdiction of the Ukrainian courts extends to any legal dispute and any criminal charge. In cases provided for by law, the courts also hear other cases (part 3 of Article 124 of the Constitution of Ukraine). In other words, if the "tort exception" is applied, any dispute arising on its territory between a Ukrainian citizen and a foreign country, including the Russian Federation, may be considered and resolved by a Ukrainian court as a proper and competent court.

Both Ukraine and the Russian Federation were parties to international treaties at the time of the damage to the plaintiff, namely:

- The Convention on Legal Assistance and Legal Relations in Civil, Family and Criminal Matters dated January 22, 1993 (hereinafter referred to as the Convention on Legal Assistance). The said Convention was signed by both Ukraine and the Russian Federation and ratified: Ukraine - in accordance with the Law of Ukraine of November 10, 1994, No. 240/94-BP; the Russian Federation - in accordance with the Federal Law of August 04, 11994, No. 16-ФЗ;

- The Agreement on the Procedure for Settlement of Disputes Related to Economic Activities dated March 20, 1992 (hereinafter referred to as the Agreement). The said Agreement was signed by both Ukraine and the Russian Federation and ratified: Ukraine - in accordance with the resolution of the Verkhovna Rada of Ukraine dated December 19, 1992, No. 2889-XII; the Russian Federation - by the resolution of the Supreme Council of the Russian Federation dated October 9, 1992, No. 3620-1.

As of the date of the court decision in this case, Ukraine, pursuant to the Law of Ukraine dated December 1, 2022, No. 2783-IX, suspended the relations between the Russian Federation and the Republic of Belarus and withdrew from the Convention on Legal Assistance and Legal Relations in Civil, Family and Criminal Matters and the Protocol to the Convention on Legal Assistance and Legal Relations in Civil, Family and Criminal Matters dated January 22, 1993, as well as in accordance with the Law of Ukraine of January 12, 2023, No. 2855-IX withdrew from the Agreement on the Procedure for Settlement of Disputes Related to the Conduct of Economic Activities dated March 20, 1992. However, the court applies these regulations as if they were in force at the time of the disputed legal relationship.

Pursuant to Article 1 of the Convention on Legal Assistance, nationals of each Contracting Party, as well as persons residing in its territory, shall enjoy in the territories of all other Contracting Parties in respect of their personal and property rights the same legal protection as their own nationals. Citizens of each Contracting Party, as well as other persons residing in its territory, shall have the right to apply freely and without hindrance to the courts, prosecutors' offices and other institutions of the other Contracting Parties competent to deal with civil, family and criminal matters (hereinafter referred to as justice institutions), and may appear before them, file petitions, bring lawsuits and perform other procedural actions on the same terms as citizens of that Contracting Party. The provisions of this Convention shall also apply to legal entities organized under the laws of the Contracting Parties.

Pursuant to parts 1, 3 of Article 42 of the Convention on Legal Assistance in Matters of Damage (except for those arising from contracts and other lawful acts), the court of the Contracting Party in whose territory the act or other circumstance giving rise to the claim for damages took place is competent. At the same time, the above-mentioned Convention on Legal Assistance does not contain any reservations regarding the jurisdiction of the relevant court over disputes on compensation for damage in which the state or state bodies of the relevant Contracting Party act as a defendant.

Pursuant to Article 1 of the Agreement, this agreement regulates the settlement of cases arising from contractual and other civil law relations between business entities, their relations with state and other authorities, as well as the enforcement of decisions on them.

According to subpara. "d" of clause 1 of Article 4 of the Agreement, the competent court of a state party has the right to consider the disputes referred to in Article 1 of this Agreement if an act or other circumstance occurred on the territory of that state party that gave rise to the claim for damages.

At the same time, the Agreement establishes special rules regarding the judicial immunity of the participating states. Thus, in accordance with paragraph 4 of Article 4 of the Agreement, cases on invalidation of acts of state and other bodies that are not of a regulatory nature, as well as on compensation for damages caused to business entities by such acts or arising from improper performance by the said bodies of their duties towards business entities, are considered exclusively by the court at the location of the said body.

Thus, in determining the limits of their judicial immunity under the said Agreement, its parties (including Russia) established 1) a general rule according to which, based on the content of Article 1, subpara. "d" of

/QR code/

paragraph 1 of Article 4 of the Agreement, a dispute on compensation for damage (regardless of the subjective composition of the parties, including in the case when the defendant in such a dispute is the state or its body) is subject to the jurisdiction of the court of the state in which the actions causing damage were committed and 2) an exhaustive list of cases when the rules of jurisdiction of disputes set forth in the said Agreement do not apply to disputes in which the defendant is a state body. At the same time, the rules of judicial immunity of the states parties to the Agreement are exhaustive and apply to disputes of two types: 1) regarding the invalidity of acts of state authorities and 2) compensation for damages caused to business entities by such acts or improper performance by the relevant authorities of their duties towards the business entity.

Therefore, taking into account the provisions of Article 1, para. "d" of paragraph 1 of Article 4, paragraph 4 of Article 4 of the Agreement regarding disputes on compensation for damages, any such disputes are subject to the jurisdiction of the court of the state where the damage was committed, except in the case of disputes on compensation for damages caused to business entities by acts of state authorities recognized as invalid or improper performance by the relevant authorities of their duties towards the business entity. In other words, according to the above provisions of the Agreement, any disputes on compensation for damages, if such damages are not caused by the actions of a public authority directly provided for by the Agreement and the above-mentioned actions of a public authority, shall be considered by the competent court at the place of damage.

Thus, the dispute over compensation for damages as a result of depriving the plaintiff of the opportunity to manufacture products, fulfill its contractual obligations for profit, as a direct act of aggression by the Russian Federation by occupying the territory of the plaintiff's business activities and restricting access to it does not fall within the scope of the exceptions established by the Agreement, when the dispute cannot be considered by the court at the place of damage, since such damage was not caused by an invalid act of a Russian governmental authority, nor is it caused by improper performance of duties of any of the Russian state authorities towards the plaintiff as a business entity, since the plaintiff, as a business entity, has not been and is not in any binding relations, either private law or public law, with any of the Russian authorities, and therefore neither proper nor improper performance of any duties of the Russian state authorities towards the plaintiff is possible. At the same time, damage caused as a result of direct military aggression cannot be a manifestation of the implementation of any duties of any of the Russian authorities due to its clear illegality, recognized by international institutions, including the UN. Therefore, in accordance with the Agreement, the judicial immunity of the Russian Federation does not apply to cases of damage to a business entity by depriving it of the opportunity to conduct business during direct aggression by one state party against another state party.

According to the legal opinion set forth in the decision of the Civil Court of Cassation of the Supreme Court dated April 14, 2022 in case No. 308/9708/19 on the judicial immunity of the Russian Federation in cases of compensation for damage caused by the aggressor state, the Supreme Court concluded that the Russian Federation, having committed an unprovoked and full-scale act of armed aggression against the Ukrainian state, numerous acts of genocide against the Ukrainian people, has no right to further invoke its judicial immunity, thereby denying the jurisdiction of Ukrainian courts to consider and resolve cases on compensation for damage caused by such acts of aggression to an individual citizen of Ukraine. The Supreme Court proceeded from the premise that the said rogue state did not act within its sovereign right to self-defense, but rather treacherously violated all of Ukraine's sovereign rights by acting on its territory, and therefore certainly no longer enjoys its judicial immunity in this category of cases. Thus, since 2014, there has been no need to send requests to the Russian Embassy in Ukraine for the Russian Federation's consent to be a defendant in cases of compensation for damage in connection with the Russian Federation's armed aggression against Ukraine and its disregard for the sovereignty and territorial integrity of the Ukrainian state. And starting February 24, 2022, such a request will not be possible due to the severance of diplomatic relations between Ukraine and the Russian Federation.

In its Resolutions dated May 18, 2022 in cases No. 428/11673/19 and No. 760/17232/20-ц, the Civil Court of Cassation of the Supreme Court expanded the legal conclusions according to which the maintenance of the jurisdictional immunity of the Russian Federation would deprive the plaintiff of effective access to court to protect his rights, which is incompatible with the provisions of paragraph 1 of <u>Article 6 of the Convention for the Protection of Human Rights and Fundamental Freedoms.</u>

The Grand Chamber of the Supreme Court in its decision dated May 12, 2022, in case No. 635/6172/17 (para. 49) upheld the legal conclusion set forth in the decision dated April 14, 2022 in case No. 308/9708/19 of the panel of judges of the Third Judicial Chamber of the Civil Court of Cassation, that a Ukrainian court, considering a case where the Russian Federation is the defendant, has the right to ignore the immunity of this country and consider cases on compensation for damage caused to an individual as a result of the armed aggression of the Russian Federation, in a lawsuit filed against this particular foreign country.

Also, the Grand Chamber of the Supreme Court in its decision dated May 12, 2022, in case No. 635/6172/17 (para. 50) concluded that the Russian Federation as an occupying power in accordance with the Hague Convention relative to the Laws and Customs of War on Land and its annex: Regulations Relative to the Laws and Customs of War on Land of October 18, 1907, the Geneva Convention relative to the Protection of Civilian Persons in Time of War of August 12, 1949, and Protocol Additional to the Geneva Conventions of

*/QR code/*

August 12, 1949, and Relative to the Protection of Victims of International Armed Conflicts (Protocol I) of June 8, 1977, is responsible for violations of the protection of civilian rights. Compensation for material and moral damage caused as a result of the temporary occupation of the state of Ukraine to legal entities, public associations, citizens of Ukraine, foreigners and stateless persons is fully borne by the occupying state (parts five and nine of <u>Article 5 of the Law of Ukraine "On Ensuring the Rights and Freedoms of Citizens and the Legal Regime in the Temporarily Occupied Territory of Ukraine").</u>

In addition, as stated in the decision of the Grand Chamber of the Supreme Court dated September 15, 2022 in case No. 990/80/22, the Russian Federation, having committed an unprovoked and full-scale act of armed aggression against Ukraine, numerous acts of genocide against the Ukrainian people, has no right to further invoke its judicial immunity, thereby denying the jurisdiction of the courts of Ukraine to consider and resolve cases for compensation for damage caused by such acts of aggression.

The Supreme Court proceeded from the fact that the aggressor country acted beyond its sovereign right to self-defense, on the contrary, it treacherously violated all the sovereign rights of Ukraine by acting on its territory, so the Russian Federation certainly does not enjoy its judicial immunity in this category of cases. These conclusions are contained in the resolutions of the Supreme Court dated June 08, 2022, and June 22, 2022, in cases No. 490/9551/19 and No. 311/498/20.

International legal norms on jurisdictional immunity of the state are unified in two conventions: The European Convention on the Immunity of States, adopted by the Council of Europe on May 16, 1972, and the UN Convention on Jurisdictional Immunities of States and Their Property, adopted by the General Assembly by resolution 59/38 on December 2, 2004 (hereinafter referred to as the Convention).

Thus, in accordance with the provisions of Article 5 of the Convention, a state enjoys immunity, in respect of itself and its property, from the jurisdiction of the courts of another state, subject to the provisions of this Convention.

According to Article 7 of the Convention, a State may not invoke immunity from jurisdiction in proceedings before a court of another State in respect of any matter or case if it has expressly consented to the exercise by that court of jurisdiction over such matter or case by virtue of: a) an international agreement; b) a written agreement; or c) a statement in court or a written communication in the context of specific proceedings.

Article 12 of the Convention provides that, unless the States concerned have otherwise agreed, a State may not invoke immunity from jurisdiction in proceedings before a court of another State which has the usual competence to entertain proceedings for monetary compensation in respect of death or personal injury to any person or damage to or loss of property resulting from an act or omission, which may be attributed to a state if such act or omission took place in whole or in part on the territory of that other state and if the author of the act or omission was present on that territory at the time of the act or omission.

It should be noted that the UN Convention on Jurisdictional Immunities of States and Their Property dated December 2, 2004, was signed and ratified by Ukraine, while the Russian Federation signed the document but did not ratify it.

However, despite the fact that the Russian Federation has not ratified the 2004 Convention, the rules established by the 2004 Convention, in particular the rules set forth in Article 12, are rules of international law that are binding on the Russian Federation, given the following.

The court took into account that the 2004 Convention has not yet entered into force in the manner prescribed by it, but the normative act was adopted by the UN General Assembly by UN member states.

The Preamble to the Convention provides that: "...jurisdictional immunities of States and their property are universally recognized as a principle of customary international law, ...an international convention on jurisdictional immunities of States and their property would strengthen the rule of law and legal certainty, especially in the relations of States with natural or legal persons, and would contribute to the codification and development of international law and the harmonization of practice in this field". The preamble also states that the text of the operative provisions of the 2004 Convention "takes into account the development of State practice with regard to jurisdictional immunities of States and their property".

This indicates that the UN General Assembly did not establish new principles of international law through the 2004 Convention but sought to "codify" existing principles for the purpose of "legal certainty" and "harmonization of practice in this area."

In turn, Article 38 of the Statute of the International Court of Justice defines as sources of international law, in particular, international custom as evidence of general practice recognized as a legal norm, as well as general principles of law recognized by civilized nations. (paragraphs b, c of Article 38 of the Statute), which also confirms the possibility of applying the provisions of the 2004 UN Convention on Jurisdictional Immunities of States and International Property, since jurisdictional immunities of states and international property have been generally recognized as one of the principles of customary international law.

Therefore, the Court considers that regardless of whether the 2004 Convention has entered into force and whether the Russian Federation has ratified it, the operative provisions of the 2004 Convention, taking into account the provisions of Article 38 of the Statute of the International Court of Justice, constitute "general

*/QR code/*

principles of law" recognized by civilized nations and are per se binding on sovereign states, including the Russian Federation.

According to the case-law of the European Court of Human Rights (hereinafter referred to as the ECtHR), "in cases where the application of the rule of state immunity from jurisdiction restricts the exercise of the right of access to a court, the court must establish whether the circumstances of the case justify such a restriction" (SabehElLeil v. France (application No. 34869/05), decision of June 29, 2011, § 51; Oleynikov v. Russia (application No. 36703/04), decision of March 14, 2013, § 59).

According to the established case law of the ECHR, the restriction of the right to a fair trial, in particular through the application of judicial immunity of the state, is consistent with paragraph 1 of Article 6 of the Convention for the Protection of Human Rights and Fundamental Freedoms (hereinafter referred to as the 1950 Convention) only if such restriction:

1) It pursues a legitimate aim: The ECtHR has repeatedly recognized that "the granting of immunity to a State in civil proceedings pursues the legitimate aim of complying with international law to promote comity and good relations between States through respect for the sovereignty of another State" (Oleynikov v. Russia (application No. 36703/04), decision of March 14, 2013, § 60; Cudak v. Lithuania (application No. 15869/02), decision of June 29, 201, § 52; Wallishauser v. Austria, (application No. 156/04), decision of July 17, 2012, § 60).

In the context of the above case-law of the ECtHR, the application of the judicial immunity of the Russian Federation in a case on a claim for damages must have a legitimate purpose, in particular, to promote courtesy and good relations between states through the observance of international law. At the same time, the armed aggression against Ukraine committed by the Russian Federation in violation of the fundamental principles and norms of international law, in particular the UN Charter, and the international legal crimes committed by its armed forces in Ukraine exclude, at the initiative of the Russian Federation, the issue of courtesy and good relations between countries.

This deprives the application of the judicial immunity of the Russian Federation, which restricts the plaintiff's right to a fair trial, of its legitimate purpose.

3) Does not violate the very essence of the right of access to court: when considering the issue of access to court in the context of the application of jurisdictional immunity of the state, "it is necessary to ensure that the restrictions applied do not limit or reduce the remaining access to the person in such a way or to such an extent that the very essence of the right of access to court is violated" (Ashingdane v. the United Kingdom (application No. 8225/78), decision of May 28, 1985, § 57; Oleynikov v. Russia (application No. 36703/04), decision of March 14, 2013, § 55), Cudak v. Lithuania (application No. 15869/02), decision of March 23, 2010, § 55). Otherwise, a complete obstruction of the proceedings, without any fault of the plaintiff, would be contrary to paragraph 1 of Article 6 of the 1950 Convention (McElhinney v. Ireland (application No. 31253/96), judgment of November 21, 2001, separate opinion of Judge L. Loucaides).

The arguments to justify the refusal to apply state immunity, among other things, were formulated by the ECtHR in the case of Jonesandothers v. the United Kingdom (applications No. No. 34356/06 and 40528/06), decision of January 14, 2014.

In the judgment, the Court emphasizes the constant evolution of customary international law on the issue of granting judicial immunity to the state, the absence of a peremptory doctrine in this regard. However, it is increasingly argued that grave international crimes cannot be considered committed in the course of official state action, since their commission is not a normal state function. And this position is gradually being reflected in international practice, as evidenced by relevant court decisions and opinions. There is a tendency to overcome impunity for these actions, to exercise broader jurisdiction and further limit the possibility of using immunity as a cover.

In view of the above, the Court considers the limits of immunity through the prism of the nature of the state's "behavior". If the state has already introduced a national remedy for unlawful acts, then it can be expected that the courts of other states will refuse to exercise jurisdiction. However, if a state has a systematic pattern of actions that violate peremptory norms prohibiting their commission and no adequate remedy is available, then an unconditional denial of access to the civil courts of another state may be considered a disproportionate measure.

Thus, along with the use of the armed forces and other law enforcement agencies to carry out large-scale acts of military aggression on the sovereign territory of Ukraine, the consistency and obviousness of the actions of the top political and military leadership and the state apparatus of the Russian Federation openly declaring the annexation of territories and justifying the military invasion aimed at violating the territorial integrity of Ukraine, supporting terrorist activities, clearly goes beyond the accepted international standards and the proper exercise of state powers, which indicates that Russia is pursuing an aggressive state policy.

It is well known that the Russian Federation rejects recognition of any responsibility for its unlawful military activities in Ukraine, justifying them, including not only full-scale armed aggression, but also any participation of its armed forces in hostilities in Donetsk and Luhansk regions since 2014. There is no reasonable

*/QR code/*

ground to assume that the plaintiff's violated right, for the protection of which he has applied to a Ukrainian court, could be protected by filing a claim in a court in which the Russian Federation does not enjoy judicial immunity, i.e., a court of the Russian Federation.

Thus, the plaintiff's appeal to the Ukrainian court is the only reasonably available remedy to protect the right, the deprivation of which would mean the deprivation of such a right at all, i.e., it would deny the essence of such a right. Currently, there are no mechanisms or other interstate agreements between Ukraine and the Russian Federation on compensation for damages to individuals and legal entities caused by the military aggression of the Russian Federation on the territory of Ukraine.

When considering the application of judicial immunity, one should take into account "the general principles underlying human rights and humanitarian law and embodying fundamental rights, such as the right to an effective remedy, the right to compensation for damages suffered as a result of violations of humanitarian law, and the right to be protected from denial of the right to a judge" (Separate opinion of Judge Yusuf to the Decision of the International Court of Justice (ICJ) in the case JurisdictionalImmunitiesoftheState (Germany v. Italy) of February 03, 2012, § 30.)

As the European Court has pointed out in earlier cases, the 1991 Draft Articles on Jurisdictional Immunities of States and Their Property of the International Law Commission, now embodied in the 2004 Convention, apply in accordance with customary international law even if the State concerned has not ratified the Convention, unless it has objected to it (see the above-mentioned Grand Chamber Judgment in Cudak v. Lithuania (application No. 15869/02), decision of March 23, 2010, § 55), the above-mentioned Grand Chamber Judgment in SabehElLeil v.Egapse (application No. 34869/05), decision of June 29, 2011, § 51), and the Judgment of the European Court of Justice in Wallischhauser v. Austria, § 60). The Russian Federation did not ratify it, but did not oppose it either, having signed the Convention on December 01, 2006.

Taking into account the above, the court concludes that by filing a lawsuit against the Russian Federation, in order to properly resolve the dispute, the plaintiff does not need the consent of the competent authorities of the Russian Federation to consider the case in the courts of Ukraine or the existence of an international agreement between Ukraine and the Russian Federation on this issue.

With regard to filing a lawsuit against the Russian Federation as a state, the court takes into account the following.

According to part 1 of Article 167 of the Civil Code of Ukraine, the state acts in civil relations on equal terms with other parties to these relations.

Pursuant to paragraphs 1 and 3 of the 1907 Hague Convention relative to the Laws and Customs of War on Land, the Contracting States shall issue orders to their land forces that are in accordance with the Regulations respecting the Laws and Customs of War on Land. A belligerent party that violates the provisions of the Regulations shall be liable for compensation for damages, if there are grounds for this. It shall be responsible for all acts committed by persons forming part of its armed forces.

Thus, in accordance with the above provisions of the Civil Code of Ukraine and the above Convention, the belligerent state as a whole is responsible for damage caused by violations of the laws and customs of war, regardless of which particular unit of its armed forces caused the damage.

Pursuant to Article 170 of the Civil Code of Ukraine, the state acquires and exercises civil rights and obligations through state authorities within their competence established by law.

According to the legal conclusion expressed by the Grand Chamber of the Supreme Court in its decision of November 27, 2019 in case No. 242/4741/16-ц, the proper defendant in cases of compensation for damage caused by a public authority, their official or employee is the state as a party to civil relations, usually represented by the body that the defendant claims to be the violator of his or her rights. At the same time, the court also takes into account the fact that the state is a specific subject of legal relations. The state is understood as an organization of political power of the dominant part of the population in a socially heterogeneous society, which, ensuring the integrity and security of society, governs it primarily in the interests of this part, as well as manages public affairs. The defining features of the state include the existence of a specific apparatus to fulfill its tasks and functions, which has power and material means to exercise these powers.

The functions of the state include, inter alia: economic function (formation and execution of the budget, preparation and implementation of economic development programs, financing of a number of industries, ensuring freedom of competition and countering monopoly, direct management of the public sector of the economy); information function (organization and provision of a system for obtaining, using, distributing and storing information); function of ensuring state security (protection of the country from external attacks, protection of national interests from destructive actions within the country).

The above functions are realized through a specific apparatus, the procedure of formation, legal status and powers of which are determined by the state itself. At the same time, the implementation of the state policy of the aggressor state regarding the aggressive war against Ukraine is not limited to the activities of any state body, ministry, etc.

*/QR code/*

The aggressive war against Ukraine is a consolidated policy of the Russian Federation and is implemented through the entire relevant apparatus, which includes diverse bodies, institutions, organizations, including legal entities, which, although formally separate business entities, are in fact fully controlled by the Russian state and used by it, including for the implementation of purely state functions.

In the case of the implementation of the relevant state functions by a public authority, the connection between the state and such an authority is obvious and generally recognized, both within the legal doctrine and in accordance with international and national regulations, and there is a responsibility of the state as a whole for its bodies. With regard to the activities of legal entities of the Russian Federation, which are formally legal entities of private law, but in fact perform functions of the state that are not typical for them, the doctrine of "removing the corporate veil" is applicable to determine the relationship between the activities of a legal entity and the function of the state.

The generally accepted essence of the legal entity concept, which is enshrined in the legal systems of all developed countries, is as follows: each company has its own legal personality, different from the legal personality of the persons who established it; company shareholders are liable for its obligations within the value of their shares; company property is separate from the property of its shareholders; the company exists independently of its shareholders; the company as an independent legal entity may enter into transactions on its own behalf and bring a lawsuit in court. One of the main features of a legal entity is its independent liability for its obligations with all its property.

At the same time, the legal doctrine provides for cases when it is permissible to "piercing the corporate veil", for example: 1) if the company acts as an agent of its shareholder or 2) if it serves as a "facade" to cover its interests.

According to the doctrine of "piercing the corporate veil", a corporation will generally be understood as a legal entity until the opposite is reasonably proven; however, when the concept of a legal entity is used to violate the public interest, justify an offense, conceal fraud, or protect a crime, the law will treat the corporation as an association of persons.

At the same time, in the case of legal entities of the aggressor state, a number of circumstances indicate their direct activity as an agent of the state and the "facade" of the Russian Federation, in particular: adoption by the National Security and Defense Council of Ukraine of acts on the application of individual sanctions and their approval by Decrees of the President of Ukraine; inclusion of a number of legal entities in the EU sanctions lists, which is confirmed by information on the official website of EU acts, which contains a separate list of restrictive measures against a number of legal entities (address in the Internet - https://data.europa.eu/data/datasets/consolidated-list-of-persons-groups-and-entities-subject-to-eu-financial-sanctions?locale=en); the application of sanctions by the US government to legal entities residing in the Russian Federation, which are published by the US Department of the Treasury on its official website (address in the Internet - https://home.treasury.gov/news/press-releases/jy1241), etc.

The relevant sanctions lists also include legal entities - residents of the Russian Federation, formally existing as legal entities under private law.

At the same time, in accordance with paragraphs 1, 3 of the Hague Convention on the Laws and Customs of War on Land of 1907, liability in the form of compensation for damages in case of violation of the rules and customs of warfare is imposed on the state as a whole, as a belligerent. Therefore, the recovery of the relevant damage should also be carried out from the state as a whole, at the expense of all its assets, including the property of units of the specific apparatus of the state that performs its functions, including both state bodies and other enterprises, organizations, institutions that perform the relevant state functions.

Therefore, in the court's opinion, filing a claim against the Russian Federation as a state as a whole not only complies with the provisions of the substantive law, but also represents an effective way to protect the plaintiff's right.

At the same time, the court found that the defendant in the case is a non-resident of Ukraine.

Pursuant to Article 3 of the Commercial Procedural Code of Ukraine, proceedings in commercial courts are conducted in accordance with the <u>Constitution of Ukraine</u>, this <u>Code</u>, the Law of Ukraine "On Private International Law", <u>the Law of Ukraine "On Restoring Debtor's Solvency or Declaring a Debtor Bankrupt"</u>, as well as international treaties ratified by the Verkhovna Rada of Ukraine. If an international treaty of Ukraine establishes rules of court proceedings other than those provided for by this Code or other laws of Ukraine, the rules of the international treaty shall apply.

Foreign persons have the same procedural rights and obligations as Ukrainian citizens and legal entities established under Ukrainian law, except for exceptions established by law or an international treaty ratified by the Verkhovna Rada of Ukraine (Article 365 of the Code of Civil Procedure of Ukraine).

Pursuant to Article 365 of the Commercial Procedure Code of Ukraine, foreign persons have the same procedural rights and obligations as Ukrainian citizens and legal entities established under Ukrainian law, except for exceptions established by law or an international treaty ratified by the Verkhovna Rada of Ukraine.

/QR code/

Part 1 of Article 367 of the Commercial Procedure Code of Ukraine provides that if, in the course of the proceedings, a commercial court needs to serve documents in the territory of another state, the commercial court may apply to a foreign court or other competent authority of a foreign state (hereinafter referred to as a foreign court) with a relevant court order in accordance with the procedure established by this Code or an international treaty ratified by the Verkhovna Rada of Ukraine.

A court order is sent in accordance with the procedure established by this Code or an international treaty ratified by the Verkhovna Rada of Ukraine, and if no international treaty has been concluded, to the Ministry of Justice of Ukraine, which sends the order to the Ministry of Foreign Affairs of Ukraine for transmission through diplomatic channels (part 2 of Article 367 of the Commercial Procedure Code of Ukraine).

By the court ruling dated August 23, 2023 in case No. 908/1242/22(908/2670/23), in order to respect the procedural rights of the defendant and to properly notify the defendant of the date, time and place of the hearing, the court ordered the plaintiff to provide the court with a translation of the ruling on the opening of the proceedings in the case into Russian, with notarization of its accuracy, in order to further apply to the Ministry of Justice of Ukraine with a court order on the possibility of serving procedural documents to the defendant in the case to the Russian Federation through diplomatic channels, ordered the plaintiffs to send the defendant the above court ruling and provide the court with the relevant supporting documents, and suspended the proceedings until the court order for service of process or notification of the impossibility of such service is fulfilled.

On September 11, 2023, the plaintiff's representative submitted evidence of a notarized translation into Russian of the court's decision of August 23, 2023, to the defendant via a postal service in case No. 908/1242/22 (908/2670/23) on the opening of proceedings in the case, namely: by sending the relevant procedural document to the Embassy of the Russian Federation in Ukraine, the Embassy of the Russian Federation in the Swiss Confederation, the Embassy of the Russian Federation in the Federal Republic of Germany, the Embassy of the Russian Federation in Belgium (according to the description of the attachment to the mail item No. 0420108987676 and the fiscal check dated September 06, 2023, receipts of DHL International Ukraine JSC dated September 06, 2023, No. No. 4447715731, 4447717761, 4447719570 respectively). In addition, evidence was provided of sending a copy of the claim to the above-mentioned foreign institutions of the Russian Federation (according to the receipts of DHL International Ukraine JSC dated August 17, 2023, No. No. 1569750766, 5571523823, 1569753603, respectively).

On August 23, 2023, within the framework of case No. 908/1242/22 (908/2670/23), the court sent a court order to the Ministry of Justice of Ukraine to serve procedural documents on the defendant in the case to the Russian Federation.

According to the letter of the Ministry of Justice of Ukraine dated September 12, 2023, regarding the possibility of serving court documents in the territory of the Russian Federation, it was established that it is impossible to transfer/receive any documents to/from the competent authorities of Russia, including through diplomatic channels.

According to the information on the official website of JSC Ukrposhta via the Internet links https://www.ukrposhta.ua/ua/news/57561-ukrposhta-chastkovo-vidnovlju-robotu-viddilen-de-ce-bezpechno-dlja-klintiv-i-pracivnikiv and https://www.ukrposhta.ua/ua/news/57624-poshti-svitu-ogoloshujut-rosii-poshtovu-blokadu, it is known that JSC Ukrposhta has stopped delivering mail to/from Russia since the first days of the full-scale invasion.

According to information provided by the Ministry of Foreign Affairs of Ukraine, on February 24, 2022, diplomatic relations between Ukraine and Russia were severed due to the latter's large-scale armed aggression against Ukraine. The functioning of Ukraine's foreign diplomatic missions in Russia and the activities of its diplomatic missions in Ukraine have been suspended.

Therefore, due to the military aggression, the court is deprived of the opportunity to notify the defendant of the consideration of this case by means of postal communication and to apply to the court of the defendant state with a court order for the delivery of documents.

At the same time, in order to respect the procedural rights of the defendant, the Commercial Court of Zaporizhzhia Region, by its decision of August 23, 2023, decided to notify the defendant of the date, time and place of consideration of case No. 908/1242/22 (908/2670/23) by announcing it on the official website of the judiciary of Ukraine and additionally by obliging the plaintiff to send procedural documents to the defendant with further provision of evidence of such sending.

On October 09, 2023, through the post office of JSC Ukrposhta, the plaintiff's representative submitted to the court evidence of sending to the defendant a notarized translation into Russian of the decision of the Economic Court of Zaporizhzhia Region dated September 26, 2023 in case No. 908/1242/22 (908/2670/23) to close the preparatory proceedings and assign the case for consideration on the merits.

The relevant procedural documents were sent to the Embassy of the Russian Federation in Ukraine, the Embassy of the Russian Federation in the Swiss Confederation, the Embassy of the Russian Federation in the Federal Republic of Germany, the Embassy of the Russian Federation in Belgium (according to the original list of attachments and fiscal check dated October 04, 2023 to the mailing address 0420109005443 (sent to the

/QR code/

Embassy of the Russian Federation in Ukraine); original receipts of the DHL international shipment operator dated October 04, 2023: No. 5716977980 - sent to the Embassy of the Russian Federation in the Swiss Confederation, No. 4328065556 - sent to the Embassy of the Russian Federation in Germany, No. 4328063854 - sent to the Embassy of the Russian Federation in Belgium.

On November 01, 2023, the plaintiff's representative submitted to the court via the post office of JSC Ukrposhta (mail 0420109009775) evidence of sending the defendant a notarized translation into Russian of the decision of the Economic Court of Zaporizhzhia region dated October 19, 2023 in case No. 908/1242/22 (908/2670/23) to postpone the court hearing to November 09, 2023 at 09:30 am.

The relevant procedural documents were sent to the Embassy of the Russian Federation in Ukraine, the Embassy of the Russian Federation in the Swiss Confederation, the Embassy of the Russian Federation in the Federal Republic of Germany, the Embassy of the Russian Federation in Belgium (according to the original list of attachments and fiscal check dated October 31, 2023 to the mailing address 0103333276457 (sent to the Embassy of the Russian Federation in Ukraine); original receipts of the DHL International Ukraine PJSC (DHL) dated October 31, 2023: No. 5092231966 - sent to the Embassy of the Russian Federation in the Swiss Confederation, No. 5092225854 - sent to the Embassy of the Russian Federation in Germany, No. 7458852973 - sent to the Embassy of the Russian Federation in Belgium.

On November 21, 2023, the court received a letter from the plaintiff, which included a translation of the decision of the Economic Court of Zaporizhzhia region of November 09, 2023 into Russian, with notarization of its accuracy; evidence of sending procedural documents to four addresses of the embassies of the Russian Federation: Kyiv, Swiss Confederation, Germany, Belgium.

At the same time, the court takes into account that in accordance with the Vienna Convention on Diplomatic Relations of April 18, 1961, an embassy is the highest <u>diplomatic mission of a state</u> in the capital of another state or an <u>international organization</u>, which is tasked with maintaining and developing official relations with the host country, protecting the rights and interests of the accrediting state, its citizens and legal entities in the host country.

The court took into account the provisions of Article 22 of the UN Convention on Jurisdictional Immunities of States and Their Property, adopted by General Assembly resolution 59/38 on December 2, 2004, according to which the service of documents on court proceedings by a court order or other document on the initiation of proceedings against a state is carried out:

a) pursuant to any applicable international convention of the forum state and the relevant state; or

b) pursuant to any special agreement on service of process between the plaintiff and the relevant state, unless excluded by the law of the forum state; or

c) in the absence of such a convention or special agreement:

i) by transmission through diplomatic channels to the ministry of foreign affairs of the relevant state; or

ii) in any other manner recognized by the relevant state, unless excluded by the law of the forum state.

Delivery of the documents on the court proceedings referred to in clause 1ci) shall be deemed to have been made upon receipt of such documents by the Ministry of Foreign Affairs.

These documents shall be accompanied, if necessary, by a translation into the official language or one of the official languages of the relevant state.

The requirement to deliver the documents to the Ministry of Foreign Affairs during the trial was met in accordance with the Regulations on the Ministry of Foreign Affairs of the Russian Federation (as amended by Decree of the President of the Russian Federation No. 1218 of October 19, 2005).

Thus, in accordance with Part 3 of the Regulations, the Ministry of Foreign Affairs of the Russian Federation carries out its activities directly or through diplomatic missions and consular posts of the Russian Federation, missions of the Russian Federation to international (interstate, intergovernmental) organizations (foreign missions), territorial bodies of the Ministry of Foreign Affairs of the Russian Federation in the territory of the Russian Federation (territorial bodies).

Foreign missions are part of the system of the Ministry of Foreign Affairs of the Russian Federation.

Thus, sending and delivery of procedural documents to Russian embassies fully complies with the requirements of the UN Convention on Jurisdictional Immunities of States and Their Property of December 02, 2004.

Taking into account the provisions of the Vienna Convention on Diplomatic Relations of April 18, 1961 and the UN Convention on Jurisdictional Immunities of States and Their Property of December 2, 2004, having assessed the evidence of sending procedural documents to the defendant provided by the plaintiff, the court considers the defendant's notification of the case to have been duly made.

The plaintiff stated in the statement of claim that the evidence of the court costs incurred in the course of the proceedings would be submitted before the court hearings or within five days of the court decision in the case.

The progress of the case is covered in the relevant court rulings.

/QR code/

Information on the court proceedings and the said procedural decisions were timely published in the Unified State Register of Court Decisions, which is publicly available, and on the Internet on the official website of the Judiciary of Ukraine.

The defendant was notified of the date, time and place of the court hearing by publishing an announcement on the official page of the Economic Court of Zaporizhzhia Region of the Judiciary website in accordance with Part 4 of Article 122 of the Commercial Procedure Code of Ukraine (the defendant, third party, witness whose registered place of residence (stay), location or place of work is unknown, is summoned to court through an announcement on the official website of the judiciary of Ukraine, which must be posted no later than ten days before the date of the relevant court hearing). With the publication of the summons, the defendant is deemed to have been notified of the date, time and place of the hearing).

Thus, during the trial, along with observance of the fundamental procedural principles - the right of access to court, enshrined in Article 6 of the Convention for the Protection of Human Rights and Fundamental Freedoms, and compliance with the procedure established by procedural law, additional measures were taken to ensure the procedural rights of the defendant.

Dispositivity (from the Latin dispono - to dispose) is the provision of persons involved in a case with the opportunity to freely dispose of their substantive and procedural rights at their own discretion. The content of the principle of dispositivity is primarily revealed through the provision that those who want to exercise their rights must take care of it themselves.

These principles provide each participant in the process with the opportunity to independently dispose of the procedural rights granted to them by law, including the right to participate in court hearings.

The European Court of Human Rights in its judgment of July 07, 1989 in the case of UnionAlimentaria v. Spain noted that the applicant is obliged to demonstrate readiness to participate at all stages of the proceedings relating to his or her direct case, to refrain from using techniques related to delay in the proceedings, and to use all means of domestic law to expedite the hearing procedure to the maximum extent possible.

At the court hearing on November 28, 2023, the plaintiff's representative supported the claim in full and asked the court to satisfy it.

The defendant's representative did not appear at the court hearing. He was duly notified of the time and place of the hearing but did not inform the court of the reasons for his absence. At the same time, the defendant did not file a response to the statement of claim, did not file a motion to consider the case in the absence of an authorized representative or to consider the case in written proceedings, did not file any motions having the opportunity to participate in court hearings via videoconference, did not send an authorized representative in the absence of a ban on the entry of Russian citizens into the territory of Ukraine, and did not conclude an agreement for the representation of interests in the territory of Ukraine. The defendant's failure to appear at the court hearing and non-use of procedural rights is his expression of will, a manifestation of the principle of dispositivity.

The trial process was conducted in compliance with all international norms and standards of justice, in particular the <u>European Convention on Human Rights</u> of 1950 (hereinafter referred to as the 1950 Convention), including a number of additional measures to ensure them: the right to a fair trial, the right to defense, the right to understand the essence of the case, the right to the assistance of an interpreter, the right to an effective remedy, ensuring the enjoyment of rights without discrimination on any grounds, publicity of the court decision and the possibility of appealing against it (Articles 6, 13, 14 of the 1950 Convention).

**After examining the circumstances of the case, the materials provided, evaluating the evidence provided according to its internal conviction based on a comprehensive, complete and objective consideration of all the circumstances of the case in the trial, as well as the relevance, admissibility, reliability of each evidence separately, the sufficiency and interconnection of the evidence in their totality, the court came to the following reasoned conclusion.**

According to the case file, the plaintiff is a legal entity established in accordance with the laws of Ukraine and registered in the Unified State Register of Legal Entities, Individual Entrepreneurs and Public Organizations on March 22, 2010.

The plaintiff's main activity is the production of other basic organic chemicals (Classification of economic activity (CEA) 20.14), production of other basic inorganic chemicals (CEA 20.13), production of explosives (CEA 20.51), production of other chemical products (CEA 20.59), and wholesale trade in chemical products (CEA 46.75).

The plaintiff carried out business activities in the territory of Luhansk region for the production of industrial explosives on the basis of a license issued in accordance with the order of the State Labor Service of Ukraine dated December 23, 2019, which is valid for an unlimited period.

In the course of carrying out its direct business activities, Limited Liability Company Research and Production Enterprise Zorya used the following owned and leased assets: vehicles (passenger cars, trucks, special vehicles, railroad vehicles), industrial buildings and structures (including access railroad tracks and roads), land plots (both owned and leased), industrial equipment and machinery, raw materials (chemical acids, ammonium nitrate, technical sulfur, toluene).

*/QR code/*

Thus, according to the Information from the State Register of Real Property Rights and the Register of Real Property Rights, the State Register of Mortgages, the Unified Register of Prohibitions on Alienation of Real Property as of August 31, 2022, No. 308650040, the plaintiff owns the following property:

- Building 0-38 (entrance), letter "Д", total area 10.3 sq.m. (location: Luhansk region, Rubizhne, Zavodska Street, building 1г/35-1),
- Building 813-A, letters "A, A' ", total area 663.9, letters "Б, В" - sheds (location: Luhansk region, Rubizhne, Zavodska Street, building 1г/32),
- Children's cafe "Chipolino", total area (sq.m.) 269.7, Description: - Main building, A, A1, A2, A3, a (location: Luhansk region, Rubizhne, Khimikiv Street, building 10),
- Residential building with a total area of 4159.7 sq.m., living area of 1685.7 sq.m. (location: Luhansk region, M. Rubizhne, Tymiriazeva Street, building 9).

According to the vehicle registration certificates provided by the plaintiff, Limited Liability Company Research and Production Enterprise Zorya owns the following vehicles:
- Car: RENAULT Duster, VF1HJD40467211458, vehicle registration plate No. 7933 ET;
- Car: RENAULT Duster, VF1HJD40X67214946, vehicle registration plate No. BB 7944 ET;
- Car: TOYOTA COROLLA NMTBBOJE80R203615, vehicle registration plate No. BB 5941 CT;
- Car: TOYOTA COROLLA NMTBBOJESOR204013, vehicle registration plate No. BB 5943 CT;
- Car: TOYOTA COROLLA NMTBBOJES80R204022, vehicle registration plate No. BB 5942 CT;
- Car: TOYOTA COROLLA NMTBE4BE10R097537, vehicle registration plate No. BB 0523 EX;
- Car: TOYOTA COROLLA NMTBE4BE60R097050, vehicle registration plate No. BB 0522 EX;
- Car: TOYOTA COROLLA, NMTBE4BE90R048778, vehicle registration plate No. BB 1374 EO;
- Car: TOYOTA COROLLA, NMTBE4BEX0R048773, vehicle registration plate No. BB 1375 EO;
- Car: VOLKSWAGEN Multivan, WV2ZZZ7HZMH054929, vehicle registration plate No. BB 2220 EC;
- Passenger car: VOLKSWAGEN MULTIVAN, WV2ZZZ7THZBH118655, vehicle registration plate No.BB 3039 ET;
- Semi-trailer: WIELTON NS3F, SUDNS300000056761, vehicle registration plate No. BB 0747 XP;
- Semi-trailer: WIELTON NS3F, SUDNS300000063450, vehicle registration plate No. BB 1105 XP;
- Semi-trailer: WIELTON NS3S, SUDNS300000034611, vehicle registration plate No. BB 0056 XF;
- Front wheel loader: FOTON, model FL935E-II, vehicle registration plate No. 13959 BB.

As of February 24, 2022, the said vehicles were located in the Luhansk region at the Plaintiff's location.

The Plaintiff also owns railway wagons and tanks, which is confirmed by the balance sheet dated February 24, 2022 No. 24/02/22-1; the fact of registration of the Plaintiff's ownership of railway wagons and tanks with the State Enterprise Ukrzaliznytsia is confirmed by a written copy of public information in the form of a table "Technical characteristics of wagons and load restrictions under existing prohibitions" obtained from the official website of the State Enterprise Ukrzaliznytsia https://www.uz.gov.ua/cargo_transportation/electronic_transportation/specifications_carriages_info, where the column Limited Liability Company Research and Production Enterprise Zorya as the owner of 69 units of railway transport.

Due to the occupation (blocking, encirclement) by the army of the aggressor state of the entire territory of Luhansk region, including the territories where the plaintiff's production facilities are located, Limited Liability Company Research and Production Enterprise Zorya as a business entity has been deprived of the opportunity to carry out its economic activities in this territory since the beginning of active hostilities and during the occupation, which continues to this day.

The military aggression of the Russian Federation against Ukraine, in particular in the territory of the Luhansk region, had the following negative consequences for the Plaintiff:
- inability to carry out normal business activities in the Luhansk region as a result of active hostilities and occupation by the Russian Federation and, as a result, loss of the opportunity to receive income from such licensed activities (the Plaintiff's lost profits);
- loss and destruction of the material and technical base (fixed assets, raw materials, vehicles, finished products, etc.) of Limited Liability Company Research and Production Enterprise Zorya;
- the need to evacuate the Plaintiff's management and staff due to the constant threat to their lives as a result of the ongoing hostilities.

The inability of LIMITED LIABILITY COMPANY RESEARCH AND PRODUCTION ENTERPRISE ZORYA to conduct business under normal conditions on February 24, 2022, is due solely to the armed aggression of the Russian Federation aimed at violating the sovereignty of Ukraine, and the invasion of the territories of Ukraine, including the Luhansk region. Constant shelling, active hostilities in the Luhansk region in February-June 2022, loss of material and technical base (fixed assets), and occupation of Ukrainian territories forced the Plaintiff to evacuate its personnel to safe areas controlled by Ukraine and cease its business activities.

/QR code/

By order of the General Director of Limited Liability Company Research and Production Enterprise Zorya dated March 1, 2022, No. B-01, all employees of the Plaintiff were declared downtime at the enterprise on March 1, 2022, due to the lack of organizational and technical conditions for the economic activities of the enterprise during martial law.

The court notes that since February 2022, the aggressor state of the Russian Federation has had full de facto control over the territory of the Luhansk region, as it has deployed its troops in the said territory, conducted active hostilities aimed at seizing even more territories of Ukraine, and established its own occupation authorities in the occupied Ukrainian territories.

After being subjected to a violation of his civil rights, the Plaintiff filed a crime report with the law enforcement authorities of Ukraine, namely:

- On July 12, 2022, to the National Police of Ukraine, the Office of the Prosecutor General of Ukraine on the commission of criminal offenses (ref. No. No. 1207 and 1207-1);

- On July 12, 2022, to the Luhansk Regional Military-Civilian Administration, the Main Department of the National Police in Luhansk region, the Main Department of the Security Service of Ukraine in Donetsk and Luhansk regions, the Central Department of the Security Service of Ukraine, the Office of the Prosecutor General of Ukraine on the loss of control over the Limited Liability Company Research and Production Enterprise Zorya (ref. No. 1207-2);

- On July 14, 2022, to the Head of the Security Service of Ukraine, the Head of the State Labor Service of Ukraine with a notice of loss of control over discharge products (ref. No. 02K).

Criminal proceedings have been registered on the facts of illegal actions of the aggressor state and on the Plaintiff's statements:

- No. 22022130000000412 dated August 30, 2022 on the grounds of a criminal offense under Article 438 of the Criminal Code of Ukraine, as evidenced by an extract from the Unified Register of Pre-trial Investigations dated August 30, 2022, issued by the Main Directorate of the Security Service of Ukraine in Donetsk and Luhansk regions (ref. No. 78/3/3/7770 dated September 01, 2022);

- No. 12022131330000705 dated July 14, 2022, on the grounds of a criminal offense under Article 438 of the Criminal Code of Ukraine, as evidenced by an extract from the Unified Register of Pre-trial Investigations dated July 14, 2022, issued by the Main Department of the National Police in Luhansk region (ref. No. 642/111/36-2022 dated July 15, 2022).

According to the case file, the plaintiff is a legal entity established in accordance with the current legislation of Ukraine for the purpose of making a profit, in particular from the production of organic chemicals, basic inorganic chemicals, explosives and other chemical products.

The plaintiff carried out business activities for the production of industrial explosives on the basis of a license issued in accordance with the order of the State Labor Service of Ukraine dated December 23, 2019, which is valid for an indefinite period.

Limited Liability Company Research and Production Enterprise Zorya is a Ukrainian chemical company, a manufacturer and supplier of chemical products and explosives to the domestic and international markets. During 2010-2021, the Company's main activity was the production of explosives for industrial use (CEA 20.51) based on TNT, including TNT-containing explosives used in open and closed mining, such as ammonites, gramonites, etc.

The court found that in order to ensure the continuity of business activities and optimize production, the plaintiff leased a single property complex from LLC Chemical Innovative Technologies on October 14, 2010, whose assets are located at the following addresses: Luhansk region, Rubizhne; Luhansk region, Kreminna district, Borovenka Village Council; Luhansk region, Popasna district, Vovchoyarivka Village Council; Luhansk region, Kreminna district, Kudriashivka Village Council. Using the assets of the said property complex, the plaintiff carried out economic activities for the production of explosives and chemicals, as evidenced by property lease agreements concluded between LLC CHEMICAL INNOVATION TECHNOLOGIES and Limited Liability Company Research and Production Enterprise Zorya No. 1515 of June 24, 2021, No. 05-08 of August 05, 2021, No. 27-08 of August 27, 2021, No. 22-10 of October 22, 2021, No. 28-10 of October 28, 2021. The assets in the form of a single property complex include real estate objects (commercial and industrial buildings and structures) located on land plots, as well as industrial equipment, machinery, inventory, motor vehicles, roads, access railroad tracks, furniture, computer equipment, etc. as reflected in the annexes to the above agreements.

According to the balance sheet dated December 30, 2022 ref. No. 30/12/22-1, dated December 30, 2022 ref. No. 30/12/22-2, dated December 30, 2022 ref. No. 30/12/22-3, provided by the plaintiff, it is clear that as of February 24, 2022, the warehouse at Rubizhne, Luhansk region, Zavodska Street, building 1r/36, contained finished products manufactured by the plaintiff in the amount of 525 tons and raw materials in the amount of 3,770.9 tons, including TNT grade A of DSTU 4117-78, benzoic, sulfuric, nitric acids, ammonium nitrate, technical sulfur, and toluene.

*/QR code/*

According to the balance sheet dated January 13, 2023, ref. No. 13/01/23-1, provided by the plaintiff, it is clear that as of February 24, 2022, the warehouse at Rubizhne, Luhansk region, Zavodska Street, 1r/36, contained finished products manufactured by the plaintiff in the amount of 559.9 tons and raw materials in the amount of 27.1 tons, including industrial explosive TNT B, TNT grade A of DSTU 4117-78, industrial explosive Gramonite 79/21, and 3,5-dinitrobenzoic acid.

The largest share in the Company's production and sales in monetary terms is occupied by the trinitrotoluene (TNT) group (TNT A, B), whose share of revenue in total sales in 2021 amounted to 50.0%; revenue from sales of sulfuric acid accounted for 21.6% of total revenue, revenue from sales of PPVV (various types of ammonites, gramonites, ammonals, ZaryaD explosives) accounted for 15.3%, revenue from sales of other products accounted for less than 10% of the Company's total revenue. The plaintiff's products were sold both on the domestic market of Ukraine and on the international market.

Based on the rhythmicity and systematic nature of economic activity, stability and linear growth of indicators characterizing the plaintiff's favorable economic efficiency and financial position, the Plans for the sale of finished products and goods for 2022-2028 and the Production Plans for the Industrial Site for the period 2022-2028 were approved by the order of the General Director of Limited Liability Company Research and Production Enterprise Zorya dated December 15, 2021, No. 457, according to which the Plaintiff reasonably and legitimately expected to receive income during 2022-2028.

The Court notes that the Plaintiff's signs of lost profits after February 24, 2022, were:

1. lack of access to the assets of Limited Liability Company Research and Production Enterprise Zorya and, accordingly, their loss due to the occupation, the establishment of control over the territory of the Luhansk region by the Defendant and active hostilities in the Luhansk region by the armed forces of the Russian Federation;

2. destruction/damage of the Plaintiff's assets, including its production facilities, as confirmed by the statement of Limited Liability Company Research and Production Enterprise Zorya on the commission of criminal offenses to the National Police in the Luhansk region dated July 12, 2022, ref. No. 1207;

3. lack of sales volumes of the Company's products and inability to fulfill obligations under the concluded contracts;

4. increased costs and reduced business profitability (loss);

5. increase in risks and decrease in the cost of capital.

The above circumstances together made it impossible for the Plaintiff to carry out its production activities after February 24, 2022.

The Plaintiff's loss is confirmed by the data of its financial statements for 2020-2021 both before the date of the military invasion of the Russian Federation, which indicate the overall profitability of the Company's activities, and after it, which indicate the absence of the Plaintiff's operating activities and its current loss.

Since the military aggression of the Russian Federation in Ukraine is still ongoing and martial law is still in effect in Ukraine, the Plaintiff's rights and economic condition have no prospects for recovery during the current armed aggression of the Russian Federation, and therefore economic losses have been incurred in the past and are legitimately expected in the future, therefore the amount of the Plaintiff's lost profits should be calculated for two periods:

1st period, which is retrospective in nature and covers the period from the date of violation of the Plaintiff's rights (February 24, 2022) to the date of valuation (June 06, 2023);

2nd period, which is a forecast period and is the period from the date of valuation (June 06, 2023) to the date of restoration of the economic condition of the Company expected by the Plaintiff, which existed before the date of violation and is determined by the Plaintiff as June 06, 2028.

In accordance with the approved Plans, the Plaintiff expected an increase in economic indicators in the next seven years, i.e. from January 1, 2022, to December 31, 2028. This forecast is based on statistical data, projected growth rates of production volumes and systematic expansion of markets (international and national) for the Plaintiff's products.

The stable dynamics of economic activity in previous years and capital investments gave the Plaintiff the right to legitimately expect a stable income over the next 7 years.

Since the duration of the armed aggression of the Russian Federation in Ukraine is currently undetermined, and the period of martial law in Ukraine has been extended for another 90 days (until 18.11.2023), as well as the absence of clear terms (deadlines) necessary to restore the Company's activities to the state as of the date of the beginning of the armed aggression, the court considers it legitimate to determine the amount of lost profits for the period from February 24, 2022 to June 06, 2028.

Taking into account the above, the court notes that the availability of an unlimited license for the production of industrial explosives, the availability of national and international markets for the products, the availability of the necessary material and technical and raw material base undoubtedly ensured the ability of Limited Liability Company Research and Production Enterprise Zorya to carry out its economic activities for the production of explosives and chemical products and to receive income from this activity for an unlimited period of time.

*/QR code/*

The case file confirms that active hostilities continued on the territory of Luhansk region from February 24, 2022, until early July 2022. Since the beginning of the armed aggression of the Russian Federation in the Luhansk region, critical infrastructure facilities, including the production facilities of many enterprises, have been significantly damaged and even destroyed in some settlements. It became impossible and even dangerous for the Company's employees to carry out business activities in the Luhansk region.

Thus, the Plaintiff was deprived of the opportunity to carry out its licensed business activities in the conditions that existed before the armed attack of the Russian Federation, and, as a result, was deprived of the opportunity to receive income from such activities.

In connection with the military aggression of the Russian Federation against Ukraine, by the <u>Decree of the President of Ukraine No. 64/2022 dated February 24, 2022</u>, martial law was introduced in Ukraine from 05:30 a.m. on February 24, 2022, for a period of 30 days. The said period of martial law has been repeatedly extended and as of today it has been extended until November 15, 2023 in accordance with the Decree of the President of Ukraine No. 451/2023 dated July 26, 2023, approved by the Law of Ukraine "On Approval of the Decree of the President of Ukraine "On Extension of the Period of Martial Law in Ukraine" No. 3275-1X dated July 27, 2023.

According to the Order of the Ministry of Reintegration of the Temporarily Occupied Territories of Ukraine "On Approval of the List of Territories where Military Operations are (were) Conducted or Temporarily Occupied by the Russian Federation" of December 22, 2022, No. 309, the territory of the location of real estate, production facilities owned by the Plaintiff on the right of ownership, and objects of the single property complex are classified as territories temporarily occupied by the Russian Federation, namely: the entire territory of the Rubizhne City Territorial Community of the Luhansk Region from May 13, 2022 and to the present, the entire territory of the Kreminna City Territorial Community of the Luhansk Region from April 18, 2022 to the present, the territory of Vovchoiarivka village of the Lysychansk City Territorial Community of the Luhansk Region from July 03, 2022 to the present.

According to information published in open sources of information on the Internet, in particular (https://www.radiosvoboda.org/a/news-putin-aneksiya-pidpys/32066095.html, INFORMATION_1

_____    https://www.bbe.com/ukrainian/news-63050712, https://www.radiosvoboda.org/amp/novyny-pryazovya-prymusova-pasportyzatsiya_rosiyi-putinaneksiya/32067127.html), https://suspilne.media/288682-putin-pidpisav-zakon-pro-priednannatimcasovo-okupovanih-teritorij-ukraini-do-rosii/, the Russian Federation, by its actions, in particular by officials of the aggressor state, considers and publicly recognizes the territories of Ukraine captured as a result of military aggression as the territories of the Russian Federation and actually confirms their illegal annexation.

Thus, the decrees of the President of the Russian Federation of September 29, 2022, No. 685 and of September 29, 2022, No. 686 on the "accession" of the partially occupied territories of Zaporizhzhia, Kherson, Donetsk and Luhansk regions to the Russian Federation and the recognition of the "independence" of these regions based on the so-called referendums held there under Moscow's control. On October 03, 2022, the State Duma of the Russian Federation approved the annexation of part of the Ukrainian territories.

On October 04, 2022, the Federation Council, the upper house of the Russian parliament, ratified the so-called treaties "on the accession of the LPR (so-called Luhansk People's Republic) to Russia.

These actions by the Russian Federation confirm the commitment of illegal actions aimed at completing the formal process of annexation of Ukrainian territories.

At the same time, paragraph 9 of Resolution 60/1, adopted by the UN General Assembly on October 24, 2005, defines peace, security and human rights development as the foundations on which the UN system is based.

Article 1 of the Declaration on the Right to Peace states that everyone has the right to live in peace, with all human rights promoted and protected and development fully realized (resolution 71/189, adopted by the UN General Assembly on December 19, 2016).

The Declaration on the Right of Peoples to Peace, adopted by Resolution 39/11 of the UN General Assembly on 12.11.1984, proclaims that the preservation of the right of peoples to peace and the promotion of its realization is one of the fundamental duties of every state.

Thus, the obligation of states to refrain from armed aggression corresponds to the right to peace, which is a guarantee of respect for other rights and freedoms guaranteed by the Universal Declaration of Human Rights and other international legal instruments.

According to Article 1 of the Law of Ukraine "On Defense of Ukraine", armed aggression is the use of armed force against Ukraine by another state or group of states. Armed aggression against Ukraine is considered to be any of the following actions, in particular: invasion or attack of the armed forces of another state or group of states on the territory of Ukraine, as well as occupation or annexation of a part of the territory of Ukraine; attack of the armed forces of another state or group of states on the military land, sea or air forces or civilian sea or air fleets of Ukraine.

*/QR code/*

The Declaration on the Right of Peoples to Peace, adopted by Resolution 39/11 of the UN General Assembly on 12.11.1984, proclaims that the preservation of the right of peoples to peace and the promotion of its realization is one of the fundamental duties of every state.

Thus, the obligation of states to refrain from armed aggression corresponds to the right to peace, which is a guarantee of respect for other rights and freedoms guaranteed by the Universal Declaration of Human Rights and other international legal instruments.

According to Article 1 of the Law of Ukraine "On Defense of Ukraine", armed aggression is the use of armed force against Ukraine by another state or group of states. Armed aggression against Ukraine is considered to be any of the following actions, in particular: invasion or attack of the armed forces of another state or group of states on the territory of Ukraine, as well as occupation or annexation of a part of the territory of Ukraine; attack of the armed forces of another state or group of states on the military land, sea or air forces or civilian sea or air fleets of Ukraine.

The armed aggression of the Russian Federation against Ukraine, which is a well-known fact, resulted in the occupation of part of the territory of Ukraine.

Thus, the Russian Federation is an entity whose armed aggression against Ukraine and occupation of part of the territory of Ukraine violated a number of rights and freedoms of individuals and legal entities, including the rights of the plaintiff. As a result of the military aggression of the Russian Federation, the plaintiff suffered damage in the form of violation of his ownership of assets, such as real estate, vehicles, industrial equipment, raw materials, finished products, etc., unlawful restriction of his rights as an owner as a result of the occupation and seizure of territories by the Russian Federation, and causing losses (both real and lost profits).

In order to determine the amount of damage in the form of real losses and lost profits, the Plaintiff consulted an independent appraiser to conduct expert valuation studies, which resulted in the relevant expert opinions.

According to the conclusion of the independent appraiser, which is set out in the Report on the independent valuation of property dated February 28, 2023, based on the results of the valuation procedure to determine the amount of real losses suffered by the plaintiff due to the loss of assets as a result of the armed aggression of the Russian Federation, the following is evident:

- the market value of the assets of Limited Liability Company Research and Production Enterprise Zorya lost in the temporarily occupied territories of the Russian Federation as of September 01, 2022 amounted to: UAH 948,865,685.00 (nine hundred and forty-eight million eight hundred and sixty-five thousand six hundred and eighty-five hryvnias 00 kopecks), which corresponds to USD 25,947,552.80 or EUR 25,776,715.05 at the official exchange rate of the hryvnia against foreign currencies established by the NBU as of the valuation date.

According to the conclusion of the independent appraiser, which is set out in the Report on the independent valuation of property dated June 06, 2023, based on the results of the valuation procedure to determine the amount of damages in the form of lost profits from the impossibility or obstacles to the Plaintiff's business activities as a result of the armed aggression of the Russian Federation, the following is evident:

- the market value of damages in the form of lost profits from the impossibility or obstacles to the plaintiff's business activities as a result of the armed aggression of the Russian Federation as of June 06, 2023, amounted to UAH 9,138,297,993.13. (Nine billion one hundred and thirty-eight million two hundred and ninety-seven thousand nine hundred and ninety-three hryvnias and 13 kopecks), which corresponds to USD 249,894,663.54 or EUR 233,753,724.85 at the official exchange rate of the hryvnia against foreign currencies established by the NBU as of the date of valuation, of which:

- UAH 497,503,441.72 (four hundred and ninety-seven million five hundred and three thousand four hundred and forty-one hryvnias 72 kopecks) determined for the period from February 24, 2022 to the valuation date of June 06, 2023, which corresponds to the official exchange rate of the hryvnia against foreign currencies established by the NBU as of the valuation date - USD 13,604,661.97 or EUR 12725,923.66;

- UAH 8,640,794,551.41 (eight billion six hundred and forty million seven hundred and ninety-four thousand five hundred and fifty-one hryvnias 41 kopecks) - the amount of lost profits expected in the future, calculated for the period from the valuation date of June 06, 2023 to June 06, 2028, which corresponds to the official exchange rate of the hryvnia against foreign currencies established by the NBU as of the valuation date - USD 236,290,001.57 or EUR 221,027,801.19.

Since the Russian Federation, as an aggressor state, has taken actions that have deprived the plaintiff of the opportunity to exercise its right of ownership of the property, the plaintiff is deprived of the opportunity to access its property, the ability to own, use, dispose of it and receive the relevant economic benefits, the damages in the total amount of UAH 10,087,163,651.13 (ten billion eighty-seven million one hundred and sixty-three thousand six hundred and fifty-one hryvnias 13 kopecks), which is equivalent to USD 275,842,216.34 (two hundred seventy-five million eight hundred and forty-two thousand two hundred and sixteen US dollars 34 cents) or EUR 259,530,439.90 (two hundred fifty-nine million five hundred and thirty thousand four hundred and thirty-nine euros 90 euro cents).

In considering the case, the court shall take into account the following provisions of the applicable law.

*/QR code/*

Pursuant to Article 11 of the Civil Code of Ukraine (hereinafter referred to as the Civil Code of Ukraine), civil rights and obligations arise from the actions of persons provided for by acts of civil law, as well as from the actions of persons not provided for by these acts, but giving rise to civil rights and obligations by analogy. The grounds for the emergence of civil rights and obligations, in particular, are: 1) agreements and other transactions; 2) creation of literary, artistic works, inventions and other results of intellectual and creative activity; 3) infliction of property (material) and moral damage to another person; 4) other legal facts. Civil rights and obligations may arise directly from acts of civil law. In cases established by acts of civil legislation, civil rights and obligations arise directly from acts of state authorities, authorities of the Autonomous Republic of Crimea or local self-government bodies. In cases established by acts of civil legislation, civil rights and obligations may arise from a court decision. In cases established by acts of civil legislation or a treaty, the basis for the emergence of civil rights and obligations may be the occurrence or non-occurrence of a certain event.

Part 1 of Article 317 of the Civil Code of Ukraine describes the owner's powers by means of the civil law triad of powers: possession, use and disposal. The right of possession is understood as a legally based (i.e., legally secured) opportunity to have the property in question, to keep it in one's household, and to actually own it.

The right to use is the legally based possibility of exploitation, economic or other use of property by extracting its useful properties and consuming it. It is closely related to the right of ownership, since in most cases one can use property only by actually owning it.

The right to dispose of property means a similar ability to determine the legal fate of property by changing its ownership, condition or purpose.

In their entirety, these powers exhaust all the possibilities granted to the owner. The owner decides what to do with his or her property, guided solely by his or her own interests, performing any actions with respect to this property that must not contravene the law and do not violate the rights of other persons and the interests of society. The owner's activities may be restricted or terminated, or the owner may be obliged to allow other persons to use his or her property only in cases and in the manner prescribed by law.

The principle of inviolability of property rights is enshrined in Article 41 of the Constitution of Ukraine, according to which the right to private property is inviolable and no one may be unlawfully deprived of the right to property.

Article 321 of the Civil Code of Ukraine provides that property rights are inviolable. No one may be unlawfully deprived of this right or restricted in its exercise.

The inviolability of this right means, first of all, non-interference by anyone in the exercise by the owner of his/her rights to own, use and dispose of property, prohibition of any violation of the owner's rights in relation to his/her property contrary to the owner's interests and will.

Article 1 of Protocol No. 1 to the Convention for the Protection of Human Rights and Fundamental Freedoms provides that every natural or legal person has the right to peaceful enjoyment of his or her possessions. No one shall be deprived of his or her possessions except in the public interest and subject to the conditions provided for by law or by the general principles of international law.

Instead, the Russian Federation by its actions violated the plaintiff's ownership of his assets located in the zone of temporary occupation of the territory of Ukraine, as the plaintiff does not have access to his property, which deprives him of the possibility of owning and using it and actually leads to the inability to dispose of it and receive economic benefits from its use.

It is worth noting that the European Court of Human Rights, when considering cases of violation of property rights, holds the position that any restriction or deprivation of the owner's rights is a defacto deprivation of property rights and, accordingly, a violation of Article 1 of Protocol 1 to the Convention for the Protection of Human Rights and Fundamental Freedoms.

Thus, when considering applications for violations of Article 1 of Protocol No. 1 to the Convention, the European Court of Human Rights has faced not only cases in which applicants were actually deprived of property, but also cases in which such deprivation was recognized by it defacto. One of such cases is Sporrong and Lunnroth v. Sweden, applications no. 7151/75, no. 7152/75, decision dated September 23, 1982, decision dated December 18, 1984 (just satisfaction).

In this case, the court concluded that although the applicants were not actually deprived of their property, the restrictions imposed on their property by the state actually led to the fact that the applicants' right to property was revocable and could be canceled under certain conditions.

The court notes that there was a restriction on the ability of owners to dispose of their property. That is, having lost its content to a certain extent, the property right has remained intact. The consequences are not such that they can be equated with the consequences of deprivation of property.

However, even in these circumstances, the court concluded that any restriction or deprivation of the owner's rights is a defacto deprivation of property, found a violation of Article 1 of Protocol No. 1 to the Convention and awarded just compensation to the applicants in its judgment of December 18, 1984.

/QR code/

In the case of Loizidou v. Turkey, the European Court of Human Rights decided that the Republic of Turkey should compensate the applicant for moral and material damage to the applicant, who was forced to leave her place of residence as a result of Turkey's occupation of the northern part of Cyprus.

In paragraph 63 of the reasoning part of the judgment of December 18, 1996, the ECtHR noted that since the applicant had been denied the right of access to the property since 1974, she had in fact completely lost control over it, as well as the possibility to use it. This ongoing denial must be regarded as an interference with the rights under Article 1 of Protocol No. 1. Such interference, in the exceptional circumstances of the present case, as invoked by Mrs. Loizidou against the Government of Cyprus, cannot be regarded as a deprivation of property or of control over its use within the meaning of the first and second paragraphs of Article 1 of Protocol No. 1. At the same time, it undoubtedly falls within the scope of the rule contained in the first sentence of that Article, in particular, it constitutes a violation of the right to the unhindered enjoyment of one's property. In this regard, the Court considers that the actual impossibility of exercising this right is the same violation of the Convention as obstacles of a legal nature.

In determining the amount of compensation for the pecuniary damage suffered by Mrs. Loizidou, the European Court of Human Rights noted that the applicant continued to be the legal owner of nine plots of land and one apartment, and that the Court's conclusion on the violation of Article 1 of Protocol No. 1 was based on the fact that, as a result of the denial of the right of access to her land since 1974, the applicant had in fact completely lost control over her property, as well as the ability to use it. Consequently, the Court concluded that she was entitled to compensation for damages directly related to this violation of her rights.

The European Court of Human Rights, whose jurisdiction extends to all matters of interpretation and application of the Convention (paragraph 1 of Article 32 of the Convention), emphasizes in its case law that the impossibility of exercising the right to unhindered enjoyment of one's property caused by the actions or omissions of the state is a violation of the Convention. In this regard, the ECtHR has repeatedly expressed the need to compensate for pecuniary damage caused to owners of real estate as a result of loss of control over such property and inability to use it.

Article 17 of the Law of Ukraine "On the Execution of Judgments and Application of the Case Law of the European Court of Human Rights" imposes on the court the obligation to apply the Convention for the Protection of Human Rights and Fundamental Freedoms of 1950 and its Protocols, ratified by the Verkhovna Rada of Ukraine, and the case law of the European Court of Human Rights as a source of law when considering cases.

According to Article 15 of the Civil Code of Ukraine, every person has the right to protection of his or her civil right in case of its violation, non-recognition or contestation. Everyone has the right to protect their interest that does not contradict the general principles of civil law.

Pursuant to Article 16 of the Civil Code of Ukraine, every person has the right to apply to the court for protection of his or her personal non-property or property rights and interests. The ways to protect civil rights and interests may include: 1) recognition of a right; 2) invalidation of a transaction; 3) termination of an action that violates the right; 4) restoration of the situation that existed before the violation; 5) enforcement of an obligation in kind; 6) change of legal relations; 7) termination of legal relations; 8) compensation for losses and other ways of compensation for property damage 9) compensation for moral (non-pecuniary) damage; 10) recognition of decisions, actions or omissions of a state authority, authority of the Autonomous Republic of Crimea or local self-government body, their officials and employees as illegal. A court may protect a civil right or interest in another way established by an agreement or by law or by a court in cases determined by law. The court may refuse to protect a civil right and interest of a person in case of violation of the provisions of parts two through five of Article 13 of this Code.

Pursuant to Article 22 of the Civil Code of Ukraine, a person who has suffered damages as a result of a violation of his or her civil right is entitled to compensation. Losses are: 1) losses incurred by a person in connection with the destruction or damage of a thing, as well as expenses that a person has made or must make to restore his or her violated right (actual losses); 2) income that a person could have actually received under normal circumstances if his or her right had not been violated (lost profits). Damages are compensated in full, unless the contract or law provides for compensation in a smaller or larger amount. If the person who violated the right received income in connection with this, the amount of lost profit to be reimbursed to the person whose right was violated may not be less than the income received by the person who violated the right. At the request of the person who suffered the damage and in accordance with the circumstances of the case, property damage may be compensated in other ways, in particular, damage to property may be compensated in kind (transfer of a thing of the same kind and quality, repair of a damaged thing, etc.), unless otherwise provided by law.

Pursuant to Article 1166 of the Civil Code of Ukraine, property damage caused by unlawful decisions, actions or omissions, personal non-property rights of an individual or legal entity, as well as damage to property of an individual or legal entity, shall be compensated in full by the person who caused it. The person who caused the damage is exempt from compensation if he or she proves that the damage was caused through no fault of his or her own. Damage caused by injury, other damage to health or death of an individual as a result of force

*/QR code/*

majeure shall be compensated in cases established by law. Damage caused by lawful actions shall be reimbursed in cases established by this Code and other laws.

The court notes that in resolving disputes on compensation for damage under Article 1166 of the Civil Code of Ukraine, the following must be proved: the fact of damage, the unlawfulness of the actions of the damage causer and his/her fault, the causal link between the unlawful action and the negative consequences. The absence of at least one of these elements precludes liability for causing damage, and tort liability generally arises only if the tortfeasor is guilty.

In accordance with the UN General Assembly Resolution ES-11/1 of March 02, 2022, the military aggression of the Russian Federation was condemned as a violation of Article 2(4) of the UN Charter, as well as the sovereignty, independence and territorial integrity of Ukraine. In addition, the Russian Federation was obliged to cease the use of force against Ukraine and withdraw its armed forces beyond the internationally recognized borders of Ukraine.

Similar conclusions were reached by the International Court of Justice, which, in its Order on Interim Measures of March 16, 2022, in the case of allegations of genocide under the Convention on the Prevention and Punishment of the Crime of Genocide (Ukraine v. Russian Federation), ordered the Russian Federation to cease military aggression against Ukraine.

The UN General Assembly also adopted Resolution ES-12/1 of March 24, 2022, which further condemns Russia's military aggression against Ukraine, demands that the Russian Federation cease hostilities, including attacks against civilians and civilian objects, and condemns all violations of international humanitarian law and human rights violations and demands unconditional compliance with international humanitarian law, including the Geneva Conventions of 1949 and Additional Protocol I of 1977.

According to the Resolution of the Verkhovna Rada of Ukraine of April 14, 2022 "On the Statement of the Verkhovna Rada of Ukraine "On the Commitment of Genocide by the Russian Federation in Ukraine", the actions of the Armed Forces, political and military leadership of Russia during the armed aggression against Ukraine were recognized as genocide of the Ukrainian people, which began on February 24, 2022, and instructed the Chairman of the Verkhovna Rada of Ukraine to send this statement to the United Nations, the European Parliament, the Parliamentary Assembly of the Council of Europe, the OSCE Parliamentary Assembly, the NATO Parliamentary Assembly, and the governments and parliaments of foreign countries. The Chairman of the Verkhovna Rada of Ukraine is authorized to address the Prosecutor General's Office, the Ministry of Foreign Affairs of Ukraine and the Ministry of Justice of Ukraine to take immediate measures to properly document the facts of genocide of the Ukrainian people, crimes against humanity, war crimes, and other serious crimes committed by the Armed Forces of the Russian Federation and its political and military leadership on the territory of Ukraine and to initiate the prosecution of all perpetrators.

The rulings of the Grand Chamber of the Supreme Court of February 19, 2020 in case No. 210/4458/15-ц, January 30, 2020 in case No. 287/167/18-ц, and the ruling of the High Specialized Court of Ukraine for Civil and Criminal Cases of August 16, 2017 in case No. 761/9437/15-11 express the legal position that the fact of the armed aggression of the Russian Federation against Ukraine does not require judicial confirmation.

The preamble to the Law of Ukraine "On Ensuring the Rights and Freedoms of Citizens and the Legal Regime in the Temporarily Occupied Territory of Ukraine" states that Ukraine is a sovereign and independent state under the Constitution of Ukraine. The sovereignty of Ukraine extends to all of its territory, which is integral and inviolable within the existing border. The presence on the territory of Ukraine of units of the armed forces of other states in violation of the procedure established by the Constitution and laws of Ukraine, the Hague Conventions of 1907, the IV Geneva Convention of 1949, as well as in contravention of the Memorandum on Security Assurances in connection with Ukraine's accession to the 1994 Treaty on the Non-Proliferation of Nuclear Weapons, the 1997 Treaty of Friendship, Cooperation and Partnership between Ukraine and the Russian Federation, and other international legal acts, constitutes the occupation of a part of the territory of the sovereign state of Ukraine and an internationally wrongful act with all the consequences provided for by international law.

The preamble to the Law of Ukraine "On Ensuring the Rights and Freedoms of Citizens and the Legal Regime in the Temporarily Occupied Territory of Ukraine" states that Ukraine is a sovereign and independent state under the Constitution of Ukraine. The sovereignty of Ukraine extends to all of its territory, which is integral and inviolable within the existing border. The presence on the territory of Ukraine of units of the armed forces of other states in violation of the procedure established by the Constitution and laws of Ukraine, the Hague Conventions of 1907, the IV Geneva Convention of 1949, as well as in contravention of the Memorandum on Security Assurances in connection with Ukraine's accession to the 1994 Treaty on the Non-Proliferation of Nuclear Weapons, the 1997 Treaty of Friendship, Cooperation and Partnership between Ukraine and the Russian Federation, and other international legal acts, constitutes the occupation of a part of the territory of the sovereign state of Ukraine and an internationally wrongful act with all the consequences provided for by international law.

Pursuant to part 3 of Article 85 of the Commercial Procedural Code of Ukraine, circumstances recognized by the court as generally known do not require proof.

*/QR code/*

Thus, the unlawfulness of the defendant's act as an integral element of the fact of Russia's armed aggression against Ukraine within the meaning of part 3 of Article 85 of the Commercial Procedural Code of Ukraine is a well-known fact that is enshrined in law by the state and recognized at the highest international level.

A prerequisite for imposing liability is a direct causal link between the violations committed and the damages incurred. The grounds for compensation for the losses incurred are caused by the violation, i.e., a direct causal link between the actions of one party and the reduction of the property rights of the other.

Thus, according to the provisions of Article 74 of the Commercial Procedural Code of Ukraine, each party must prove the circumstances to which it refers as the basis for its claims or objections. If a party to the case refers to the failure of another party to the case to perform certain actions or the absence of a certain event, the court may oblige such other party to the case to provide relevant evidence of the performance of these actions or the existence of a certain event. In case of failure to provide such evidence, the court may recognize the circumstance of failure to perform the relevant actions, or the absence of an event as established. Evidence is submitted by the parties and other participants in the case. The court may not collect evidence related to the subject matter of the dispute on its own initiative, except for the court's request for evidence if it has doubts about the good faith exercise of procedural rights or fulfillment of obligations regarding evidence by the parties to the case.

Pursuant to Article 86 of the Commercial Procedural Code of Ukraine, the court evaluates evidence according to its internal conviction based on a comprehensive, complete, objective and direct examination of the evidence available in the case. No evidence has a predetermined force for the court. The court evaluates the relevance, admissibility, and reliability of each piece of evidence separately, as well as the reliability and interconnection of the evidence in its entirety. The court evaluates both the evidence collected in the case as a whole and each evidence (group of similar evidence) contained in the case, motivates the rejection or consideration of each evidence (group of evidence).

Pursuant to part one of Article 74 of the Commercial Procedure Code of Ukraine, evidence is considered to be relevant if it is possible to establish the circumstances that are the subject of proof.

The need to prove the circumstances to which a party to a case refers as the basis for its claims and objections in commercial proceedings is part of the obligation to promote a comprehensive, complete and objective establishment of all the circumstances of the case, which includes, in particular, the submission of proper evidence, i.e., evidence that confirms the circumstances that are the subject of proof in the case, with appropriate reference to the circumstances that this evidence confirms.

A similar legal position is set forth in the resolutions of the Supreme Court of February 05, 2019, in case No. 914/1131/18, of February 26, 2019, in case No. 914/385/18, of April 10, 2019, in case No. 04/6455/17, of November 05, 2019, in case No. 915/641/18.

At the same time, one of the basic principles of commercial litigation is the principle of competition.

This principle means that each party must prove the circumstances to which it refers in support or denial of claims.

The adversarial principle ensures that the circumstances of the case are fully investigated. This principle provides for the burden of proof to be placed on the parties. At the same time, this principle does not imply the obligation of the court to consider the circumstance alleged by a party to be proven and established. Such a circumstance must be proved in such a way as to satisfy, as a rule, the standard of preponderance of the evidence, i.e. when the conclusion about the existence of the alleged circumstance, taking into account the evidence presented, seems more likely than the opposite (a similar legal position is set out in the resolutions of the Supreme Court of November 18, 2019 in case No. 902/761/18, and of August 20, 2020 in case No. 914/1680/18).

A court decision must be based on the rule of law, be lawful and reasonable. A court decision is lawful if it is made in accordance with the substantive law and in compliance with the procedural law. The court decision must meet the objective of the commercial proceedings. A substantiated decision is one made on the basis of fully and comprehensively clarified circumstances, which the parties refer to as the basis for their claims and objections, supported by the evidence examined in the court hearing. with an assessment of all arguments of the parties to the case.

Claims, as well as objections to them, are generally substantiated by certain circumstances and relevant evidence, which are subject to investigation, including verification and analysis. All of this must be analyzed by the court both in the aggregate (as a whole) and each piece of evidence separately and reflected in the court decision.

In addition, pursuant to Article 79 of the Commercial Procedural Code of Ukraine, the existence of a circumstance to which a party refers as the basis for its claims or objections is deemed proven if the evidence provided to confirm such circumstance is more probable than the evidence provided to refute it. The court decides on the reliability of evidence to establish the circumstances relevant to the case in accordance with its internal conviction.

/QR code/

The "credibility of evidence" standard of proof, unlike the "sufficiency of evidence" standard, emphasizes the need for the court to compare the evidence provided by the plaintiff and the defendant. In other words, with the introduction of the new standard of proof, it is not necessary to provide enough evidence to prove a certain circumstance, but to provide exactly the amount of evidence that can outweigh the arguments of the opposing party to the litigation.

Interpretation of the content of this article shows that it imposes on the court the obligation to evaluate the evidence and circumstances of the case in terms of their probability, which allows to conclude that the facts under consideration were (took place) rather than did not take place.

In the present case, the court considers it possible to refer to the principle of greater probability, which was referred to by the Supreme Court, in particular, in cases No. 921/319/17-г and No. 908/1581/17.

The court takes into account the fact that the territory of the assets (real estate, industrial buildings and structures, production facilities, industrial equipment, etc.) owned by the plaintiff, namely the entire territory of Luhansk region, including the territory of the Rubizhne city territorial community, is included in the list of territories temporarily occupied by the Russian Federation by the Order of the Ministry of Reintegration of the Temporarily Occupied Territories of Ukraine "On Approval of the List of Territories in which Military Operations are (were) Conducted or Temporarily Occupied by the Russian Federation" dated December 22, 2022, No. 309, it is included in the list of territories temporarily occupied by the Russian Federation.

The defendant did not provide evidence of the absence of the fact of illegal stay and seizure of the territory of the Rubizhne City Territorial Community of the Sievierodonetsk District of the Luhansk Region, the absence of restrictions on free access to the occupied territories since February 24, 2022. Moreover, the Russian Federation is taking actions aimed at the illegal annexation of the occupied territories and the establishment of the public legal order of the Russian Federation on them.

According to Article 1 of the Law of Ukraine "On Ensuring the Rights and Freedoms of Citizens and the Legal Regime in the Temporarily Occupied Territory of Ukraine", the territory of Ukraine temporarily occupied by the Russian Federation is the parts of the territory of Ukraine within which the armed forces of the Russian Federation and the occupation administration of the Russian Federation have established and exercise actual control or within which the armed forces of the Russian Federation have established and exercise general control with the aim of establishing the occupation administration of the Russian Federation.

In this case, the principle of greater probability in conjunction with the principle of reasonableness and taking into account the evidence and explanations provided by the plaintiff allows the court to conclude that the occupation of the territory of Luhansk region under occupation by the Russian occupation forces under conditions of martial law and military aggression obviously deprived the plaintiff of free and unimpeded access to his property and property obtained for use for economic activity, which is located in such a zone of temporary occupation.

At the same time, the fact that the occupation forces seized the territories where the Plaintiff's production facilities are located and deprived the Plaintiff of access to these territories and production equipment as a result of the military aggression of the Russian Federation and the occupation of certain territories of Ukraine is in direct causal connection with the loss of the Plaintiff's ability to carry out economic activities, since before the military invasion, under normal circumstances, the Plaintiff had a legally and practically secured opportunity to carry out statutory activities to achieve the purpose for which the goods, to legally expect and reasonably hope to make a profit from its activities under normal circumstances, in particular from the production and subsequent sale of finished products.

Taking into account the evidence submitted by the plaintiff and examined at the hearing, the court considers it proven that the plaintiff took all necessary and dependent measures to obtain the income that it could and should have received under normal circumstances, and only the defendant's illegal actions, namely the defendant's military invasion and occupation of certain territories of Ukraine, made it impossible for the plaintiff to fulfill the terms of the contract, led to its termination and became the sole and sufficient reason that deprived the plaintiff of the opportunity to make a profit.

Thus, the military aggression of the Russian Federation, the occupation, and the illegal extension of the defendant's jurisdiction in certain territories of Ukraine, which led to interference with the plaintiff's established economic and legal relations, is directly causally related to the deprivation of the plaintiff of access to its property, the impossibility of exercising control over the property, and, as a result, the deprivation of the ability to exercise the rights of ownership, use and disposal of property, which caused the plaintiff losses.

With regard to fault as an element of a civil offense, Ukrainian law does not impose on the plaintiff the obligation to prove the defendant's fault in causing damage; the presumption of fault applies, i.e., the absence of fault in causing damage must be proved by the tortfeasor. If this presumption is not refuted during the proceedings, it is a legal basis for concluding that the damage caused by the defendant is guilty. In this context, it is the defendant who must prove the absence of his/her fault in the disputed legal relations. The above conclusion is confirmed by the Supreme Court, in particular, in its decision of April 21, 2021, in case No. 648/2035/17, and its decision of February 14, 2018, in case No. 686/10520/15-ц.

*/QR code/*

The Court takes into account that the protection of property rights is guaranteed by the first article of the Additional Protocol to the European Convention on Human Rights, and liability for violation of this right rests directly with the state and occurs when any act of the state has as its direct consequence the application of prohibited treatment to a person.

In addition, according to paragraphs 1, 3 of the Hague Convention on the Laws and Customs of War on Land of 1907, liability in the form of compensation for damages in case of violation of the rules and customs of warfare is imposed on the state as a whole, as a belligerent. Therefore, the recovery of the relevant damage should also be carried out from the state as a whole, at the expense of all its assets, including the property of units of the specific apparatus of the state that performs its functions, including both state bodies and other enterprises, organizations, institutions that perform the relevant state functions.

Pursuant to part 1 of Article 167 of the Civil Code of Ukraine, the state acts in civil relations on equal terms with other parties to these relations.

Pursuant to Article 170 of the Civil Code of Ukraine, the state acquires and exercises civil rights and obligations through public authorities within their competence established by law.

The state is a specific subject of legal relations. The state is understood as an organization of political power of the dominant part of the population in a socially heterogeneous society, which, ensuring the integrity and security of society, governs it primarily in the interests of this part, as well as manages public affairs. The defining features of the state include the existence of a specific apparatus for the performance of its tasks and functions, which has power and material means to exercise these powers. The functions of the state are realized through a specific apparatus, the procedure of formation, legal status and powers of which are determined by the state itself.

In accordance with the legal opinion expressed by the Grand Chamber of the Supreme Court in its decision of November 27, 2019 in case No. 242/4741/16-ц, the proper defendant in cases of compensation for damage caused by a public authority, their official or employee is the state as a party to civil relations, usually represented by the body that the plaintiff claims to be the violator of his rights.

Paragraphs 1 and 3 of the 1907 Hague Convention relative to the Laws and Customs of War on Land stipulate that the Contracting States shall issue orders to their land forces that are in accordance with the Regulations respecting the Laws and Customs of War on Land. A belligerent party that violates the provisions of the Regulations shall be liable for compensation for damages, if there are grounds for this. It shall be responsible for all acts committed by persons forming part of its armed forces.

Thus, in accordance with the above provisions of the Civil Code of Ukraine and the above Convention, the belligerent state as a whole is responsible for damage caused by violations of the laws and customs of war, regardless of which particular unit of its armed forces caused the damage.

Part 9 of Article 5 of the Law of Ukraine "On Ensuring the Rights and Freedoms of Citizens and the Legal Regime in the Temporarily Occupied Territory of Ukraine" provides that compensation for material and moral damage caused by the temporary occupation to the state of Ukraine, legal entities, public associations, citizens of Ukraine, foreigners and stateless persons is fully borne by the Russian Federation as the occupying power.

In such circumstances, filing a claim against the Russian Federation as a state as a whole not only complies with the provisions of the substantive law, but is an effective way to protect the plaintiff's right.

As for the amount of damages, the court notes that the Resolution of the Cabinet of Ministers of Ukraine No. 326 of March 20, 2022 approved the Procedure for Determining the Damage and Losses Caused to Ukraine as a Result of the Armed Aggression of the Russian Federation (hereinafter referred to as the Procedure), which establishes the procedure for determining the damage and losses caused to Ukraine as a result of the armed aggression of the Russian Federation (hereinafter referred to as damage and losses), starting from February 19, 2014.

According to subpara. 18, paragraph 2 of the Procedure, damage and losses are determined separately in the following areas: economic losses of enterprises (except for enterprises of the defense industry), including business entities - this area includes losses of enterprises of all forms of ownership due to destruction and damage to their property, loss of financial assets, as well as lost profits from the inability or obstacles to conduct business activities.

Key indicators to be assessed (in particular):
- the cost of lost, destroyed or damaged property of non-state-owned enterprises;
- the value of lost financial assets of non-state-owned enterprises.

According to paragraph 5 of the "General Principles of Assessment of Damage to Property and Property Rights as a Result of the Armed Aggression of the Russian Federation", which is an Annex to the Procedure, the assessment of damage to victims is carried out by conducting an analytical assessment of damage, a standardized, independent assessment of damage or is the result of a forensic examination.

The Plaintiff turned to the certified appraiser, Consulting Services Agency LLC, to conduct an independent appraisal of the property, namely to determine the amount of losses incurred by Limited Liability

*/QR code/*

Company Research and Production Enterprise Zorya in the form of lost profits, which the Plaintiff is entitled to expect in the absence of the armed aggression of the Russian Federation, and to determine the amount of actual losses caused by the armed aggression of the Russian Federation.

According to the conclusion of the appraiser, Consulting Services Agency LLC, set out in the Report dated June 27, 2023, the market value of the object of appraisal - the lost profit from the impossibility or obstacles in the conduct of economic activities of Limited Liability Company Research and Production Enterprise Zorya as a result of the armed aggression of the Russian Federation in Ukraine as of June 06, 2023 is UAH 9,138,297,993.13. (nine billion one hundred and thirty-eight million two hundred and ninety-seven thousand nine hundred and ninety-three hryvnias and 13 kopecks), which corresponds to the official exchange rate of the hryvnia against foreign currencies established by the NBU as of the valuation date - USD 249,894,663.54 or EUR 233,753,724.85, of which:

- UAH 497,503,441.72 (four hundred and ninety-seven million five hundred and three thousand four hundred and forty-one hryvnias 72 kopecks) determined for the period from February 24, 2022 to the valuation date of June 06, 2023, which corresponds to the official exchange rate of the hryvnia against foreign currencies established by the NBU as of the valuation date - USD 13,604,661.97 or EUR 12725,923.66;

- UAH 8,640,794,551.41 (eight billion six hundred and forty million seven hundred and ninety-four thousand five hundred and fifty-one hryvnias 41 kopecks) - the amount of lost profits expected in the future, calculated for the period from the valuation date of June 06, 2023 to June 06, 2028. which corresponds to the official exchange rate of the hryvnia against foreign currencies established by the NBU as of the valuation date - USD 236,290,001.57 or EUR 221,027,801.19.

According to the review dated July 03, 2023, conducted by the reviewers of the Public Organization Pan Ukrainian Association of Valuation Specialists, the above report is classified as generally compliant with the requirements of the regulations on property valuation.

Therefore, the plaintiff determined the amount of damages in the form of lost profits by conducting an independent appraisal to establish the market value of the property, which complies with the requirements of applicable law.

In addition, according to the conclusion of the appraiser, Consulting Services Agency LLC, set out in the Report dated February 28, 2023, the market value of the object of valuation - the lost assets of Limited Liability Company Research and Production Enterprise Zorya as a result of the armed aggression of the Russian Federation in Ukraine as of September 01, 2022 is as follows:

- UAH 948,865,685.00, which corresponds to USD 25,947,552.80 or EUR 25,776,715.05 at the official exchange rate of the hryvnia against foreign currencies established by the NBU as of the valuation date.

According to the review dated March 16, 2023, conducted by the reviewers of the Public Organization Pan Ukrainian Association of Valuation Specialists, the above report dated February 28, 2023, was classified as generally compliant with the requirements of the current legislation.

Thus, the plaintiff determined the amount of actual damages in the form of lost assets by conducting an independent appraisal to establish the market value of the property, which complies with the requirements of the law.

The independent appraisal was performed with the involvement of the appraiser Kravets Andrii Volodymyrovych, appraiser's qualification certificates: series МФ No. 3385 dated February 26, 2005, series ЦМК No. 343 dated October 06, 2007, series MK No. 00018 dated November 01, 2008, certificate of advanced training series ЦМК No. 3936-ПК dated September 27, 2022.

Therefore, the plaintiff proved the amount of damages with appropriate evidence.

Summarizing the above, the court found that the plaintiff had proved the full scope of the civil offense, which is a condition and basis for imposing such a liability measure as damages against the defendant.

When making a legal assessment of the appropriateness of the remedy chosen by the Plaintiff, the court should take into account its effectiveness in terms of Article 13 of the Convention for the Protection of Human Rights and Fundamental Freedoms.

In para. 145 of the judgment of November 15, 1996 in the case of Chahal v. the United Kingdom (22414/93 [1996] ECHR 54), the European Court of Human Rights noted that the mentioned norm guarantees effective legal means at the national level for the exercise of the rights and freedoms provided for by the Convention, regardless of how they are expressed in the legal system of a particular country. Thus, the essence of this article is reduced to the requirement to provide an individual with such measures of legal protection at the national level that would allow the competent state authority to consider the merits of complaints of violations of the Convention and provide appropriate judicial protection, although the States parties to the Convention have some discretion as to how they ensure the fulfillment of their obligations in this regard. In addition, the Court pointed out that in some circumstances the requirements of Article 13 of the Convention may be enforced by the full range of means provided for by national law.

Article 13 requires that the provisions of the national remedy address the substance of a "well-founded claim" under the Convention and provide appropriate redress. The content of the obligations under Article 13

*/QR code/*

also depends on the nature of the applicant's complaint under the Convention. Nevertheless, the remedy required by the said Article must be "effective" both in law and in practice, in particular, in the sense that its use is not hampered by the actions or omissions of the authorities of the state concerned (paragraph 75 of the decision of the European Court of Human Rights in the case of Afanasiev v. Ukraine of April 5, 2005 (application No. 38722/02)).

In view of the above, an effective remedy should ensure the restoration of the violated right, and in case of impossibility of such restoration, it should guarantee the person the possibility of obtaining appropriate compensation. The rights of a person in court should be protected in a way that will actually restore his or her violated interests.

In view of the above, the court notes that the plaintiff's claim for damages from the defendant is an effective way to protect the violated right within the meaning of the Convention for the Protection of Human Rights and Fundamental Freedoms and will actually lead to the restoration of his violated rights.

Based on the foregoing, taking into account the factual circumstances of the case and the above-mentioned legal provisions, the court concludes that the claim is fully satisfied.

When filing a lawsuit, the plaintiff did not pay the court fee, as he was exempt from paying it by virtue of the provisions of para. 22 of Part 1 of Article 5 of the Law of Ukraine "On Court Fees" - plaintiffs are exempt from paying court fees during the consideration of a case in all courts - in cases involving claims against the aggressor state of the Russian Federation for compensation for property and/or non-pecuniary damage caused by the temporary occupation of the territory of Ukraine, armed aggression, armed conflict that led to forced displacement from the temporarily occupied territories of Ukraine, death, injury, captivity, illegal imprisonment or abduction, as well as violation of the right to ownership of movable and/or immovable property.

Pursuant to part 2 of Article 129 of the Commercial Procedural Code of Ukraine, the court fee, from which the plaintiff is duly exempted, is collected from the defendant to the budget in proportion to the amount of the satisfied claims, unless the defendant is exempted from paying the court fee.

Pursuant to Article 4 of the Law of Ukraine "On Court Fees", court fees are levied in the appropriate amount of the subsistence minimum for able-bodied persons established by law as of January 1 of the calendar year in which the relevant application or complaint is filed with the court - as a percentage of the amount of the claim and in a fixed amount. For filing a property claim with a commercial court, the court fee rate is 1.5 percent of the amount of the claim, but not less than 1 minimum subsistence level for able-bodied persons and not more than 350 minimum subsistence levels for able-bodied persons.

Since 1.5% of the claim amount (at the official NBU exchange rate) exceeds 350 times the minimum subsistence level for able-bodied persons, the court fee for the case is a maximum of UAH 939,400.00.

Since the claim was fully satisfied, the said amount of the court fee shall be recovered from the defendant to the State Budget of Ukraine in full.

Pursuant to paragraph 1 of part 4 of Article 129 of the Commercial Procedure Code of Ukraine, court costs associated with the case are borne by the defendant if the claim is satisfied.

Guided by Articles 7, 9 of the Bankruptcy Code of Ukraine, Articles 46, 74, 80, 129, 238, 240, 241 of the Commercial Procedural Code of Ukraine, the Economic Court

### RULED:

**1. To satisfy the claim in full.**

**2. To recover** from the state of the Russian Federation (119991, Moscow, 14 Zhitnaya Street, building 1) in favor of the Limited Liability Company Research and Production Enterprise Zorya (69001, Zaporizhzhia region, Zaporizhzhia, 2, Peremohy Street, USREOU code 36999957) in the amount of UAH 10,087,163,678.13 as compensation for damages (ten billion eighty-seven million one hundred and sixty-three thousand six hundred and seventy-eight hryvnias 13 kopecks), which corresponds to the official exchange rate of hryvnia against foreign currencies established by the NBU - USD 275,842,216.34 (two hundred seventy-five million eight hundred forty-two thousand two hundred and sixteen US dollars 34 cents) or EUR 259,530,439.90 (two hundred fifty-nine million five hundred thirty thousand four hundred and thirty-nine euros 90 cents), of which:

- the amount of losses in the form of lost assets as a result of the armed aggression of the Russian Federation in the amount of UAH 948,865,685.00. (nine hundred and forty-eight million eight hundred and sixty-five thousand six hundred and eighty-five hryvnias 00 kopecks) (excluding VAT), which corresponds to the official exchange rate of the hryvnia against foreign currencies established by the NBU as of the valuation date - USD 25,947,552.80 (twenty-five million nine hundred forty-seven thousand five hundred fifty-two US dollars and 80 cents) or EUR 25,776,715.05 (twenty-five million seven hundred seventy-six thousand seven hundred fifteen euros and 05 euro cents);

- the amount of losses in the form of lost profits for the period from February 24, 2022, to June 06, 2023, in the amount of UAH 497,503,441.72. (four hundred and ninety-seven million five hundred and three thousand four hundred and forty-one hryvnias and 72 kopecks), which corresponds to the official exchange rate of hryvnia

*/QR code/*

against foreign currencies established by the NBU - USD 13,604,661.97 (thirteen million six hundred and four thousand six hundred and sixty-one US dollars 97 cents) or EUR 12,725,923.66 (twelve million seven hundred and twenty-five thousand nine hundred and twenty-three euros 66 euro cents);

- the amount of damages in the form of lost profits for the period from June 06, 2023 to June 06, 2028 in the amount of UAH 8,640,794,551.41 (eight billion six hundred and forty million seven hundred and ninety-four thousand five hundred and fifty-one hryvnias 41 kopecks), which corresponds to the official exchange rate of hryvnia against foreign currencies established by the NBU as of the valuation date - USD 236,290,001.57 (two hundred and thirty-six million two hundred and ninety thousand one US dollars 57 cents) or EUR 221,027,801.19 (two hundred and twenty-one million twenty-seven thousand eight hundred and one euros 19 euro cents).

**3. To recover** from the state of the Russian Federation (119991, Moscow, 14 Zhitnaya Street, building 1) to the State Budget of Ukraine (recipient: Main Department of the Treasury in Zaporizhzhia region, Voznesenivskyi district) 22030101, recipient code (USREOU code) 37941997, recipient bank: Treasury of Ukraine (electronic tax administration), recipient bank code (MFO) 899998, recipient account) UAH 939,400.00 (nine hundred thirty-nine thousand four hundred hryvnias 00 kopecks) of court fee.

**4. To issue orders.**

The full text of the court decision was drawn up and signed on December 01, 2023.

Judge                                                    O.O. Yuldashev

**The decision of the economic court comes into force after the expiration of the term for filing an appeal, if no appeal was filed. If an appeal is filed, the decision, if not reversed, becomes effective upon return of the appeal, refusal to open or close the appeal proceedings, or adoption of a resolution of the appellate court following the results of the appellate review. Pursuant to Article 256 of the Code of Civil Procedure of Ukraine, an appeal against a court decision shall be filed within twenty days from the date of its announcement, if only the introductory and operative parts of the court decision were announced at the court hearing, or in case of consideration of the case (resolution of the issue) without notification (summoning) of the parties to the case, the said period shall be calculated from the date of the full court decision.**

/stamp/: *True copy*
*Assistant Judge*                        */signature/*                        *T.V. Tishchenko*

*/seal/: UKRAINE\* ECONOMIC COURT OF ZAPORIZHZHIA REGION\* Identification code 03500105\* FOR COPIES*

*True copy*
*Judge Yuldashev Oleksii Oleksiiovych*
*May 14, 2024 /signature/*
*/seal/: Ukraine\* Economic Court Of Zaporizhzhia Region\* Identification code 03500105*

*16 (sixteen) pages are stitched and numbered*
*Court reporter Lisovyk O.V.*
*/signature/ May 14, 2024*
*/seal/: Ukraine\* Economic Court Of Zaporizhzhia Region\* Identification code 03500105\*COURT OFFICE*

/QR code/

*Переклад тексту цього документу з української мови на англійську мову виконано мною, перекладачем Сосновською Наталією Володимирівною*

*Підпис:* 

**Місто Київ, Україна четвертого червня дві тисячі двадцять четвертого року.**

Я, Литвина Л.О., приватний нотаріус Київського міського нотаріального округу, засвідчую справжність підпису перекладача *Сосновської Наталії Володимирівни*, який зроблено у моїй присутності.

Особу перекладача встановлено, його дієздатність та кваліфікацію перевірено.

Зареєстровано в реєстрі за №_____ *28749*

**Приватний нотаріус** **Л.О. Литвина**

*Всього прошито (або прошнуровано), пронумеровано і скріплено печаткою*

_____ *аркуша*

*Приватний нотаріус*

---

*The translation of this document **from Ukrainian language into English language** was made by me, the translator*

 *Sosnovska Nataliia Volodymyrivna     /signature/*

**Kyiv city, Ukraine, 04/06/2024.**

 *I, L.O. Lytvyna, private notary of Kyiv city notary district, hereby certify the authenticity of the signature of, which is made in my presence.*

*The translator's identity, capacity and qualification have been verified.*

Registration No. _____

**Private notary   /signature/ L.O. Lytvyna**

*номер провадження справи 26/23/22*



## ГОСПОДАРСЬКИЙ СУД ЗАПОРІЗЬКОЇ ОБЛАСТІ

# РІШЕННЯ
## ІМЕНЕМ УКРАЇНИ

**28.11.2023**                                    Справа № 908/1242/22(908/2670/23)
м.Запоріжжя Запорізької області

**Суддя Юлдашев Олексій Олексійович,** розглянувши матеріали господарської справи
**за позовом** Товариства з обмеженою відповідальністю "Науково-виробниче підприємство
"Зоря", код ЄДРПОУ 36999957 (69001, м. Запоріжжя, вул. Перемоги, 2)
**до відповідача**: Російської Федерації місцезнаходження: 119991, м. Москва, вул. Житня, 14,
будівля 1, код ISO: RU/RUS 643, код ЄДРПОУ: не відомий, офіційна електронна адреса: не
відома, адреса електронної пошти: не відома;

місцезнаходження посольства Російської Федерації в Україні: 03049, м. Київ, проспект
Повітрофлотський, 27, номери засобів зв`язку : +38 044 248 05 06; +38 044 246 34 69;

місцезнаходження посольства Російської Федерації в Швейцарській Конфедерації: 3006, м.
Берн, Браунандернрайн, 37, номери засобів зв`язку: + 41 (0)31/352 05 66; + 41 (0)31/352 64
65; + 41 (0)31/352 05 68, офіційна електронна адреса: не відома, адреса електронної пошти:
consbern@mid. ru; embassy, bern@mid. ru

місцезнаходження посольства Російської Федерації в Німеччині: 10117, м. Берлін, Унтер ден
Линден, 63-65, номери засобів зв`язку: + 49-30-229-11-10; + 49-30-229-11-29; + 41-30-229-93-
97, офіційна електронна адреса: не відома, адреса електронної пошти: berlin@mid. ru

місцезнаходження посольства Російської Федерації в Бельгії: Avenue De Fre 66, 1180 Uccle.
номери засобів зв`язку: + 32(0)2 374-34-00, +32(0)2 374-68-86, +32(0)2 375-39-18, +32(0)2
374-57-38 офіційний сайт: www. belgium.mid.ru офіційна електронна адреса: не відома.
адреса електронної пошти: amrusbel@skynet.be, amrusbel@inbox.ru
**про стягнення 10     087     163     678,13 грн**

в межах справи № 908/1242/22

**про банкрутство**     Товариства з обмеженою відповідальністю "Науково-виробниче
підприємство "Зоря"
**кредитори -**  1/ Адвокатське об`єднання "Аюрлекс"
2/ Приватне акціонерне товариство "Шахтоуправління "Покровське"
3/ Товариство з обмеженою відповідальністю "Трейд Кепітал Фін"
4/ Публічне акціонерне товариство "МТБ Банк"

**За участю (найменування сторін та інших осіб, що беруть участь у справі):**
Позивач   Ведєрнікова Олена Сергіївна (в режимі відеоконференції)

*9*2387518*1*0*

## УСТАНОВИВ:

22 серпня 2023 року до Господарського суду Запорізької області надійшла позовна заява Товариства з обмеженою відповідальністю "Науково-виробниче підприємство "Зоря" (далі-позивач) до держави Російської Федерації, про відшкодування збитків у розмірі 10 087 163 678,13 грн.

В обгрунтування заявлених вимог позивач посилається на те, що збройна агресія Російської Федерації проти України, тимчасова окупація, оточення та захоплення окремих територій Луганської області призвели до спричинення шкоди позивачу у вигляді упущеної вигоди, внаслідок чого позивач зазнав збитків на загальну суму 10 087 163 678,13 грн.

Враховуючи наявність в провадженні Господарського суду Запорізької області справи № 908/1242/22 про банкрутство Товариства з обмеженою відповідальністю "Науково-виробниче підприємство "Зоря" позовна заява розглядається в межах цієї справи.

Господарський суд Запорізької області ухвалою від 23.08.2023 року прийняв позовну заяву до розгляду, відкрив провадження у справі за правилами загального позовного провадження, підготовче засідання призначив на 26.09.2023 р.

Визначаючи чи поширюється на Російську Федерацію судовий імунітет у справі, яка розглядається, суд в ухвалі від 23.08.2023 про відкриття провадження у справі врахував наступне.

Згідно з ч. 1 ст. 79 Закону України «Про міжнародне приватне право», пред'явлення позову до іноземної держави, залучення іноземної держави до участі в справі як відповідача або третьої особи, накладення арешту на майно, яке належить іноземній державі та знаходиться на території України, застосування щодо такого майна інших засобів забезпечення позову та звернення стягнення на таке майно можуть бути допущені лише за згодою компетентних органів відповідної держави, якщо інше не передбачено міжнародним договором України або законом України.

У даній справі, позивач звернувся до суду з позовом зокрема до Російської Федерації про відшкодування шкоди, завданої йому внаслідок збройної агресії та вчинення протиправних дій на тимчасово окупованих територіях зі сторони Російської Федерації на території України.

У цій категорії спорів (про відшкодування шкоди, завданої у результаті збройної агресії РФ) іноземна держава-відповідач не користується судовим імунітетом проти розгляду судами України таких судових справ.

У таких висновках суд керується тим, що дії іноземної держави вийшли за межі своїх суверенних прав, оскільки будь-яка іноземна держава не має права втручатися шляхом збройної агресії в іншу країну.

У п. 4 ч. 1 ст. 2 Статуту ООН закріплений принцип, згідно з яким всі члени Організації Об'єднаних Націй утримуються у їх міжнародних відносинах від загрози силою чи її застосування як проти територіальної недоторканності чи політичної незалежності будь-якої держави, так і будь-яким іншим чином, несумісним з Цілями Об'єднаних Націй.

Відповідно до ч. 1 ст. 1 Статуту ООН Організація Об'єднаних Націй переслідує ціль підтримувати міжнародний мир і безпеку і з цією ціллю вживати ефективні колективні заходи для попередження та усунення загрози світу й актів агресії чи інших порушень миру, і проводити мирними засобами, відповідно до принципів справедливості і міжнародного права, залагодження чи вирішення міжнародних спорів чи ситуацій, які можуть призвести до порушення миру.

У міжнародному праві, зокрема Декларації про принципи міжнародного права щодо дружніх відносин і співробітництва між державами відповідно до Статуту ООН від

24.10.1970, кодифіковані підстави для обмеження судового імунітету іноземної держави внаслідок завдання фізичної шкоди особі або збитків майну, так званий «деліктний виняток» (англ. «tortexception»). Умовами, необхідними для застосування «деліктного винятку», є: 1) принцип територіальності: місце дії/бездіяльності має бути на території держави суду; 2) присутність автора дії/бездіяльності на території держави суду в момент вчинення дії/бездіяльності (агента чи посадової особи іноземної держави); 3) дія/бездіяльність ймовірно може бути привласнена державі; 4) відповідальність за дії/бездіяльність передбачена положеннями законодавства держави суду; 5) завдання смерті, фізичної шкоди особі, збитків майну чи його втрата; 6) причинно-наслідковий зв'язок між діями/бездіяльністю і завданням смерті, фізичної шкоди особі або збитків майну чи його втратою.

Визначаючи, чи поширюється на РФ судовий імунітет у даній справі, суд врахував таке: предметом позову є відшкодування шкоди, завданої юридичній особі внаслідок збройної агресії Російської Федерації проти України, тимчасової окупації, оточення та протиправних дій на захоплених територіях; місцем завдання шкоди є територія суверенної держави Україна; передбачається, що школа завдана РФ, яка порушила принципи та цілі, закріплені у Статуті ООН, щодо заборони військової агресії, вчинення стосовно іншої держави - України; вчинення актів збройної агресії іноземною державою не є реалізацію її суверенних прав, а свідчить про порушення зобов'язання поважати суверенітет та територіальну цілісність іншої держави - України, що закріплено у Статуті ООН; національне законодавство України виходить із того, що за загальним правилом шкода, завдана в Україні особі в результаті протиправних дій будь-якої іншої особи (суб'єкта), може бути відшкодована за рішенням суду України (за принципом «генерального делікту»).

Крім того, юрисдикція судів України поширюється на будь-який юридичний спір та будь-яке кримінальне обвинувачення. У передбачених законом випадках суди розглядають також інші справи (частина третя статті 124 Конституції України). Тобто, у разі застосування «деліктного винятку» будь-який спір, що виник на її території у громадянина України, навіть з іноземною країною, зокрема й РФ, може бути розглянутий та вирішений судом України як належним та повноважним судом.

Як Україна, так і РФ на момент спричинення шкоди позивачу були учасницями міжнародних договорів, а саме:
- Конвенція про правову допомогу та правові відносини у цивільних, сімейних та кримінальних справах від 22.01.1993 р. (далі - Конвенція про правову допомогу). Вказана Конвенція була підписана і Україною, і РФ та була ратифікована: Україною - відповідно до Закону України від 10 листопада 1994 року № 240/94-ВР; РФ - відповідно до Федерального закону від 04.08.1994 № 16-ФЗ;
- Угоди про порядок вирішення спорів, пов'язаних із здійсненням господарської діяльності від 20.03.1992 (далі - Угода). Наведена Угода була підписана і Україною, і РФ та була ратифікована: Україною - відповідно до постанови Верховної Ради України від 19 грудня 1992 року № 2889-XII; РФ - постановою верховної ради РФ від 9 жовтня 1992 року № 3620-1.

Станом на час винесення рішення суду у даній справі, Україна відповідно до Закону України від 01 грудня 2022 року № 2783-IXзупинила дію у відносинах з Російською Федерацією та Республікою Білорусь та вийшла з Конвенції про правову допомогу і правові відносини у цивільних, сімейних та кримінальних справах та Протоколу до Конвенції про правову допомогу і правові відносини у цивільних, сімейних та кримінальних справах від 22.01.1993 р., а також відповідно до Закону України від 12 січня 2023 року № 2855-IX вийшла з Угоди про порядок вирішення спорів, пов'язаних із здійсненням господарської діяльності від 20.03.1992. Проте суд застосовує вказані нормативні акти, як такі, що діяли на час виникнення спірних правовідносин.

Згідно із ст. 1 Конвенції про правову допомогу громадяни кожної з Договірних Сторін, а також особи, які проживають на її території, користуються на територіях усіх інших Договірних Сторін щодо своїх особистих та майнових прав таким самим правовим захистом,

як і власні громадяни цієї Договірної Сторони.    Громадяни кожної з Договірних Сторін, а також інші особи, які проживають на її території, мають право вільно та безперешкодно звертатися до судів, прокуратури та інших установ інших Договірних Сторін, до компетенції яких належать цивільні, сімейні та кримінальні справи (далі - установи юстиції), можуть виступати в них, подавати клопотання, пред`являти позови та здійснювати інші процесуальні дії на тих самих умовах, що й громадяни цієї Договірної Сторони. Положення цієї Конвенції застосовуються також до юридичних осіб, створених відповідно до законодавства Договірних Сторін.

Відповідно до ч.ч. 1, 3    ст. 42 Конвенції про правову допомогу у справах про відшкодування шкоди (крім тих, що випливають із договорів та інших правомірних дій), компетентним є суд Договірної Сторони, на території якої мала місце дія або інша обставина, яка стала підставою для вимоги про відшкодування шкоди. При цьому, наведена Конвенція про правову допомогу не містить жодних застережень щодо юрисдикції відповідному суду спорів про відшкодування шкоди, відповідачем у яких виступає держава чи державні органи відповідної Договірної Сторони.

Відповідно до ст. 1 Угоди ця угода регулює питання вирішення справ, що випливають з договірних та інших цивільно-правових відносин між господарюючими суб'єктами, з їх відносин з державними та іншими органами, а також виконання рішень за ними.

Згідно із пп. «г» п. 1 ст. 4 Угоди компетентний суд держави - учасниці має право розглядати зазначені в статті 1 цієї Угоди спори, якщо на території цієї держави - учасниці мала місце дія або інша обставина, що стала основою для вимог щодо відшкодування шкоди.

Одночасно, Угода встановлює особливі правила щодо судового імунітету держав-учасниць. Так, відповідно до п. 4 ст. 4 Угоди справи про визнання недійсними повністю або такими, що не мають нормативного характеру, актів державних і інших органів, а також про відшкодування збитків, завданих господарюючим суб'єктам такими актами або які виникли внаслідок неналежного виконання зазначеними органами своїх обов'язків по відношенню до господарюючих суб'єктів, розглядаються виключно судом за місцем знаходження зазначеного органу.

Таким чином, визначаючи межі свого судового імунітету відповідно до зазначеної Угоди, її учасники (у тому числі Росія), встановили: 1) загальне правило, відповідно до якого, виходячи зі змісту статті 1, пп. «г» п. 1 ст. 4 Угоди,    спір про відшкодування шкоди (незалежно від суб`єктного складу сторін, зокрема і у випадку, коли відповідачем по такому спору буде держава чи її орган) підвідомчий суду держави, в якій було вчинено дії із заподіяння шкоди і 2) вичерпний перелік випадків, коли визначені вказаною Угодою правила підсудності спорів не поширюються на спори, відповідачем у якій є державний орган. При цьому визначені Угодою правила судового імунітету держав-учасниць є вичерпними та поширюються на спори двох типів: 1) щодо недійсності актів органів державної влади та 2) відшкодування збитків, заподіяних суб'єктам господарювання такими актами або ж неналежним виконанням відповідними органами своїх обов`язків щодо суб'єкта господарювання.

Відтак, з урахуванням положень статті 1, пп. «г» п. 1 ст. 4, п. 4 ст. 4    Угоди стосовно спорів про відшкодування шкоди будь-які спори такого роду підвідомчі суду тієї держави, де була заподіяна шкода, крім випадку розгляду спорів про відшкодування збитків, заподіяних суб`єктам господарювання актами органів державної влади, визнаними недійсними або ж неналежним виконанням відповідними органами своїх обов`язків щодо суб'єкта господарювання. Тобто, за змістом наведених положень Угоди, будь-які спори про відшкодування шкоди, якщо така шкода не заподіяна прямо передбаченими Угодою та наведеними вище діями органу державної влади, розглядаються компетентним судом за місцем заподіяння шкоди.

Таким чином, спір щодо відшкодування збитків внаслідок позбавлення позивача можливості здійснювати виробництво продукції, виконувати взяті на себе договірні зобов'язання з метою одержання прибутку, прямим актом агресії РФ шляхом окупації

території здійснення позивачем господарської діяльності, обмеження доступу до неї не входить до меж встановлених Угодою винятків, коли спір не може розглядатись судом за місцем заподіяння шкоди, оскільки така шкода не заподіяна недійсним актом органу державної влади РФ, а також не заподіяна неналежним виконанням обов'язків будь-якого із державних органів РФ по відношенню до позивача як суб'єкта господарювання, оскільки позивач, як суб'єкт господарювання, не перебував і не перебуває у будь-яких зобов'язальних відносинах, як приватно-правового так і публічно-правового характеру з жодним із органів Росії, а отже ні належне, ні неналежне виконання будь-яких обов'язків органів державної влади Росії перед позивачем не можливе. При цьому, заподіяння шкоди внаслідок прямої військової агресії не може бути проявом реалізації будь-яких обов'язків будь-якого із органів РФ в силу своєї явної протиправності, визнаної міжнародними інституціями, зокрема ООН. Відтак, відповідно до Угоди, судовий імунітет РФ не поширюються на випадки заподіяння шкоди суб'єкту господарювання шляхом позбавлення можливості здійснення господарської діяльності під час прямої агресії однієї держави-учасниці по відношенню до іншої держави учасниці.

Відповідно до правового висновку викладеного у постанові Касаційного цивільного суду Верховного Суду від 14.04.2022 у справі № 308/9708/19 щодо судового імунітету РФ у справах про відшкодування шкоди, завданої державою-агресором, Верховний Суд дійшов висновку, що РФ, вчинивши неспровокований та повномасштабний акт збройної агресії проти Української держави, численні акти геноциду Українського народу, не вправі надалі посилатися на свій судовий імунітет, заперечуючи тим самим юрисдикцію судів України на розгляд та вирішення справ про відшкодування шкоди, завданої такими актами агресії фізичній особі громадянину України. Верховний Суд виходив із того, що названа країна-агресор діяла не у межах свого суверенного права на самооборону, навпаки віроломно порушила усі суверенні права України, діючи на її території, а тому безумовно надалі не користується у такій категорії справ своїм судовим імунітетом. Таким чином, починаючи з 2014 року, немає необхідності в направленні до посольства РФ в Україні запитів щодо згоди РФ бути відповідачем у справах про відшкодування шкоди у зв'язку з вчиненням РФ збройної агресії проти України й ігноруванням нею суверенітету та територіальної цілісності Української держави. А з 24 лютого 2022 року таке надсилання неможливе ще й з огляду на розірвання дипломатичних відносин України з РФ.

У Постановах від 18.05.2022 у справах № 428/11673/19 та № 760/17232/20-ц Касаційний цивільний суд Верховного Суду розширив правові висновки, згідно з якими підтримання юрисдикційного імунітету Російської Федерації позбавить позивача ефективного доступу до суду для захисту своїх прав, що є несумісним з положеннями пункту 1 статті 6 Конвенції про захист прав людини і основоположних свобод.

Велика Палата Верховного Суду у своїй постанові від 12.05.2022 у справі № 635/6172/17 (п. 49) підтримала правовий висновок, викладений у постанові від 14.04.2022 у справі № 308/9708/19 колегії суддів Третьої судової палати Касаційного цивільного суду, стосовно того, що суд України, розглядаючи справу, де відповідачем визначено РФ, має право ігнорувати імунітет цієї країни та розглядати справи про відшкодування шкоди, завданої фізичній особі в результаті збройної агресії РФ, за позовом, поданим саме до цієї іноземної країни.

Також Велика Палата Верховного Суду у своїй постанові від 12.05.2022 у справі № 635/6172/17 (п. 50) дійшла висновку, що Російська Федерація як держава-окупант відповідно до IV Гаазької конвенції про закони і звичаї війни на суходолі та додатка до неї: Положення про закони і звичаї війни на суходолі від 18 жовтня 1907 року, Женевської конвенції про захист цивільного населення під час війни від 12 серпня 1949 року та Додаткового протоколу до Женевських конвенцій від 12 серпня 1949 року, що стосується захисту жертв міжнародних збройних конфліктів (Протокол I), від 8 червня 1977 року несе відповідальність за порушення захисту прав цивільного населення. Відшкодування матеріальної та моральної шкоди, заподіяної внаслідок тимчасової окупації держави Україна,

юридичним особам, громадським об'єднанням, громадянам України, іноземцям та особам без громадянства, у повному обсязі покладається на РФ як на державу, що здійснює окупацію (частини п'ята та дев'ята статті 5 Закону України «Про забезпечення прав і свобод громадян та правовий режим на тимчасово окупованій території України»).

Крім того, як зазначено в постанові Великої Палати Верховного Суду від 15.09.2022 у справі № 990/80/22, Російська Федерація, вчинивши неспровокований та повномасштабний акт збройної агресії проти Української держави, численні акти геноциду Українського народу, не вправі надалі посилатися на свій судовий імунітет, заперечуючи тим самим юрисдикцію судів України на розгляд та вирішення справ про відшкодування шкоди, завданої такими актами агресії.

При цьому, Верховний Суд виходив з того, що країна-агресор діяла поза межами свого суверенного права на самооборону, навпаки, віроломно порушила усі суверенні права України, діючи на її території, тому безумовно Російська Федерація надалі не користується в такій категорії справ своїм судовим імунітетом. Такі висновки наведено в постановах Верховного Суду від 08.06.2022 та 22.06.2022 у справах № 490/9551/19 та № 311/498/20.

Міжнародно-правові норми про юрисдикційний імунітет держави уніфіковано у двох конвенціях: Європейській конвенції про імунітет держав, прийнятій Радою Європи 16.05.1972, та Конвенції ООН про юрисдикційні імунітети держав та їх власності, прийнятій резолюцією 59/38 Генеральної Асамблеї 02.12.2004 (далі за текстом - Конвенція).

Так, відповідно до положень ст. 5 Конвенції, держава користується імунітетом, щодо себе та своєї власності, від юрисдикції судів іншої держави з урахуванням положень цієї Конвенції.

Згідно зі ст. 7 Конвенції держава не може посилатися на імунітет від юрисдикції при розгляді у суді іншої держави по відношенню до будь-якого питання або справи, якщо вона явно висловила згоду на здійснення цим судом юрисдикції щодо такого питання або справи у силу: а) міжнародної угоди; b) письмового договору; або c) заяви у суді або письмового повідомлення у рамках конкретного розгляду.

Статтею 12 Конвенції передбачено, що якщо відповідні держави не домовилися про інше, держава не може посилатися на імунітет від юрисдикції при розгляді в суді іншої держави, яка зазвичай має компетенцію розглядати справи, що стосуються грошового відшкодування у разі смерті або заподіяння тілесного ушкодження будь-якій особі або заподіяння шкоди майну або його втрати внаслідок дії чи бездіяльності, яка може бути привласнена державі, якщо така дія чи бездіяльність мала місце повністю або частково на території цієї іншої держави і якщо автор дії чи бездіяльності перебував на цій території в момент цієї дії чи бездіяльності.

Слід зазначити, що Конвенція ООН про юрисдикційні імунітети держав та їх власності від 02.12.2004 р підписана та ратифікована Україною, РФ підписала вказаний документ, але не ратифікувала його.

Проте, незважаючи на відсутність ратифікації Російською Федерацією Конвенції 2004 року, норми, встановлені Конвенцією 2004 року, зокрема правила, викладені в статті 12, є нормами міжнародного права, які є обов'язковими для РФ, з огляду на нижчевикладене.

Судом враховано, що Конвенція 2004 року ще не набула чинності у визначеному в ній порядку, проте нормативний акт був прийнятий на Генеральній Асамблеї ООН державами-членами ООН.

Преамбулою Конвенції передбачено, що: «... юрисдикційні імунітети держав та їх власності загальновизнані як принцип міжнародного звичаєвого права, ... міжнародна конвенція про юрисдикційні імунітети держав та їх власності зміцнить верховенство права і правову визначеність, особливо у відносинах держав з фізичними або юридичними особами, і сприятиме кодифікації та розвитку міжнародного права та гармонізації практики в цій сфері». У преамбулі також зазначається, що текст резолютивних положень Конвенції 2004 року «враховує розвиток практики держав щодо юрисдикційних імунітетів держав та їх власності».

Це свідчить про те, що Генеральна Асамблея ООН не встановлювала нові принципи міжнародного права за допомогою Конвенції 2004 року, а прагнула «кодифікувати» існуючі принципи з метою «юридичної визначеності» та «гармонізації практики в цій сфері».

У свою чергу стаття 38 Статуту Міжнародного суду визначає у якості джерел міжнародного права, зокрема, міжнародний звичай, як доказ загальної практики, визнаної у якості правової норми, а також загальні принципи права, визнані цивілізованими націями (п.п b, с статті 38 Статуту), що також підтверджує можливість застосування положень Конвенції ООН про юрисдикційні імунітети держав та їх власності 2004 року, оскільки юрисдикційні імунітети держав та їх власності отримали загальне визнання як один із принципів звичаєвого міжнародного права.

Отож, суд вважає, що незалежно від того, чи набула Конвенція 2004 року чинності та чи ратифікувала її Російська Федерація, резолютивні положення Конвенції 2004 року, з урахуванням положень статті 38 Статуту Міжнародного суду, становлять «загальні принципи права», визнані цивілізованими націями і самі по собі є обов'язковими для виконання суверенними державами, включно з Російською Федерацією.

Відповідно до прецедентної практики Європейського суду з прав людини (далі - ЄСПЛ) «у випадках, коли застосування правила державного імунітету від юрисдикції обмежує здійснення права на доступ до суду, суд має встановити, чи обставини справи виправдовують таке обмеження» (SabehElLeil v. France (скарга № 34869/05), рішення від 29 червня 2011 року, § 51; Oleynikov v. Russia (скарга № 36703/04), рішення від 14 березня 2013 року, § 59).

Згідно з усталеною практикою ЄСПЛ, обмеження права на справедливий суд, зокрема шляхом застосування судового імунітету держави, є таким що відповідає пункту 1 статті 6 Конвенції про захист прав людини і основоположних свобод (далі - Конвенція 1950 року) лише у разі, якщо таке обмеження:

1) Переслідує законну мету: ЄСПЛ неодноразово визнавав, що «надання імунітету державі в ході цивільного судочинства переслідує законну мету дотримання міжнародного права для сприяння ввічливості та добрих відносин між державами через повагу до суверенітету іншої держави» (Oleynikov v. Russia (скарга № 36703/04), рішення від 14.03.2013, § 60; Cudak v. Lithuania (скарга № 15869/02), рішення від 29.06.201, § 52; Wallishauser v. Austria, (скарга № 156/04), рішення від 17.07. 2012, § 60).

У контексті наведеної практики ЄСПЛ, застосування судового імунітету Російської Федерації у справі за позовом про відшкодування шкоди повинно мати законну мету, зокрема сприяння ввічливості та добрих відносин між державами через дотримання міжнародного права. У той же час, збройна агресія проти України, здійснена Російською Федерацією в порушення основоположних принципів і норм міжнародного права, зокрема Статуту ООН, вчинені її збройними силами міжнародно-правові злочини в Україні виключають, з ініціативи Російської Федерації, питання ввічливості та добрих відносин між країнами.

Це позбавляє застосування судового імунітету Російської Федерації, що обмежує право позивача на справедливий суд, законної мети.

2) Є пропорційне меті, яка переслідується: відповідно до прецедентної практики ЄСПЛ, «обмеження буде несумісне з пунктом 1 статті 6 Конвенції 1950 року, якщо ... не існує розумної пропорції між використовуваними засобами та метою, яка переслідується».

3) Не порушує самої сутності права на доступ до суду: при розгляді питання про доступ до суду в контексті застосування юрисдикційного імунітету держави, «необхідно переконатися, що обмеження, що застосовуються, не обмежують і не скорочують доступ, що залишився особі, таким чином або такою мірою, що порушується сама сутність права [доступу до суду]» (Ashingdane v theUnitedKingdom (скарга № 8225/78), рішення від 28.05.1985, § 57; Oleynikov v. Russia (скарга № 36703/04), рішення від 14.03.2013, § 55), Cudak v. Lithuania (скарга № 15869/02), рішення від 23.03.2010, § 55). В іншому випадку, повне перешкоджання у розгляді справи, без будь-якої провини з боку позивача, буде суперечити пункту 1 статті 6 Конвенції

1950 року (McElhinney v. Ireland (скарга № 31253/96), рішення від 21.11.2001, окрема думка Судді L. Лукейдіса).

Аргументи на обґрунтування відмови у застосуванні імунітету держави, крім іншого, сформульовано ЄСПЛ при розгляді справи «Jonesandothers v theUnitedKingdom» (заяви №№ 34356/06 і 40528/06), рішення від 14.01.2014). У рішенні Суд наголошує на постійній еволюції міжнародного звичаєвого права з питання надання судового імунітету державі, відсутності імперативної доктрини у вказаному питанні. Проте дедалі частіше стверджується думка, що тяжкі міжнародні злочини не можуть вважатися вчиненими при здійсненні офіційних дій держави, оскільки їх вчинення не є нормальною державною функцією. І така позиція поступово знаходить своє відображення у світовій практиці, про що свідчать відповідні судові рішення та висновки. Спостерігається тенденція до подолання безкарності за вказані дії, до здійснення ширшої юрисдикції і подальшого обмеження можливості використання імунітету як прикриття.

З огляду на вказане Суд розглядає межі застосування імунітету крізь призму характеру «поведінки» держави. Якщо держава вже запровадила національний засіб юридичного захисту щодо протиправних дій, тоді можна розраховувати на те, що суди інших держав відмовлятимуться від здійснення юрисдикції. Але, якщо в державі наявна систематичність у здійсненні дій, що порушують імперативні норми про заборону їх вчинення, і немає адекватного засобу юридичного захисту, тоді беззастережну відмову в доступі до цивільних судів іншої держави можна вважати непропорційним заходом.

Так, поряд із використанням збройних сил та інших силових відомств з метою здійснення масштабних актів військової агресії на суверенній території України, послідовність та очевидність у діях вищого політичного і військового керівництва та державного апарату РФ, що відкрито заявляють про анексію територій та виправдовують військове вторгнення, спрямоване на порушення територіальної цілісності України, підтримка терористичної діяльності, явно виходить за межі прийнятих міжнародних стандартів та належного здійснення державних повноважень, що свідчить про здійснення РФ агресивної державної політики.

Загальновідомо, що Російська Федерація відкидає визнання будь-якої відповідальності за свою протиправну військову діяльність в Україні, виправдовує її, включаючи не тільки повномасштабну збройну агресію, але і будь-яку участь своїх збройних сил у військових діях в Донецькій та Луганській областях з 2014 року. Не існує жодної розумної підстави припустити, що порушене право позивача, за захистом якого він звернувся до українського суду, могло би бути захищене шляхом подання позову до суду, в якому би Російська Федерація не користувалася судовим імунітетом, тобто до суду Російської Федерації.

Таким чином, звернення позивача до українського суду є єдиним розумно доступним засобом захисту права, позбавлення якого означало би позбавлення такого права взагалі, тобто заперечувало б саму сутність такого права. Наразі відсутні будь-які механізми або інші міждержавні домовленості між Україною та Російською Федерацією щодо відшкодування збитків фізичним чи юридичним особам, завданих внаслідок дій військової агресії Російської Федерації на території України.

При розгляді питання щодо застосування судового імунітету слід брати до уваги «загальні принципи, що лежать в основі прав людини та гуманітарного права та втілюють основні права, такі як право на ефективний спосіб захисту прав, право на компенсацію збитків, понесених внаслідок порушень гуманітарного права, та право на захист від відмови у праві судді» (Окрема думка Судді Юсуфа до рішення Міжнародного Суду ООН (ІСJ) у справі JurisdictionalImmunitiesoftheState (ФРН проти Італії) від 03.02.2012, § 30.)

Як вказував Європейський Суд у раніше розглянутих справах, Проект статей про юрисдикційні імунітети держав та їх власності Комісії ООН з міжнародного права 1991 року, зараз втілений у Конвенції 2004 року, застосовується відповідно до звичайного міжнародного права, навіть якщо ця держава не ратифікувала Конвенцію, якщо не заперечила їй (див. згадану вище Постанову Великої Палати у справі Cudak v. Lithuania (скарга № 15869/02),

рішення від 23.03.2010, § 55), згадану вище Постанову Великої Палати у справі (SabehElLeil v. France (скарга № 34869/05), рішення від 29.06.2011,  § 51), і Ухвалу Європейського Суду у справі «Валлісхаузер проти Австрії», § 60). Російська Федерація не ратифікувала її, але й не чинила опір їй, підписавши Конвенцію 01.12. 2006 р.

Враховуючи викладене, суд доходить висновку, що звертаючись із позовом до Російської Федерації для правильного вирішення спору позивач не потребує згоди компетентних органів держави Російської Федерації на розгляд справи у судах України або наявності міжнародної угоди між Україною та Російською Федерацією з цього питання.

Стосовно звернення з позовом до Російської Федерації як до держави суд враховує таке.

Відповідно до ч. 1 ст. 167 Цивільного кодексу України держава діє у цивільних відносинах на рівних правах з іншими учасниками цих відносин.

Відповідно до пунктів 1, 3 Гаазької Конвенції про закони і звичаї війни на суходолі 1907 року договірні держави видають своїм сухопутним військам накази, які відповідають Положенню про закони і звичаї війни на суходолі. Воююча сторона, яка порушує норми зазначеного Положення, підлягає відповідальності у формі відшкодування збитків, якщо для цього є підстави. Вона є відповідальною за всі дії, вчинені особами, які входять до складу її збройних сил.

Таким чином, відповідно до наведених положень Цивільного кодексу України та наведеної Конвенції, за шкоду, спричинену порушенням законів і звичаїв війни, відповідальність несе воююча держава в цілому, незважаючи на те, який конкретно підрозділ її збройних сил заподіяв шкоду.

Згідно із ст. 170 Цивільного кодексу України держава набуває і здійснює цивільні права та обов'язки через органи державної влади у межах їхньої компетенції, встановленої законом.

Відповідно до правового висновку, висловленого Великою Палатою Верховного Суду у постанові від 27.11.2019 у справі № 242/4741/16-ц належним відповідачем у справах про відшкодування шкоди, завданої органом державної влади, їх посадовою або службовою особою, є держава як учасник цивільних відносин, як правило, в особі органу, якого відповідач зазначає порушником своїх прав. При цьому, суд враховує також ту обставину, що держава є специфічним суб'єктом правовідносин. Під державою розуміється організація політичної влади домінуючої частини населення у соціально неоднорідному суспільстві, яка, забезпечуючи цілісність і безпеку суспільства, здійснює керівництво ним насамперед в інтересах цієї частини, а також управління загальносуспільними справами. До визначальних ознак держави відноситься наявність для виконання своїх завдань та функцій специфічного апарату, який володіє владними повноваженнями і має матеріальні засоби для реалізації цих повноважень.

До функцій держави, належать, серед іншого: економічна функція (формування та виконання бюджету, складання та виконання програм економічного розвитку, фінансування ряду галузей, забезпечення свободи конкуренції та протидія монополізму, безпосереднє керівництво державним сектором економіки); інформаційна функція (організація та забезпечення системи отримання, використання, розповсюдження і зберігання інформації); функція забезпечення безпеки держави (захист країни від нападу ззовні, захист загальнонаціональних інтересів від деструктивних дій усередині країни).

Реалізація наведених функцій здійснюється через специфічний апарат, порядок формування, правовий статус та повноваження якого визначаються самою державою. При цьому реалізація державної політики держави-агресора щодо агресивної війни проти України не обмежується діяльністю будь-якого державного органу, міністерства тощо.

Агресивна війна проти України є консолідованою політикою РФ та реалізується через увесь відповідний апарат, до якого належать різнорідні органи, установи, організації, у тому числі і юридичні особи, які формально хоч і є відокремленими суб'єктами господарювання, але фактично повністю контролюються державою РФ та використовуються нею у тому числі

для реалізації суто державних функцій.

У випадку із реалізацією відповідних державних функцій органом державної влади зв`язок між державою і таким органом очевидний, як і загальновизнаною, як у межах правової доктрини, так і відповідно до міжнародних і національних нормативних актів, при цьому є відповідальність держави в цілому за дії її органів.  Щодо діяльності юридичних осіб РФ, які формально є юридичними особами приватного права, але фактично виконують невластиві функції держави, то для визначення зв`язку між діяльністю юридичної особи та функцією держави застосовно є доктрина «зняття корпоративної вуалі».

Загальновизнаною суттю концепції юридичної особи, що знайшла своє закріплення у правових системах всіх розвинених країн світу, є наступні засади: кожна компанія має власну правосуб`єктність, відмінну від правосуб`єктності осіб, що її створили; учасники компанії несуть відповідальність за її зобов`язаннями в межах вартості належних їм часток; майно компанії відокремлене від майна її учасників; компанія існує незалежно від її учасників; компанія як самостійний суб`єкт права від власного імені може укладати правочини та виступати в суді в якості позивача та відповідача. Однією з основних ознак юридичної особи є її самостійна відповідальність за своїми зобов`язаннями усім належним їй майном.

Одночасно, доктрина права передбачає випадки, коли припустимим є «підняття корпоративного покрову», наприклад: 1) якщо компанія виступає в якості агента свого акціонера або 2) якщо вона слугує «фасадом» для прикриття його інтересів.

Відповідно до доктрини «підняття корпоративної вуалі» корпорація за загальним правилом буде розумітися як юридична особа до того часу, поки не буде обґрунтовано доведено протилежне; разом із тим, коли поняття юридичної особи використовується для порушення публічних інтересів, виправдання правопорушення, приховування шахрайства, захисту злочину, закон буде розцінювати корпорацію як асоціацію осіб.

При цьому, у випадку юридичних осіб держави-агресора, на їх безпосередню діяльність у якості агента держави та «фасаду» РФ вказує цілий ряд обставин, зокрема: прийняття РНБО України актів про застосування індивідуальних санкцій та затвердження їх Указами Президента України; внесення цілого ряду юридичних осіб до санкційних списків Євросоюзом, що підтверджується інформацією на офіційному веб-сайті актів ЄС, де міститься окремий перелік обмежувальних заходів по відношенню до цілого ряду юридичних осіб (адреса у Глобальній мережі Інтернет - https://data.europa.eu/data/datasets/consolidated-list-of-persons-groups-and-entities-subject-to-eu-financial-sanctions?locale=en); застосування урядом США до юридичних осіб - резидентів рф санкцій, що оприлюднюються Міністерством фінансів США на своєму офіційному веб-сайті (адреса у Глобальній мережі Інтернет - https://home.treasury.gov/news/press-releases/jy1241) тощо.

До відповідних санкційних списків у тому числі внесені юридичні особи - резиденти РФ, формально існуючі як юридичні особи приватного права.

При цьому, відповідно до пунктів 1, 3 Гаазької Конвенції про закони і звичаї війни на суходолі 1907 року відповідальність у формі відшкодування збитків у випадку порушення правил і звичаїв ведення воєнних дій покладається саме на державу в цілому, як воюючу сторону. Відтак, стягнення відповідної шкоди також має здійснюватися із держави в цілому, за рахунок усіх наявних у неї активів, зокрема і майна підрозділів специфічного апарату держави, який реалізує її функції, в тому числі як державних органів, так і інших підприємств, організацій, установ, які реалізовують відповідні державні функції.

Отже, на переконання суду, пред`явлення позовних вимог до Російської Федерації як до держави в цілому не лише відповідає положенням матеріального закону, але й являє собою ефективний спосіб захисту права позивача.

Разом з тим, як встановлено судом, відповідач у справі є нерезидентом України.

За приписами ст. 3 ГПК України, судочинство в господарських судах здійснюється відповідно до Конституції України, цього Кодексу, Закону України «Про міжнародне

приватне право», Закону України «Про відновлення платоспроможності боржника або визнання його банкрутом», а також міжнародних договорів, згода на обов`язковість яких надана Верховною Радою України. Якщо міжнародним договором України встановлено інші правила судочинства, ніж ті, що передбачені цим Кодексом, іншими законами України, застосовуються правила міжнародного договору.

Іноземні особи мають такі самі процесуальні права та обов`язки, що і громадяни України та юридичні особи, створені за законодавством України, крім винятків, встановлених законом або міжнародним договором, згода на обов`язковість якого надана Верховною Радою України (ст. 365 ЦПК України).

Відповідно до статті 365 Господарського процесуального кодексу України іноземні особи мають такі самі процесуальні права та обов`язки, що і громадяни України та юридичні особи, створені за законодавством України, крім винятків, встановлених законом або міжнародним договором, згода на обов`язковість якого надана Верховною Радою України.

Частиною 1 статті 367 Господарського процесуального кодексу України передбачено, що у разі якщо в процесі розгляду справи господарському суду необхідно, зокрема, вручити документи на території іншої держави, господарський суд може звернутися з відповідним судовим дорученням до іноземного суду або іншого компетентного органу іноземної держави (далі - іноземний суд) у порядку, встановленому цим Кодексом або міжнародним договором, згода на обов`язковість якого надана Верховною Радою України.

Судове доручення надсилається у порядку, встановленому цим Кодексом або міжнародним договором, згода на обов`язковість якого надана Верховною Радою України, а якщо міжнародний договір не укладено  Міністерству юстиції України, яке надсилає доручення Міністерству закордонних справ України для передачі дипломатичними каналами (ч. 2 ст. 367 Господарського процесуального кодексу України).

Ухвалою суду від 23.08.2023 р. у справі № 908/1242/22(908/2670/23), з метою дотримання процесуальних прав відповідача та належного повідомлення відповідача про дату, час та місце розгляду справи, суд зобов`язав позивача надати суду переклад ухвали про відкриття провадження у справі  на російську мову, з нотаріальним засвідченням його вірності, з метою подальшого звернення до Міністерства юстиції України із судовим дорученням про можливість вручення процесуальних документів відповідачу у справі Російській Федерації дипломатичними каналами, зобов`язав позивачів направити відповідачу вищевказану ухвалу суду та надати суду відповідні підтверджуючі документи, а також зупинив провадження у справі до виконання судового доручення про вручення судових документів чи повідомлення про неможливість такого вручення.

11.09.2023 р. через відділення потового зв`язку представником позивача було подано докази направлення відповідачу нотаріально посвідченого перекладу на російську мову ухвали суду  від 23.08.2023 р. у справі № 908/1242/22(908/2670/23) про відкриття провадження у справі, а саме: шляхом направлення відповідного процесуального документу до Посольства РФ в Україні, Посольства РФ в Швейцарській Конфедерації, Посольства РФ в Федеративній Республіці Німеччині, Посольства РФ в Бельгії (згідно опису вкладення до поштового відправлення № 0420108987676 та фіскального чеку від 06.09.2023р., квитанцій АТ «ДХЛ Інтернешнл Україна»  від 06.09.2023 р. №№ 4447715731, 4447717761, 4447719570 відповідно.  Крім того надано докази направлення копії позовної зави до вищевказаних закордонних установ РФ (згідно квитанцій АТ «ДХЛ Інтернешнл Україна»  від 17.08.2023 р. №№ 1569750766, 5571523823, 1569753603 відповідно).

23.08.2023 р.  в межах справи № 908/1242/22(908/2670/23) судом направлялось до Міністерства юстиції України судове доручення про можливість вручення процесуальних документів відповідачу у справі  Російській Федерації.

Відповідно до листа Міністерства юстиції України від 12.09.2023 р. щодо можливості вручення  судових документів на території Російської Федерації встановлено, що передача/отримання  будь-яких документів до/від компетентних органів Росії, у тому числі дипломатичними каналами, неможлива.

З інформації на офіційному веб-сайті АТ «Укрпошта» за посиланнями в мережі Інтернет https://www.ukrposhta.ua/ua/news/57561-ukrposhta-chastkovo-vidnovlju-robotu-viddilen-de-ce-bezpechno-dlja-klintiv-i-pracivnikiv та https://www.ukrposhta.ua/ua/news/57624-poshti-svitu-ogoloshujut-rosii-poshtovu-blokadu, відомо, що АТ «Укрпошта», припинила доставку поштових відправлень до/з Росії з перших днів повномасштабного вторгнення.

За інформацією, наданою Міністерством закордонних справ України, 24.02.2022 розірвано дипломатичні відносини між Україною та Росією у зв`язку з широкомасштабною збройною агресією останньої проти України. Функціонування закордонних дипломатичних установ України на території Росії та діяльність її дипломатичних установ на території України зупинено.

Відтак, у зв`язку з військовою агресією суд позбавлений можливості здійснювати повідомлення відповідача про розгляд даної справи засобами поштового зв`язку та звернутися до суду держави-відповідача з судовим дорученням про вручення документів.

Водночас, з метою дотримання процесуальних прав відповідача, Господарський суд Запорізької області ухвалою від 23.08.2023 вирішив здійснювати повідомлення відповідача про дату, час і місце розгляду справи № 908/1242/22(908/2670/23) шляхом оголошення на офіційному веб-сайті судової влади України та додатково шляхом зобов`язання позивача направляти процесуальні документи на адресу відповідача з подальшим наданням доказів такого направлення.

09.10.2023 р. через поштове відділення АТ «Укрпошта» представником позивача було подано до суду докази направлення відповідачу нотаріально посвідченого перекладу на російську мову ухвали Господарського суду Запорізької області від 26.09.2023 р. у справі № 908/1242/22(908/2670/23) про закриття підготовчого провадження та призначення справи до розгляду по суті.

Відповідні процесуальні документи були направлені до Посольства РФ в Україні, Посольства РФ в Швейцарській Конфедерації, Посольства РФ в Федеративній Республіці Німеччині, Посольства РФ в Бельгії (згідно оригіналів опису вкладення та фіскального чеку від 04.10.2023 до поштового відправлення 0420109005443 (направлення до посольства РФ в Україні); оригіналів квитанцій оператора міжнародних відправлень DHL від 04.10.2023 р. : № 5716977980 -направлення до посольства РФ в Швейцарській Конфедерації, № 4328065556 - направлення до посольства РФ в Німеччині, № 4328063854 - направлення до посольства РФ в Бельгії.

01.11.2023 р. через поштове відділення АТ «Укрпошта» представником позивача було подано до суду (поштове відправлення 0420109009775) докази направлення відповідачу нотаріально посвідченого перекладу на російську мову ухвали Господарського суду Запорізької області від 19.10.2023 р. у справі № 908/1242/22(908/2670/23) про відкладення судового засідання на 09.11.2023 р. о 09:30 год.

Відповідні процесуальні документи були направлені до Посольства РФ в Україні, Посольства РФ в Швейцарській Конфедерації, Посольства РФ в Федеративній Республіці Німеччині, Посольства РФ в Бельгії (згідно оригіналів опису вкладення та фіскального чеку від 31.10.2023 до поштового відправлення 0103332276457 (направлення до посольства РФ в Україні); оригіналів квитанцій оператора міжнародних відправлень ПАТ «ДХЛ Інтернешнл Україна» (DHL) від 31.10.2023 р.: № 5092231966 - направлення до посольства РФ в Швейцарській Конфедерації, № 5092225854 - направлення до посольства РФ в Німеччині, № 7458852973 - направлення до посольства РФ в Бельгії.

21.11.2023 р. до суду від позивача надійшов лист до якого долучено переклад ухвали Господарського суду Запорізької області від 09.11.2023 на російську мову, з нотаріальним засвідченням його вірності; докази направлення процесуальних документів за чотирма адресами посольств РФ: м. Київ, Швейцарська Конфедерація, Німеччина, Бельгія.

При цьому суд приймає до уваги, що відповідно до Віденської конвенції про дипломатичні відносини від 18.04.1961 р. посольство це найвище за статусом дипломатичне представництво держави в столиці іншої, або при міжнародній організації на яку

покладено завдання підтримувати й розвивати офіційні стосунки з країною перебування, захищати в ній права та інтереси акредитуючої держави, її громадян і юридичних осіб.

Судом враховані положення статті 22 Конвенції ООН про юрисдикційні імунітети держав та їх власності, прийнятій резолюцією 59/38 Генеральної Асамблеї 02.12.2004, відповідно до якої вручення документів про судовий розгляд судовим наказом або іншим документом про порушення розгляду проти держави здійснюється:

а) відповідно до будь-якої застосовної міжнародної конвенції, яка перебуває в силі для держави суду та відповідної держави; або

b) відповідно до будь-якої спеціальної угоди про вручення документів між позивачем та відповідною державою, якщо це не виключається законом держави суду; або

с) відсутність такої конвенції або спеціальної угоди:

і) шляхом направлення дипломатичними каналами міністерству закордонних справ відповідної держави; або

іі) будь-яким іншим способом, який визнається відповідною державою, якщо це не виключається законом держави суду.

Вручення документів про судовий розгляд, зазначене у пункті 1сі), вважається здійсненим після отримання таких документів міністерством закордонних справ.

Ці документи супроводжуються, при необхідності, перекладом офіційною мовою або однією з офіційних мов відповідної держави.

Вимога щодо вручення міністерству закордонних справ у ході судового розгляду дотримана з огляду на Положення про Міністерство закордонних справ Російської Федерації (в редакції Указу Президента РФ №1218 від 19.10.2005).

Так, у відповідності до частини 3 Положення, Міністерство закордонних справ Російської Федерації здійснює свою діяльність безпосередньо або через дипломатичні представництва та консульські установи Російської Федерації, представництва Російської Федерації при міжнародних (міждержавних, міжурядових) організаціях (закордонні установи), територіальні органи представництва Міністерства закордонних справ Російської Федерації на території Російської Федерації (територіальні органи).

Закордонні установи входять до системи Міністерства закордонних справ Російської Федерації.

Таким чином направлення та вручення процесуальних документів посольствам РФ повністю відповідає вимогам Конвенції ООН про юрисдикційні імунітети держав та їх власності від 02.12.2004.

З урахуванням положень Віденської конвенції про дипломатичні відносини від 18.04.1961 р. та Конвенції ООН про юрисдикційні імунітети держав та їх власності від 02.12.2004 р., оцінивши надані позивачем докази направлення процесуальних документів відповідачу, суд вважає повідомлення відповідача про розгляд справи таким, що здійснено належним чином.

Позивач зазначив у позовній заяві, що докази понесених в процесі розгляду справи судових витрат будуть подані до судових дебатів або протягом п`яти днів з моменту винесення судового рішення у справі.

Рух справи висвітлено у відповідних ухвалах суду.

Відомості про судовий розгляд справи та зазначені процесуальні рішення своєчасно оприлюднено в Єдиному державному реєстрі судових рішень, відомості якого є загальнодоступними, та у мережі Інтернет на офіційному сайті Судова влада України.

Про дату, час та місце судового засідання відповідача повідомлено шляхом опублікування оголошення на офіційній сторінці Господарського суду Запорізької області вебсайту «Судова влада» в порядку ч. 4 ст. 122 Господарського процесуального кодексу України (відповідач, третя особа, свідок, зареєстроване місце проживання (перебування), місцезнаходження чи місце роботи якого невідоме, викликається в суд через оголошення на офіційному веб-сайті судової влади України, яке повинно бути розміщене не пізніше ніж за десять днів до дати відповідного судового засідання. З опублікуванням оголошення про виклик відповідач

вважається повідомленим про дату, час і місце розгляду справи).

Таким чином, при розгляді справи судом поряд з дотриманням основоположних процесуальних принципів - права на доступ до суду, закріпленого ст. 6 Конвенції про захист прав людини і основоположних свобод, та дотримання встановленої процесуальним законом процедури було вжито додаткових заходів щодо забезпечення процесуальних прав відповідача.

Диспозитивність (від лат. Dispono розпоряджаюся) це надання особам, які беруть участь у справі, можливості вільно розпоряджатися своїми матеріальними та процесуальними правами на власний розсуд. Зміст принципу диспозитивності перш за все розкривається через положення хто хоче здійснити свої права, має сам потурбуватися про це.

Вказані принципи надають кожному учаснику процесу можливість самостійно розпоряджатися наданими йому законом процесуальними правами, в тому числі і правом брати участь в судових засіданнях.

Європейський суд з прав людини в рішенні від 07 липня 1989 року у справі «ЮніонАліментаріа проти Іспанії» зазначив, що заявник зобов'язаний демонструвати готовність брати участь на всіх етапах розгляду, що стосуються безпосередньо його, утримуватися від використання прийомів, які пов'язані з зволіканням у розгляді справи, а також максимально використовувати всі засоби внутрішнього законодавства для прискорення процедури слухання.

У судовому засіданні 28.11.2023 р. представник позивача підтримав позов у повному обсязі та просив суд його задовольнити.

Представник відповідача в судове засідання не з'явився. Про час та місце розгляду справи був повідомлений належним чином, про причини неявки суду не повідомив. При цьому відповідач відзиву на позовну заяву не надав, клопотання про розгляд справи за відсутності уповноваженого представника чи про розгляд справи у письмовому провадженні не заявляв, маючи можливість брати участь в судових засіданнях в режимі відеоконференції, відповідних клопотань не заявляв, за відсутності заборони на в'їзд громадян РФ на територію України уповноваженого представника не направив, договір на представництво інтересів на території України не уклав. Неявка відповідача в судове засідання та невикористання процесуальних прав є його волевиявленням, проявом дії принципу диспозитивності.

Процес судового розгляду відбувався із дотриманням всіх міжнародних норм та стандартів судочинства, зокрема Європейської конвенції з прав людини 1950 року (далі Конвенція 1950 року), у тому числі вживалась низка додаткових заходів з метою їх забезпечення: права на справедливий суд, права на захист, права розуміти суть справи, права на допомогу перекладача, право на ефективний засіб правового захисту, забезпечення користування правами без дискримінації за будь-якою ознакою, публічність проголошення судового рішення та можливість його оскарження (статті 6,13, 14 Конвенції 1950 року).

**Дослідивши обставини справи, надані матеріали, оцінивши надані докази за своїм внутрішнім переконанням, що ґрунтується на всебічному, повному і об'єктивному розгляді в судовому процесі всіх обставин справи, а також належність, допустимість, достовірність кожного доказу окремо, достатність і взаємний зв'язок доказів у їх сукупності, суд дійшов такого обґрунтованого висновку.**

Як вбачається з матеріалів справи, позивач є юридичною особою, яка створена відповідно до законодавства України та зареєстрована в Єдиному державному реєстрі юридичних осіб, фізичних осіб-підприємців та громадських формувань 22 березня 2010 року.

Основним видом діяльності позивача є виробництво інших основних органічних хімічних речовин (КВЕД 20.14), виробництво інших основних неорганічних хімічних речовин (КВЕД 20.13), виробництво вибухових речовин (КВЕД 20.51), виробництво іншої хімічної продукції (КВЕД 20.59), оптова торгівля хімічними продуктами (КВЕД 46.75).

Позивач здійснював господарську діяльність на території Луганської області з

виробництва вибухових матеріалів промислового призначення на підставі ліцензії, виданої відповідно до наказу Держпраці від 23.12.2019 року, яка діє безстроково.

В процесі здійснення безпосередньої господарської діяльності ТОВ «НВП «ЗОРЯ» використовувало такі власні та орендовані активи: транспортні засоби (легковий, вантажний, спеціальний, залізничний транспорт),  промислові будівлі і споруди (в тому числі під'їзні залізничні колії та автошляхи),  земельні ділянки (як власні, так і орендовані), промислове обладнання та устаткування,  сировину (хімічні кислоти, нітрат амонію, сірка технічна, толуол).

Так відповідно до Інформації з Державного реєстру речових прав на нерухоме майно та Реєстру прав власності на нерухоме майно, Державного реєстру іпотек, Єдиного реєстру заборон відчуження об'єктів нерухомого майна від 31.08.2022 року № 308650040 позивачу належать на праві власності :

- Будівля 0-38 (прохідна), літера «Д», загальною площею 10,3 кв.м. (місцезнаходження Луганська область, м. Рубіжне, вул. Заводська, буд. 1г/35-1),
-  Будівля 813-А, літери «А,А`», загальна площа 663,9, літери «Б,В» - навіси (місцезнаходження Луганська область, м. Рубіжне, вул. Заводська, буд. 1г/32),
- Дитяче кафе «Чіполіно», загальною площею (кв.м) 269.7, Опис: - Основна будівля, А, А1, А2, А3, а  (місцезнаходження Луганська область, м. Рубіжне, вул. Хіміків, буд. 10),
- Житловий будинок, загальною площею 4159,7 кв.м., житловою площею 1685,7 кв.м. (місцезнаходження Луганська область, м. Рубіжне, вул. Тимірязева, буд. 9).

Відповідно до наданих позивачем свідоцтв про реєстрацію транспортних засобів ТОВ «НВП «ЗОРЯ» на праві власності належать такі транспортні засоби:
- Автомобіль RENAULT Duster, VF1HJD40467211458, державний номерний знак № ВВ 7933 ЕТ;
- Автомобіль RENAULT Duster, VF1HJD40X67214946, державний номерний знак № ВВ 7944 ЕТ;
- Автомобіль TOYOTA COROLLA NMTBB0JE80R203615, державний номерний знак № ВВ 5941 СТ;
- Автомобіль TOYOTA COROLLA NMTBB0JE80R204013, державний номерний знак № ВВ 5943 СТ;
- Автомобіль TOYOTA COROLLA NMTBB0JE80R204022, державний номерний знак № ВВ 5942 СТ;
- Автомобіль TOYOTA COROLLA NMTBE4BE10R097537, державний номерний знак № ВВ 0523 ЕХ;
- Автомобіль TOYOTA COROLLA NMTBE4BE60R097050, державний номерний знак № ВВ 0522 ЕХ;
- Автомобіль TOYOTA COROLLA, NMTBE4BE90R048778, державний номерний знак № ВВ 1374 ЕО;
- Автомобіль TOYOTA COROLLA, NMTBE4BEX0R048773, державний номерний знак № ВВ 1375 ЕО;
- Автомобіль VOLKSWAGEN Multivan, WV2ZZZ7HZMH054929, державний номерний знак № ВВ 2220 ЕС;
- Автомобіль легковий VOLKSWAGEN MULTIVAN, WV2ZZZ7HZBH118655, державний номерний знак № ВВ 3039 ЕТ;
- Напівпричіп WIELTON NS3F, SUDNS300000056761, державний номерний знак № ВВ 0747 ХР;
- Напівпричіп WIELTON NS3F, SUDNS300000063450, державний номерний знак № ВВ 1105 ХР;
- Напівпричіп WIELTON NS3S, SUDNS300000034611, державний номерний знак № ВВ 0056 ХF;
- Фронтальний колісний навантажувач марки FOTON, модель FL935E-II, державний номерний знак № 13959 ВВ.

Зазначені транспортні засоби станом на 24.02.2022 року перебували на території Луганської області за місцем розташування Позивача.

Також Позивачу належать на праві власності залізничні вагони та цистерни, що підтверджується балансовою довідкою від 24.02.2022 р. № 24/02/22-1; факт реєстрації права власності позивача на залізничні вагони та цистерни у ДП «Укрзалізниця» підтверджується письмовою копією публічної інформації у формі таблиці «Технічні характеристики вагонів та обмеження навантаження за існуючими заборонами», отриману з офіційного сайту ДП «Укрзалізниця»          https://www.uz.gov.ua/cargo_transportation/electronic_ transportation/specifications_carriages_info , де у графі «Власник вагону» зазначено ТОВ НВП «ЗОРЯ» як власник 69 одиниць залізничного транспорту.

За умови окупації (блокування, оточення) армією держави-агресора всієї території Луганської області, в тому числі і територій, де розташовані виробничі потужності Позивача, ТОВ «НВП «ЗОРЯ» як суб'єкт господарювання був позбавлений можливості здійснювати свою господарську діяльність на цій територій з початку активних бойових дій та під час окупації, яка триває і досі.

Військова агресія Російської Федерації проти України, зокрема на території Луганської області, безпосередньо для Позивача мало такі негативні наслідки:
- неможливість здійснення звичної господарської діяльності на території Луганської області внаслідок активних бойових дій та окупації з боку РФ і, як наслідок, втрата можливості отримувати доходи від такої ліцензованої діяльності (упущена вигода Позивача);
- втрата та руйнування матеріально-технічної бази (основних засобів, сировини, транспортних засобів, готової продукції тощо) ТОВ «НАУКОВО-ВИРОБНИЧЕ ПІДПРИЄМСТВО «ЗОРЯ»;
- необхідність евакуації керівництва та персоналу Позивача через постійну загрозу їх життю внаслідок тривагючих бойових дій.

Неможливість ТОВ «НАУКОВО-ВИРОБНИЧЕ ПІДПРИЄМСТВО «ЗОРЯ» з 24.02.2022 року провадження господарської діяльності в нормальних умовах обумовлено виключно збройною агресією РФ, направленою на порушення суверенітету України, загарбницькими діями щодо територій України, зокрема й Луганської області. Постійні обстріли, активні бойові дії на території Луганської області у період лютий-червень 2022 року, втрата матеріально-технічної бази (основних засобів), окупація українських територій змусили Позивача евакуювати персонал на підконтрольні Україні безпечні території та припинити свою господарську діяльність.

Наказом Генерального директора ТОВ «НВП «ЗОРЯ» від 01.03.2022 № В-01 було оголошено простій на підприємстві усім працівникам Позивача з 01.03.2022 року у зв'язку з відсутністю організаційних і технічних умов для господарської діяльності підприємства під час воєнного стану.

Суд зазначає, що з лютого 2022 року держава-агресор РФ мала повний фактичний контроль над територією Луганської області, оскільки вона розмістила на зазначеній території свої війська, проводила активні бойові дії, направлені на захоплення ще більших територій України, та створила власні окупаційні органи влади на захоплених українських територіях.

Зазнавши порушення цивільних прав, Позивач звернувся до правоохоронних органів України з відповідними заявами про злочин, а саме:
- 12.07.2022 року до Національної поліції України, Офісу Генерального прокурора України про вчинення кримінальних правопорушень (вих. №№1207 та 1207-1);
- 12.07.2022 року до Луганської обласної військово-цивільної адміністрації, ГУНП в Луганській області, ГУ СБУ в Донецькій та Луганській областях, Центрального управління СБУ, Офісу Генерального прокурора України про втрату контролю над ТОВ «НАУКОВО-ВИРОБНИЧЕ ПІДПРИЄМСТВО «ЗОРЯ» (вих. № 1207-2);
- 14.07.2022 року до Голови СБУ, Голови Державної служби України з питань праці з повідомленням про втрату контролю за розрядною продукцією (вих. № 02К).

За фактами протиправних дій держави-агресора та за заявами Позивача зареєстровані

*9*2387518*1*0*

кримінальні провадження:

- № 22022130000000412 від 30.08.2022 року за ознаками кримінального правопорушення, передбаченого статтею 438 Кримінального кодексу України, що підтверджується витягом з Єдиного реєстру досудових розслідувань від 30.08.2022 року, виданим Головним управлінням СБУ в Донецькій та Луганській областях (вих. № 78/3/3/7770 від 01.09.2022 р.);

- № 12022131330000705 від 14.07.2022 року за ознаками кримінального правопорушення, передбаченого статтею 438 Кримінального кодексу України, що підтверджується витягом з Єдиного реєстру досудових розслідувань від 14.07.2022 року, виданим Головним управлінням Національної поліції в Луганській області (вих. № 642/111/36-2022 від 15.07.2022 р.).

Як вбачається з матеріалів справи, позивач є юридичною особою, створеною відповідно до чинного законодавства України з метою отримання прибутку, зокрема від виробництва органічних речовин, основних неорганічних хімічних речовин, вибухових речовин та іншої хімічної продукції.

Позивач здійснював господарську діяльність з виробництва вибухових матеріалів промислового призначення на підставі ліцензії, виданої відповідно до наказу Держпраці від 23.12.2019 року, яка діє безстроково.

ТОВ «НВП «ЗОРЯ» - українське підприємство хімічної галузі, виробник і постачальник хімічної продукції та вибухових речовин на внутрішній та міжнародний ринок. Протягом 2010-2021 років основним видом діяльності Товариства було виробництво вибухових матеріалів промислового призначення (КВЕД 20.51) на основі тротилу, зокрема тротиловмісні вибухові речовини, які використовуються при видобутку корисних копалин відкритим та закритим способом, як то амоніти, грамоніти тощо.

Судом встановлено, що задля забезпечення безперебійності здійснення господарської діяльності та оптимізації виробництва позивач орендував з 14.10.2010 р. у ТОВ «Хімічні Інноваційні Технології» єдиний майновий комплекс, активи якого розташовані за адресами: Луганська обл. м. Рубіжне; Луганська обл., Кремінський р-н, Боровеньська сільська рада; Луганська обл., Попаснянський р-н, Вовчоярівська селищна рада; Луганська обл., Кремінський р-н, Кудряшівська сільська рада. З використанням активів зазначеного майнового комплексу позивач здійснював господарську діяльність з виробництва вибухових та хімічних речовин, що підтверджується договорами оренди майна, укладеними між ТОВ «ХІМІЧНІ ІННОВАЦІЙНІ ТЕХНОЛОГІЇ» та ТОВ «НВП «ЗОРЯ» № 1515 від 24.06.2021 року, № 05-08 від 05.08.2021 року, № 27-08 від 27.08.2021 року, № 22-10 від 22.10.2021 року, № 28-10 від 28.10.2021 року. До складу активів у вигляді єдиного майнового комплексу входять об&apos;єкти нерухомого майна (господарські і виробничі будівлі та споруди), розташовані на земельних ділянках, а також промислове обладнання, устаткування, інвентар, автомобільний транспорт, автодороги, під'їзні залізничні колії, меблі, комп'ютерна техніка тощо, які відображені в додатках до вищевказаних договорів.

З балансових довідок від 30.12.2022 вих.№ 30/12/22-1, від 30.12.2022 вих.№ 30/12/22-2, від 30.12.2022 вих.№ 30/12/22-3, наданих позивачем, вбачається, що станом на 24.02.2022 року у складському приміщенні за адресою м. Рубіжне Луганської області, вул. Заводська, буд. 1Г/36, перебувала готова продукція, вироблена Позивачем, кількістю 525 т, та сировина кількістю 3 770,9 т, серед яких тротил марки А дсту 4117-78, бензойна, сірчана, азотна кислоти, селітра аміачна, сірка технічна, толуол.

З балансової довідки від 13.01.2023 вих.№ 13/01/23-1, наданої позивачем, вбачається, що станом на 24.02.2022 року у складському приміщенні за адресою м. Рубіжне Луганської області, вул. Заводська, буд. 1Г/36, перебувала готова продукція, вироблена Позивачем, кількістю 559,9 т, та сировина кількістю 27,1 т, серед яких речовина вибухова промислова Тротил Б, тротил марки А дсту 4117-78, речовина вибухова промислова Грамоніт 79/21, кислота 3,5-динітробензойна.

Найбільше місце в складі виробництва та реалізації продукції Товариства в грошовому вимірі займає група тринітротолуолів (ТНТ) (тротил А, Б), питома вага доходу якого в складі

*9*2387518*1*0*

загальної реалізації продукції в 2021р. склала 50,0%; дохід від реалізації кислоти сірчаної складав 21,6% у загальному доході, дохід від реалізації ППВВ (різні види амонітів, грамонітів, амоналів, вибухова речовина «ZaryaD») займав 15,3%, дохід від реалізації іншої продукції займав менше 10% у загальній виручці Товариства. Реалізація продукції Позивача проводилась як на внутрішньому ринку України, так і на міжнародному ринку.

На підставі ритмічності і системності господарської діяльності, стабільності та динамічного зростання показників, що характеризували сприятливу економічну ефективність та фінансове становище Позивача, були затверджені Плани реалізації готової продукції і товарів на 2022-2028 роки та Плани виробництва по Проммайданчику на період 2022-2028 роки наказом генерального директора ТОВ «НВП «ЗОРЯ» від 15.12.2021 року № 457, відповідно до яких Позивач обґрунтовано і законно очікував отримувати дохід протягом 2022 – 2028 років.

Суд зазначає, що ознаками наявності упущеної вигоди у Позивача після 24.02.2022р. стали:
1. відсутність доступу ТОВ «НАУКОВО-ВИРОБНИЧЕ ПІДПРИЄМСТВО «ЗОРЯ» до його активів та, відповідно, їх втрата через окупацію, встановлення Відповідачем контролю над територією Луганської області та проведення активних бойових дій на території Луганської області збройними силами Російської Федерації;
2. руйнування/пошкодження активів Позивача, в т.ч. його виробничих потужностей, що підтверджено заявою ТОВ «НВП «ЗОРЯ» про вчинення кримінальних правопорушень до Національної поліції в Луганській області від 12.07.2022р. вих. № 1207;
3. відсутність обсягів реалізації продукції Товариства та неможливість виконання зобов'язань за укладеними контрактами;
4. зростання витрат та зменшення рентабельності бізнесу (збитковість);
5. збільшення ризиків та зменшення вартості капіталу.
Зазначені вище обставини у сукупності унеможливили здійснення виробничої діяльності Позивача після 24.02.2022 р.

Підтвердженням наявності збитковості Позивача є дані його фінансової звітності за 2020-2021 рр. як до дати військового вторгнення РФ, що вказують на загальну прибутковість діяльності Товариства, так і після неї, що вказують на відсутність операційної діяльності Позивача та його поточну збитковість.

Оскільки на даний час військова агресія Російської Федерації в Україні ще продовжує існувати, а також продовжує діяти воєнний стан в Україні, то протягом існуючої збройної агресії РФ права та економічний стан Позивача не мають перспектив на відновлення, а отже економічні втрати були наявні в минулому та правомірно очікуються в майбутньому, тому розмір упущеної вигоди Позивача має розраховуватись для двох періодів:
1-й період, який носить ретроспективний характер та складає період від дати порушення прав Позивача (24.02.2022р.) до дати оцінки (06.06.2023 р.);
2-й період, який носить прогнозний період та складає період від дати оцінки (06.06.2023 р.) до очікуваної Позивачем дати відновлення економічного стану Товариства, який існував до дати порушення та визначений Позивачем як 06.06.2028 р.

Відповідно до затверджених Планів Позивач очікував зростання економічних показників в найближчі сім років, тобто з 01.01.2022 року по 31.12.2028 року. Такий прогноз обумовлений статистичними даними, прогнозованими темпами зростання обсягів виробництва та планомірним розширенням ринків збуту (міжнародних та національних) продукції Позивача.

Стабільна динаміка господарської діяльності за попередні роки та капітальні інвестиції надавали Позивачу право правомірного очікування отримання стабільного доходу протягом найближчих 7 років.

Оскільки термін тривалості збройної агресії Російської Федерації в Україні на даний час не визначений, а період дії воєнного стану в Україні подовжено ще на 90 днів (до 18.11.2023р.), а також відсутності чітких термінів (строків) необхідних для відновлення

діяльності Товариства до стану на дату початку збройної агресії, то суд вважає правомірним визначення розміру упущеної вигоди протягом періоду з 24.02.2022 року по 06.06.2028 року.

Враховуючи викладене, суд зазначає, що наявність безстрокової ліцензії на виробництво вибухових матеріалів промислового призначення, наявність національних та міжнародних ринків збуту продукції, наявність необхідної матеріально-технічної та сировинної бази беззаперечно забезпечували можливість ТОВ «НАУКОВО-ВИРОБНИЧЕ ПІДПРИЄМСТВО «ЗОРЯ» здійснювати свою господарську діяльність з виробництва вибухових речовин і хімічної продукції та отримувати дохід від цієї діяльності протягом необмеженого періоду у часі.

Матеріалами справи підтверджено, що на території Луганської області тривали активні бойові дії з 24.02.2022 року і до початку липня 2022 року. З початку збройної агресії РФ на території Луганської області було значно пошкоджено, а в деяких населених пунктах навіть знищено, об'єкти критичної інфраструктури, в тому числі і виробничі потужності багатьох підприємств. Здійснення господарської діяльності на території Луганської області стало неможливим і навіть небезпечним для працівників Товариства.

Таким чином Позивач був позбавлений можливості здійснювати свою ліцензовану господарську діяльність в умовах, які існували до початку збройного нападу РФ, і, як наслідок, позбавлений можливості отримувати доходи від такої діяльності.

У зв'язку з військовою агресією Російської Федерації проти України, Указом Президента України від 24.02.2022 р. № 64/2022 в Україні було введено воєнний стан з 05 години 30 хвилин 24 лютого 2022 р. строком на 30 діб. Зазначений період дії воєнного стану неодноразово продовжувався та станом на сьогодні його продовжено до 15 листопада 2023 року згідно з Указом Президента України від 26.07.2023 р. № 451/2023, затвердженого Законом України «Про затвердження Указу Президента України «Про продовження строку дії воєнного стану в Україні» № 3275-IX від 27.07.2023 р.

Згідно з наказом Міністерства з питань реінтеграції тимчасово окупованих територій України «Про затвердження Переліку територій, на яких ведуться (велися) бойові дії або тимчасово окупованих Російською Федерацією» від, 22.12.2022 р. № 309, територія місця розташування об'єктів нерухомості, виробничих потужностей, що належать Позивачу на праві власності, та об'єкти єдиного майнового комплексу, віднесені до територій, тимчасово окупованих Російською Федерацією, а саме: вся територія Рубіжанської міської територіальної громади Луганської області з 13.05.2022 р. і до теперішнього часу, вся територія Кремінської міської територіальної громади Луганської області з 18.04.2022 р. і до теперішнього часу, територія смт. Вовчоярівка Лисичанської міської територіальної громади Луганської області з 03.07.2022 р. і до теперішнього часу.

За інформацією, розміщеною у відкритих джерелах інформації в мережі Інтернет, зокрема (https://www.radiosvoboda.org/a/news-putin-aneksiya-pidpys/32066095.html, ІНФОРМАЦІЯ_1_____, https://www.bbc.com/ukrainian/news-63050712, https://www.radiosvoboda.org/amp/novyny-pryazovya-prymusova-pasportyzatsiya rosiyi-putin-aneksiya/32067127.html), https://suspilne.media/288682-putin-pidpisav-zakon-pro-priednanna-timcasovo-okupovanih-teritorij-ukraini-do-rosii/, РФ своїми діями, зокрема зі сторони офіційних осіб держави-агресора, вважає та публічно визнає захоплені в результаті військової агресії території України, як території Російської Федерації та фактично підтверджує їх незаконну анексію.

Так, указами президента Російської Федерації від 29 вересня 2022 року № 685, від 29 вересня 2022 року № 686 про «приєднання» до РФ частково окупованих територій Запорізької, Херсонської, Донецької і Луганської областей та визнання «незалежності» цих регіонів, виходячи з проведених там під контролем Москви так званих референдумів. 03 жовтня 2022 р. анексію частини українських територій схвалила Держдума РФ.

04 жовтня 2022 року Рада Федерації верхня палата російського парламенту ратифікувала так звані договори «про входження ЛНР (так званої Луганської Народної Республіки) до складу Росії».

Вказані дії зі сторони РФ підтверджують вчинення протиправних дій, спрямованих на завершення формального процесу анексії українських територій.

В той же час, пункт 9 Резолюції 60/1, прийнятої Генеральною Асамблеєю ООН 24.10.2005 р., визначає мир, безпеку та розвиток прав людини тими опорами, на яких тримається система ООН.

Стаття 1 Декларації про право на мир засвідчує, що кожен має право жити в мирі в умовах заохочення і захисту всіх прав людини і повної реалізації розвитку (резолюція 71/189, прийнята Генеральною Асамблеєю ООН 19.12.2016 р.).

Декларація про право народів на мир, прийнята резолюцією 39/11 Генеральної Асамблеї ООН 12.11.1984 р., проголошує, що збереження права народів на мир та сприяння його здійсненню є одним з основних обов'язків кожної держави.

Отже, обов'язок держав утримуватися від збройної агресії кореспондує право на мир, яке є запорукою дотримання інших прав і свобод, гарантованих нормами Загальної декларації прав людини та інших міжнародно-правових актів.

Згідно зі ст. 1 Закону України «Про оборону України», збройна агресія це застосування іншою державою або групою держав збройної сили проти України. Збройною агресією проти України вважається будь-яка з таких дій, зокрема: вторгнення або напад збройних сил іншої держави або групи держав на територію України, а також окупація або анексія частини території України; напад збройних сил іншої держави або групи держав на військові сухопутні, морські чи повітряні сили або цивільні морські чи повітряні флоти України.

Наслідком саме збройної агресії Російської Федерації відносно України, що є загальновідомими фактами, стала окупація частини території України.

Таким чином Російська Федерація є суб'єктом, внаслідок збройної агресії якого проти України та окупації частини території України порушено низку прав та свобод фізичних та юридичних осіб, зокрема, прав позивача. Внаслідок військової агресії Російської Федерації позивачу була завдана шкода, що полягає у порушенні його права власності на активи, як то об'єкти нерухомості, транспортні засоби, промислове обладнання, сировина, готова продукція тощо, протиправному обмеженні у реалізації його правомочностей власника внаслідок окупації та захоплення територій зі сторони РФ та у спричиненні збитків (як реальних, так і у вигляді упущеної вигоди).

З метою визначення розміру шкоди у вигляді реальних збитків та у вигляді упущеної вигоди Позивач звернувся до незалежного оцінювача для проведення експертних оціночних досліджень, за результатами яких отримано відповідні висновки експерта.

З висновку незалежного оцінювача, який викладений у Звіті про незалежну оцінку майна від 28.02.2023 р. за результатами проведення оціночної процедури щодо визначення розміру реальних збитків, яких зазнав позивач через втрату активів внаслідок збройної агресії РФ, вбачається наступне:

- ринкова вартість втрачених на тимчасово окупованих РФ територіях активів ТОВ «НВП «ЗОРЯ» станом на 01.09.2022 року складала: 948 865 685,00 грн. (дев'ятсот сорок вісім мільйонів вісімсот шістдесят п'ять тисяч шістсот вісімдесят п'ять гривень 00 коп.), що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ на дату оцінки – 25 947 552,80 доларів США або 25 776 715,05 Євро.

З висновку незалежного оцінювача, викладеного у Звіті про незалежну оцінку майна від 06.06.2023 р. за результатами проведення оціночної процедури щодо визначення розміру збитків у вигляді упущеної вигоди від неможливості чи перешкод у провадженні господарської діяльності Позивача внаслідок збройної агресії РФ, вбачається наступне:

- ринкова вартість збитків у вигляді упущеної вигоди від неможливості чи перешкод у провадженні господарської діяльності позивача внаслідок збройної агресії РФ станом на 06.06.2023 року складала 9 138 297 993,13 грн. (дев'ять мільярдів сто тридцять вісім мільйонів двісті дев'яносто сім тисяч дев'ятсот дев'яносто три гривні 13 коп.), що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ на дату оцінки – 249

894 663,54 доларів США або 233 753 724,85 Євро, з яких:

- 497 503 441,72 грн. (чотириста дев'яносто сім мільйонів п'ятсот три тисячі чотириста сорок одна грн. 72 коп.) визначено за період з 24.02.2022 року до дати оцінки 06.06.2023 року, що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ на дату оцінки – 13 604 661,97 доларів США або 12725 923,66 Євро;

- 8 640 794 551,41 грн. (вісім мільярдів шістсот сорок мільйонів сімсот дев'яносто чотири тисячі п'ятсот п'ятдесят одна гривня 41 коп.) - розмір упущеної вигоди, яка очікується в майбутньому, та розрахована за період з дати оцінки 06.06.2023 року по 06.06.2028 року, що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ на дату оцінки – 236 290 001,57 доларів США або 221 027 801,19 Євро.

Оскільки РФ як держава-агресор вчинила дії, які позбавили позивача можливості здійснювати реалізацію свого права власності на майно, позивач позбавлений можливості доступу до свого майна, можливості ним володіти, користуватися, розпоряджатися та отримувати відповідні економічні вигоди, до стягнення підлягають завдані збитки у загальному розмірі 10 087 163 651,13 грн. (десять мільярдів вісімдесят сім мільйонів сто шістдесят три тисячі шістсот п'ятдесят одну гривню 13 коп.), що еквівалентно 275 842 216,34 доларів США (двісті сімдесят п'ять мільйонів вісімсот сорок дві тисячі двісті шістнадцять доларів США 34 центи) або 259 530 439,90 Євро (двісті п'ятдесят дев'ять мільйонів п'ятсот тридцять тисяч чотириста тридцять дев'ять євро 90 євроцентів).

При розгляді справи суд враховує такі положення чинного законодавства.

Відповідно до статті 11 Цивільного кодексу України(далі- ЦК України), цивільні права та обов'язки виникають із дій осіб, що передбачені актами цивільного законодавства, а також із дій осіб, що не передбачені цими актами, але за аналогією породжують цивільні права та обов'язки. Підставами виникнення цивільних прав та обов'язків, зокрема, є: 1) договори та інші правочини; 2) створення літературних, художніх творів, винаходів та інших результатів інтелектуальної, творчої діяльності; 3) завдання майнової (матеріальної) та моральної шкоди іншій особі; 4) інші юридичні факти. Цивільні права та обов'язки можуть виникати безпосередньо з актів цивільного законодавства. У випадках, встановлених актами цивільного законодавства, цивільні права та обов'язки виникають безпосередньо з актів органів державної влади, органів влади Автономної Республіки Крим або органів місцевого самоврядування. У випадках, встановлених актами цивільного законодавства, цивільні права та обов'язки можуть виникати з рішення суду. У випадках, встановлених актами цивільного законодавства або договором, підставою виникнення цивільних прав та обов'язків може бути настання або ненастання певної події.

У частині 1 статті 317 ЦК України правомочності власника розкриваються за допомогою цивілістичної тріади правомочностей: володіння, користування та розпорядження.

Під правомочністю володіння розуміється заснована на законі (тобто юридично забезпечена) можливість мати у себе дане майно, утримувати його в своєму господарстві, фактично володіти ним.

Правомочність користування являє собою засновану на законі можливість експлуатації, господарського чи іншого використання майна шляхом вилучення з нього корисних властивостей, його споживання. Воно тісно пов'язане з правомочністю володіння, бо в більшості випадків можна користуватися майном, тільки фактично володіючи ним.

Правомочність розпорядження означає аналогічну можливість визначення юридичної долі майна шляхом зміни його приналежності, стану або призначення.

У своїй сукупності названі правомочності вичерпують всі надані власнику можливості. Власник сам вирішує, що робити зі своїм майном, керуючись виключно власними інтересами, здійснюючи щодо цього майна будь-які дії, які не повинні суперечити закону і не порушують прав інших осіб та інтересів суспільства. Діяльність власника може бути обмежена чи припинена або власника може бути зобов'язано допустити до користування його майном інших осіб лише у випадках і в порядку, встановлених законом.

Засада недоторканності права власності передбачена статтею 41 Конституції України, згідно з якою право приватної власності є непорушним, ніхто не може бути протиправно позбавлений права власності.

Статтею 321 ЦК України передбачено, що право власності є непорушним. Ніхто не може бути протиправно позбавлений цього права чи обмежений у його здійсненні.

Непорушність цього права означає передусім невтручання будь-кого у здійснення власником своїх прав щодо володіння, користування та розпорядження майном, заборону будь-яких порушень прав власника щодо його майна всупереч інтересам власника та його волі.

Стаття 1 Протоколу № 1 до <u>Конвенції про захист прав людини і основоположних свобод</u> передбачає, що кожна фізична або юридична особа має право мирно володіти своїм майном. Ніхто не може бути позбавлений свого майна інакше як в інтересах суспільства і на умовах, передбачених законом або загальними принципами міжнародного права.

Натомість РФ своїми діями порушила право власності позивача на його активи, які розташовані в зоні тимчасової окупації території України, оскільки у позивача немає доступу до свого майна, що позбавляє його можливості володіння та користування ним і фактично призводить до неможливості ним розпорядитися та отримати економічні вигоди від його використання.

Варто зазначити, Європейський суд з прав людини при розгляді справ щодо порушення права власності дотримується позиції, що будь-яке обмеження чи позбавлення правомочностей власника є defacto позбавленням права власності та відповідно порушенням ст. 1 Першого протоколу до <u>Конвенції про захист прав людини і основоположних свобод.</u>

Так, розглядаючи заяви про порушення ст. 1 Першого протоколу до Конвенції Європейський суд з прав людини зіштовхувався не лише зі справами, в яких заявників фактично позбавляли майна, але й зі справами, в яких таке позбавлення було визнано ним defacto. Однією з таких справ є справа Споронг і Льоннрот проти Швеції (SporrongandLцnnroth v. Sweden), заяви №7151/75, №7152/75, рішення від 23.09.1982 р., рішення від 18.12.1984 р. (справедлива сатисфакція).

У цій справі суд дійшов висновку, що хоча фактично заявники не були позбавлені майна, обмеження, накладені на їх майно державою, фактично призвели до того, що право заявників на власність виявлялося відкличним і таким, що за певних умов могло бути скасоване.

Суд зазначає, що відбулось обмеження можливості власників розпорядитися своїм майном. Тобто втративши певною мірою свій зміст, право власності не зникло. Наслідки не є такими, щоб можна було прирівняти їх до наслідків позбавлення майна.

Однак навіть за вказаних обставин, суд прийшов до висновку, що будь-яке обмеження чи позбавлення правомочностей власника є defacto позбавленням права власності, визнав порушення ст. 1 Першого протоколу до Конвенції та призначив справедливу компенсацію заявникам у своєму рішенні від 18.12.1984 р.

У справі «Лоізіду проти Туреччини» Європейським судом з прав людини прийнято рішення про необхідність компенсації Турецькою Республікою моральної і матеріальної шкоди заявниці, яка була змушена залишити місце свою проживання внаслідок окупації Туреччиною північної частини території Кіпру.

У пункті 63 мотивувальної частини рішення від 18.12.1996 р. ЄСПЛ зазначив, що оскільки заявниці починаючи з 1974 р. було відмовлено у праві доступу до майна, вона фактично повністю втратила над ним контроль, рівно як і можливість користуватись ним. Ця відмова, що триває, повинна розглядатися як втручання у права, передбачені ст. 1 Протоколу № 1. Таке втручання з урахуванням виключних обставин цієї справи, на які посилається пані Лоізіду на Уряд Кіпру, не може розглядатися як позбавлення власності або контролю за її використанням у рамках першого і другого пунктів ст. 1 Протоколу 1. Водночас воно, поза будь-яким сумнівом, підпадає під дію норми, що міститься у першому реченні цієї статті, зокрема, становить порушення права на безперешкодне користування своїм майном. У цьому

*9*2387518*1*0*

зв'язку Суд вважає, що фактична неможливість здійснення цього права є таким же порушенням Конвенції, як і перешкоди юридичного характеру.

Визначаючи розмір компенсації завданої пані Лоізіду матеріальної шкоди, Європейський суд з прав людини зазначив, що заявниця продовжує залишатися законним власником дев'яти ділянок землі і однієї квартири, і що висновок Суду про порушення ст. 1 Протоколу № 1 ґрунтувався на тому факті, що внаслідок відмови їй у праві доступу до її землі починаючи з 1974 р. заявниця фактично повністю втратила контроль над своїм майном, рівно як і можливість користуватись ним. Отже, Суд дійшов висновку, що вона має право на компенсацію збитків, безпосередньо пов'язаних з цим порушенням її прав.

Європейський суд з прав людини, юрисдикція якого поширюється на всі питання тлумачення і застосування Конвенції (пункт 1 статті 32 Конвенції), у своїй практиці наголошує на тому, що неможливість здійснення права на безперешкодне користування своїм майном, зумовлена діями або бездіяльністю держави, є порушенням Конвенції. У цьому зв'язку ЄСПЛ неодноразово висловлювався щодо необхідності компенсації матеріальної шкоди, завданої власникам нерухомого майна у результаті втрати контролю над таким майном і неможливості користуватися ним.

Стаття 17 Закону України «Про виконання рішень та застосування практики Європейського суду з прав людини» покладає на суд обов'язок при розгляді справ застосовувати <u>Конвенцію про захист прав людини і основоположних свобод</u> 1950 року і Протоколи до неї, згоду на обов'язковість яких надано Верховною Радою України та практику Європейського суду з прав людини як джерело права.

Згідно зі статтею 15 ЦК України кожна особа має право на захист свого цивільного права у разі його порушення, невизнання або оспорювання. Кожна особа має право на захист свого інтересу, який не суперечить загальним засадам цивільного законодавства.

Відповідно до статті 16 ЦК України, кожна особа має право звернутися до суду за захистом свого особистого немайнового або майнового права та інтересу. Способами захисту цивільних прав та інтересів можуть бути: 1) визнання права; 2) визнання правочину недійсним; 3) припинення дії, яка порушує право; 4) відновлення становища, яке існувало до порушення; 5) примусове виконання обов'язку в натурі; 6) зміна правовідношення; 7) припинення правовідношення; 8) відшкодування збитків та інші способи відшкодування майнової шкоди; 9) відшкодування моральної (немайнової) шкоди; 10) визнання незаконними рішення, дій чи бездіяльності органу державної влади, органу влади Автономної Республіки Крим або органу місцевого самоврядування, їхніх посадових і службових осіб. Суд може захистити цивільне право або інтерес іншим способом, що встановлений договором або законом чи судом у визначених законом випадках. Суд може відмовити у захисті цивільного права та інтересу особи в разі порушення нею положень частин другої - п'ятої <u>статті 13</u>цього Кодексу.

Відповідно до статті 22 ЦК України, особа, якій завдано збитків у результаті порушення її цивільного права, має право на їх відшкодування. Збитками є: 1) втрати, яких особа зазнала у зв'язку зі знищенням або пошкодженням речі, а також витрати, які особа зробила або мусить зробити для відновлення свого порушеного права (реальні збитки); 2) доходи, які особа могла б реально одержати за звичайних обставин, якби її право не було порушене (упущена вигода). Збитки відшкодовуються у повному обсязі, якщо договором або законом не передбачено відшкодування у меншому або більшому розмірі. Якщо особа, яка порушила право, одержала у зв'язку з цим доходи, то розмір упущеної вигоди, що має відшкодовуватися особі, право якої порушено, не може бути меншим від доходів, одержаних особою, яка порушила право. На вимогу особи, якій завдано шкоди, та відповідно до обставин справи майнова шкода може бути відшкодована і в інший спосіб, зокрема, шкода, завдана майну, може відшкодовуватися в натурі (передання речі того ж роду та тієї ж якості, полагодження пошкодженої речі тощо), якщо інше не встановлено законом.

Згідно зі статтею 1166 ЦК України, майнова шкода, завдана неправомірними рішеннями, діями чи бездіяльністю особистим немайновим правам фізичної або юридичної

особи, а також шкода, завдана майну фізичної або юридичної особи, відшкодовується в повному обсязі особою, яка її завдала. Особа, яка завдала шкоди, звільняється від її відшкодування, якщо вона доведе, що шкоди завдано не з її вини. Шкода, завдана каліцтвом, іншим ушкодженням здоров'я або смертю фізичної особи внаслідок непереборної сили, відшкодовується у випадках, встановлених законом. Шкода, завдана правомірними діями, відшкодовується у випадках, встановлених цим Кодексом та іншим законом.

Суд зазначає, що при вирішенні спорів про відшкодування шкоди за статтею 1166 ЦК України, доказуванню підлягає: факт спричинення шкоди, протиправність дій заподіювача шкоди і його вина, причинний зв'язок між протиправною дією та негативними наслідками. Відсутність хоча б одного з таких елементів виключає відповідальність за заподіяння шкоди. Деліктна відповідальність за загальним правилом настає лише за наявності вини заподіювача шкоди.

Відповідно до Резолюції Генеральної Асамблеї ООН ES-11/1 від 02 березня 2022 року військова агресія Російської Федерації була засуджена як така, що порушує статтю 2 (4) Статуту ООН, а також суверенітет, незалежність та територіальну цілісність України. Крім того, Російську Федерацію було зобов'язано припинити застосування сили проти України та вивести свої збройні сили за межі міжнародновизнаних кордонів України.

Аналогічних висновків дійшов і Міжнародний суд ООН, який у своєму наказі про забезпечувальні заходи від 16 березня 2022 року у справі щодо звинувачень в геноциді за конвенцією про попередження та покарання злочину геноциду (Україна проти Російської Федерації) зобов'язав Російську Федерацію припинити військову агресію проти України.

Також Генеральна Асамблея ООН прийняла Резолюцію ES-12/1 від 24 березня 2022 року, якою додатково засуджує військову агресію Росії проти України, вимагає від Російської Федерації припинення військових дій, в тому числі атак проти цивільних осіб та цивільних об'єктів, а також засуджує всі порушення міжнародного гуманітарного права та порушення прав людини та вимагає безумовного дотримання міжнародного гуманітарного права, включно із Женевськими Конвенціями 1949 року та Додаткового протоколу I 1977 року до них.

Відповідно до Постанови Верховної Ради України від 14 квітня 2022 року «Про Заяву Верховної Ради України «Про вчинення Російською Федерацією геноциду в Україні»» визнано геноцидом Українського народу дії Збройних сил, політичного і військового керівництва Росії під час збройної агресії проти України, яка розпочалася 24 лютого 2022 року, а також доручено Голові Верховної Ради України спрямувати цю заяву до Організації Об'єднаних Націй, Європейського Парламенту, Парламентської Асамблеї Ради Європи, Парламентської Асамблеї ОБСЄ, Парламентської Асамблеї НАТО, урядів та парламентів іноземних держав. Голові Верховної Ради України надано повноваження звернутися до Генеральної прокуратури, Міністерства закордонних справ України та Міністерства юстиції України щодо невідкладного вжиття заходів для належного документування фактів вчинення Збройними силами Російської Федерації та її політичним і військовим керівництвом геноциду Українського народу, злочинів проти людяності, воєнних злочинів, інших тяжких злочинів на території України та ініціювання притягнення до відповідальності всіх винних осіб.

У постановах Великої Палати Верховного Суду від 19 лютого 2020 року у справі № 210/4458/15-ц, від 30 січня 2020 року у справі 287/167/18-ц, ухвалі Вищого спеціалізованого суду України з розгляду цивільних та кримінальних справ від 16 серпня 2017 року у справі № 761/9437/15-ц висловлено правову позицію про те, що факт збройної агресії Російської Федерації проти України встановленню в судовому порядку не потребує.

Преамбулою Закону України «Про забезпечення прав і свобод громадян та правовий режим на тимчасово окупованій території України» встановлено, що Україна згідно з Конституцією України є суверенною і незалежною державою. Суверенітет України поширюється на всю її територію, яка в межах існуючого кордону є цілісною і недоторканною. Перебування на території України підрозділів збройних сил інших держав з

*9*2387518*1*0*

порушенням процедури, визначеної Конституцією та законами України, Гаазькими конвенціями 1907 року, IV Женевською конвенцією 1949 року, а також всупереч Меморандуму про гарантії безпеки у зв`язку з приєднанням України до Договору про нерозповсюдження ядерної зброї 1994 року, Договору про дружбу, співробітництво і партнерство між Україною і Російською Федерацією 1997 року та іншим міжнародно-правовим актам є окупацією частини території суверенної держави Україна та міжнародним протиправним діянням з усіма наслідками, передбаченими міжнародним правом.

Відповідно до частини 3 статті 85 Господарського процесуального кодексу України обставини, визнані судом загальновідомими, не потребують доказування.

Отже, протиправність діяння відповідача, як складового елементу факту збройної агресії Росії проти України в розумінні частини 3 статті 85 Господарського процесуального кодексу України є загальновідомим фактом, який закріплено державою на законодавчому рівні, а також визнано на найвищому міжнародному рівні.

Обов`язковою умовою покладення відповідальності має бути безпосередній причинний зв`язок між вчиненими порушеннями і завданими збитками. Підставою для відшкодування понесених збитків є спричинення їх внаслідок вчиненого порушення, тобто наявності прямого причинно-наслідкового зв`язку між діями однієї сторони та зменшення майнових прав іншої.

Так, за змістом положень статті 74 Господарського процесуального кодексу України кожна сторона повинна довести ті обставини, на які вона посилається як на підставу своїх вимог або заперечень. У разі посилання учасника справи на невчинення іншим учасником справи певних дій або відсутність певної події, суд може зобов`язати такого іншого учасника справи надати відповідні докази вчинення цих дій або наявності певної події. У разі ненадання таких доказів суд може визнати обставину невчинення відповідних дій або відсутності події встановленою. Докази подаються сторонами та іншими учасниками справи. Суд не може збирати докази, що стосуються предмета спору, з власної ініціативи, крім витребування доказів судом у випадку, коли він має сумніви у добросовісному здійсненні учасниками справи їхніх процесуальних прав або виконанні обов`язків щодо доказів.

Згідно зі статтею 86 Господарського процесуального кодексу України суд оцінює докази за своїм внутрішнім переконанням, що ґрунтується на всебічному, повному, об`єктивному та безпосередньому дослідженні наявних у справі доказів. Жодні докази не мають для суду заздалегідь встановленої сили. Суд оцінює належність, допустимість, достовірність кожного доказу окремо, а також вірогідність і взаємний зв`язок доказів у їх сукупності. Суд надає оцінку як зібраним у справі доказам в цілому, так і кожному доказу (групі однотипних доказів), який міститься у справі, мотивує відхилення або врахування кожного доказу (групи доказів).

Відповідно до частини першої статті 74 Господарського процесуального кодексу України належними є докази, на підставі яких можна встановити обставини, які входять до предмета доказування.

Необхідність доводити обставини, на які учасник справи посилається як на підставу своїх вимог і заперечень в господарському процесі, є складовою обов`язку сприяти всебічному, повному та об`єктивному встановленню усіх обставин справи, що передбачає, зокрема, подання належних доказів, тобто таких, що підтверджують обставини, які входять у предмет доказування у справі, з відповідним посиланням на те, які обставини цей доказ підтверджує.

Аналогічна правова позиція викладена у постановах Верховного Суду від 05.02.2019 у справі №914/1131/18, від 26.02.2019 у справі №914/385/18, від 10.04.2019 у справі № 04/6455/17, від 05.11.2019 у справі №915/641/18.

При цьому, одним з основних принципів господарського судочинства є принцип змагальності.

Названий принцип полягає в тому, що кожна сторона повинна довести ті обставини, на які вона посилається на підтвердження чи заперечення вимог.

Принцип змагальності забезпечує повноту дослідження обставин справи. Цей принцип передбачає покладання тягаря доказування на сторони. Одночасно цей принцип не передбачає обов'язку суду вважати доведеною та встановленою обставину, про яку сторона стверджує. Така обставина підлягає доказуванню таким чином, аби задовольнити, як правило, стандарт переваги більш вагомих доказів, тобто коли висновок про існування стверджуваної обставини з урахуванням поданих доказів видається більш вірогідним, ніж протилежний (близька за змістом правова позиція викладена у постановах Верховного Суду від 18.11.2019 зі справи № 902/761/18, від 20.08.2020 зі справи № 914/1680/18).

Судове рішення повинно ґрунтуватися на засадах верховенства права, бути законним і обґрунтованим. Законним є рішення, ухвалене судом відповідно до норм матеріального права при дотриманні норм процесуального права. Судове рішення має відповідати завданню господарського судочинства. Обґрунтованим є рішення, ухвалене на підставі повно і всебічно з'ясованих обставин, на які сторони посилаються як на підставу своїх вимог і заперечень, підтверджених тими доказами, які були досліджені в судовому засіданні, з наданням оцінки всім аргументам учасників справи.

Вимоги, як і заперечення на них, за загальним правилом обґрунтовуються певними обставинами та відповідними доказами, які підлягають дослідженню, зокрема, перевірці та аналізу. Все це має бути проаналізовано судом як у сукупності (в цілому), так і кожен доказ окремо, та відображено у судовому рішенні.

Крім того, відповідно до статті 79 Господарського процесуального кодексу України наявність обставини, на яку сторона посилається як на підставу своїх вимог або заперечень, вважається доведеною, якщо докази, надані на підтвердження такої обставини, є більш вірогідними, ніж докази, надані на її спростування. Питання про вірогідність доказів для встановлення обставин, що мають значення для справи, суд вирішує відповідно до свого внутрішнього переконання.

Стандарт доказування «вірогідність доказів», на відміну від «достатності доказів», підкреслює необхідність співставлення судом доказів, які надає позивач та відповідач. Тобто з введенням в дію нового стандарту доказування необхідним є не надати достатньо доказів для підтвердження певної обставини, а надати саме ту їх кількість, яка зможе переважити доводи протилежної сторони судового процесу.

Тлумачення змісту цієї статті свідчить, що нею покладено на суд обов'язок оцінювати докази, обставини справи з огляду на їх вірогідність, яка дозволяє дійти висновку, що факти, які розглядаються, скоріше були (мали місце), аніж не були.

В даній справі суд вбачає за можливе звернутися до принципу більшої вірогідності, до якого звертався Верховний Суд, зокрема у справах №921/319/17-г та №908/1581/17.

Судом приймається до уваги той факт, що територія розташування активів (нерухомості, промислових будівель та споруд, виробничих потужностей, промислового обладнання тощо ), що належать позивачу на праві власності, а саме вся територія Луганською області, зокрема і територія Рубіжанської міської територіальної громади, наказом Міністерства з питань реінтеграції тимчасово окупованих територій України «Про затвердження Переліку територій, на яких ведуться (велися) бойові дії або тимчасово окупованих Російською Федерацією» від 22.12.2022 р. № 309 віднесена до переліку територій, тимчасово окупованих Російською Федерацією.

Доказів відсутності факту незаконного перебування та захоплення території Рубіжанської міської територіальної громади Сєвєродонецького району Луганської області, відсутності обмеження вільного доступу до окупованих територій починаючи з 24.02.2022 р. відповідачем не надано. Більш того, зі сторони РФ вчиняються дії, що спрямовані на незаконну анексію окупованих територій та встановлення на них публічно-правового порядку РФ.

Відповідно до статті 1 Закону України «Про забезпечення прав і свобод громадян та правовий режим на тимчасово окупованій території України» тимчасово окупована Російською Федерацією територія України - це частини території України, в межах яких

*9*2387518*1*0*

збройні формування Російської Федерації та окупаційна адміністрація Російської Федерації встановили та здійснюють фактичний контроль або в межах яких збройні формування Російської Федерації встановили та здійснюють загальний контроль з метою встановлення окупаційної адміністрації Російської Федерації.

В даному випадку принцип більшої вірогідності у сукупності з принципом розумності та з урахуванням поданих позивачем доказів та пояснень надає суду можливість зробити висновок про те, що перебування території Луганської області під окупацією російськими окупаційними військами в умовах воєнного стану та військової агресії очевидно позбавило позивача вільного та безперешкодного доступу до власного майна та майна отриманого у користування для здійснення господарської діяльності, яке розташоване в такій зоні тимчасової окупації.

При цьому факт захоплення окупаційними військами територій, де розміщені виробничі потужності Позивача та позбавлення доступу позивача до цих територій та виробничого обладнання внаслідок військової агресії РФ та окупації окремих територій України перебуває у прямому причинно-наслідковому зв'язку з втратою позивачем можливості здійснювати господарську діяльність, оскільки до початку військового вторгнення за звичайних умов позивач мав юридично та практично забезпечену можливість здійснювати статутну діяльність для досягнення мети з якою товариство було створене, законно очікувати та обґрунтовано сподіватися на отримання прибутку від своєї діяльності за звичайних обставин, зокрема від виробництва та подальшої реалізації готової продукції.

З урахуванням поданих позивачем та досліджених у судовому засіданні доказів суд вважає доведеним, що позивач вжив всіх необхідних та залежних від нього заходів щодо одержання доходів, які міг і повинен був отримати за звичайних обставин, і тільки неправомірні дії відповідача, а саме військове вторгнення Відповідача та окупація ним окремих територій України, унеможливили для позивача виконання умов контракту, призвели до його розірвання та стали єдиною і достатньою причиною, яка позбавила позивача можливості отримати прибуток.

Таким чином, військова агресія РФ, окупація, незаконне поширення на окремих територіях України юрисдикції відповідача, що призвело до втручання в усталені господарсько-правові зв'язки Позивача, перебуває у прямому причинно-наслідковому зв'язку з позбавленням позивача доступу до свого майна, унеможливленням здійснення контролю за майном, як наслідок, позбавленням можливості здійснювати реалізацію правомочностей володіння, користування та розпорядження майном, чим завдало позивачу збитків.

Щодо вини, як складового елемента цивільного правопорушення, законодавством України не покладається на позивача обов'язок доказування вини відповідача у заподіянні шкоди; діє презумпція вини, тобто відсутність вини у завданні шкоди повинен доводити сам завдавач шкоди. Якщо під час розгляду справи зазначена презумпція не спростована, то вона є юридичною підставою для висновку про наявність вини заподіювача шкоди. В контексті зазначеного, саме відповідач повинен доводити відсутність своєї вини у спірних правовідносинах. Зазначений висновок підтверджується Верховним Судом, зокрема, у постанові від 21 квітня 2021 року у справі № 648/2035/17, постанові від 14 лютого 2018 року у справі № 686/10520/15-ц.

Суд враховує, що захист права власності гарантується першою статтею Додаткового протоколу до Європейської конвенції з прав людини, а відповідальність за порушення вказаного права покладається безпосередньо на державу і настає у тому випадку, коли будь-яке діяння держави має своїм прямим наслідком застосування до особи забороненого поводження.

Крім того, згідно з пунктами 1, 3 Гаазької Конвенції про закони і звичаї війни на суходолі 1907 року відповідальність у формі відшкодування збитків у випадку порушення правил і звичаїв ведення воєнних дій покладається саме на державу в цілому, як воюючу сторону. Відтак, стягнення відповідної шкоди також має здійснюватись із держави в цілому, за рахунок усіх наявних у неї активів, зокрема і майна підрозділів специфічного апарату

держави, який реалізує її функції, в тому числі як державних органів, так і інших підприємств, організацій, установ, які реалізовують відповідні державні функції.

Відповідно до частини 1 статті 167 Цивільного кодексу України держава діє у цивільних відносинах на рівних правах з іншими учасниками цих відносин.

Згідно зі статтею 170 Цивільного кодексу України держава набуває і здійснює цивільні права та обов'язки через органи державної влади у межах їхньої компетенції, встановленої законом.

При цьому держава є специфічним суб'єктом правовідносин. Під державою розуміється організація політичної влади домінуючої частини населення у соціально неоднорідному суспільстві, яка, забезпечуючи цілісність і безпеку суспільства, здійснює керівництво ним насамперед в інтересах цієї частини, а також управління загальносуспільними справами. До визначальних ознак держави відноситься наявність для виконання своїх завдань та функцій специфічного апарату, який володіє владними повноваженнями і має матеріальні засоби для реалізації цих повноважень. Реалізація функцій держави здійснюється через специфічний апарат, порядок формування, правовий статус та повноваження якого визначаються самою державою.

Відповідно до правового висновку, викладеного Великою Палатою Верховного Суду у постанові від 27.11.2019 у справі № 242/4741/16-ц належним відповідачем у справах про відшкодування шкоди, завданої органом державної влади, їх посадовою або службовою особою, є держава як учасник цивільних відносин, як правило, в особі органу, якого позивач зазначає порушником своїх прав.

За приписами пунктів 1, 3 Гаазької Конвенції про закони і звичаї війни на суходолі 1907 року передбачено, що договірні держави видають своїм сухопутним військам накази, які відповідають Положенню про закони і звичаї війни на суходолі. Воююча сторона, яка порушує норми зазначеного Положення, підлягає відповідальності у формі відшкодування збитків, якщо для цього є підстави. Вона є відповідальною за всі дії, вчинені особами, які входять до складу її збройних сил.

Таким чином, відповідно до наведених положень Цивільного кодексу України та наведеної Конвенції, за шкоду, спричинену порушенням законів і звичаїв війни, відповідальність несе воююча держава в цілому, незважаючи на те, який конкретно підрозділ її збройних сил заподіяв шкоду.

За приписами ч. 9 ст. 5 Закону України «Про забезпечення прав і свобод громадян та правовий режим на тимчасово окупованій території України» передбачено, що відшкодування матеріальної та моральної шкоди, заподіяної внаслідок тимчасової окупації державі Україна, юридичним особам, громадським об'єднанням, громадянам України, іноземцям та особам без громадянства, у повному обсязі покладається на Російську Федерацію як на державу, що здійснює окупацію.

За таких умов, пред'явлення позовних вимоги до Російської Федерації, як до держави в цілому не лише відповідає положенням матеріального закону, але являє собою ефективний спосіб захисту права позивача.

Щодо суми збитків, суд зазначає, що Постановою Кабінету Міністрів України від 20.03.2022 № 326 затверджено Порядок визначення шкоди та збитків, завданих Україні внаслідок збройної агресії Російської Федерації (далі Порядок), який встановлює процедуру визначення шкоди та збитків, завданих Україні внаслідок збройної агресії Російської Федерації (далі - шкода та збитки), починаючи з 19 лютого 2014 року.

Згідно з пп. 18 п. 2 Порядку визначення шкоди та збитків здійснюється окремо за таким напрямом:економічні втрати підприємств (крім підприємств оборонно-промислового комплексу), у тому числі господарських товариств, - напрям включає втрати підприємств усіх форм власності внаслідок знищення та пошкодження їх майна, втрати фінансових активів, а також упущену вигоду від неможливості чи перешкод у провадженні господарської діяльності.

Основні показники, які оцінюються (зокрема):

- вартість втраченого, знищеного чи пошкодженого майна підприємств недержавної форми власності;

- вартість втрачених фінансових активів підприємств недержавної форми власності.

Відповідно до п. 5 "Загальних засад оцінки збитків, завданих майну та майновим правам внаслідок збройної агресії Російської Федерації", що є Додатком до Порядку, оцінка збитків, завданих постраждалим, здійснюється шляхом проведення аналітичної оцінки збитків, стандартизованої, незалежної оцінки збитків або є результатом проведення судової експертизи.

Позивач звернувся до сертифікованого суб'єкта оціночної діяльності ТОВ «Агенція консалтингових послуг» для проведення незалежної оцінки майна, а саме для визначення розміру збитків ТОВ «НАУКОВО-ВИРОБНИЧЕ ПІДПРИЄМСТВО «ЗОРЯ» у вигляді упущеної вигоди, на яку Позивач має право розраховувати за відсутності збройної агресії російської федерації, та визначення розміру реальних збитків, спричинених збройною агресією РФ.

Відповідно до висновку суб'єкта оціночної діяльності ТОВ «Агенція консалтингових послуг», викладеного у Звіті від 27.06.2023 року, ринкова вартість об'єкта оцінки – упущеної вигоди від неможливості чи перешкод у провадженні господарської діяльності ТОВ «НАУКОВО-ВИРОБНИЧЕ ПІДПРИЄМСТВО «ЗОРЯ» внаслідок збройної агресії російської федерації в Україні станом на дату оцінки « 06» червня 2023 року становить  9 138 297 993,13 грн. (дев'ять мільярдів сто тридцять вісім мільйонів двісті дев'яносто сім тисяч дев'ятсот дев'яносто три гривні 13 коп.), що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ на дату оцінки – 249 894 663,54 доларів США або 233 753 724,85 Євро, з яких:

- 497 503 441,72 грн. (чотириста дев'яносто сім мільйонів п'ятсот три тисячі чотириста сорок одна грн. 72 коп.) визначено за період з 24.02.2022 року до оцінки 06.06.2022 року, що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ на дату оцінки – 13 604 661,97 доларів США або 12725 923,66 Євро;

- 8 640 794 551,41 грн. (вісім мільярдів шістсот сорок мільйонів сімсот дев'яносто чотири тисячі п'ятсот п'ятдесят одна гривня 41 коп.) - розмір упущеної вигоди, яка очікується в майбутньому,  та розрахована за період з дати оцінки 06.06.2023 року по 06.06.2028 року, що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ на дату оцінки – 236 290 001,57 доларів США або 221 027 801,19 Євро.

Рецензією від 03.07.2023 року, проведеною рецензентами ГО «Всеукраїнська асоціація фахівців оцінки», вищевказаний звіт класифікований як такий, що в цілому відповідає вимогам нормативно-правових актів з оцінки майна.

Отже, позивачем визначено розмір збитків у вигляді упущеної вигоди шляхом проведення незалежної оцінки зі встановлення ринкової вартості майна, що відповідає вимогам чинного законодавства.

Крім того відповідно до висновку суб'єкта оціночної діяльності ТОВ «Агенція консалтингових послуг», викладеного у Звіті від 28.02.2023 року, ринкова вартість об'єкта оцінки – втрачених активів ТОВ «НАУКОВО-ВИРОБНИЧЕ ПІДПРИЄМСТВО «ЗОРЯ» внаслідок збройної агресії російської федерації в Україні станом на дату оцінки « 01» вересня 2022 року становить:

- 948 865 685,00 грн., що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ на дату оцінки – 25 947 552,80 доларів США або 25 776 715,05 Євро.

Рецензією від 16.03.2023 року, проведеною рецензентами ГО «Всеукраїнська асоціація фахівців оцінки», вищевказаний звіт від 28.02.2023 р. класифікований як такий, що в цілому відповідає вимогам чинного законодавства.

Таким чином позивачем визначено розмір реальних збитків у вигляді втрачених активів шляхом проведення незалежної оцінки зі встановлення ринкової вартості майна, що відповідає вимогам законодавства.

Незалежна оцінка виконана із залученням оцінювача Кравця Андрія Володимировича,

*9*2387518*1*0*

кваліфікаційні свідоцтва оцінювача: серія МФ № 3385 від 26.02.2005 р., серія ЦМК № 343 від 06.10.2007 р., серія МК № 00018 від 01.11.2008 р., посвідчення про підвищення кваліфікації серія ЦМК № 3936-ПК від 27.09.2022 р.

Відтак позивачем належними доказами доведено суму завданих збитків.

Підсумовуючи викладене, суд встановив, що позивачем доведено повний склад цивільного правопорушення, що є умовою та підставою для застосування до відповідача такого заходу відповідальності як відшкодування збитків.

Надаючи правову оцінку належності обраного Позивачем способу захисту, суду належить зважати на його ефективність з точки зору статті 13 Конвенції про захист прав людини і основоположних свобод.

У п. 145 рішення від 15.11.1996 у справі «Чахал проти Об'єднаного Королівства» (Chahal v. theUnitedKingdom, (22414/93) [1996] ECHR 54) Європейський суд з прав людини зазначив, що згадана норма гарантує на національному рівні ефективні правові засоби для здійснення прав і свобод, що передбачаються Конвенцією, незалежно від того, яким чином вони виражені в правовій системі тієї чи іншої країни. Таким чином, суть цієї статті зводиться до вимоги надати людині такі міри правового захисту на національному рівні, що дозволили б компетентному державному органові розглядати по суті скарги на порушення положень Конвенції й надавати відповідний судовий захист, хоча держави - учасники Конвенції мають деяку свободу розсуду щодо того, яким чином вони забезпечують при цьому виконання своїх зобов'язань. Крім того, Суд вказав на те, що за деяких обставин вимоги ст. 13 Конвенції можуть забезпечуватися всією сукупністю засобів, що передбачаються національним правом.

Стаття 13 вимагає, щоб норми національного правового засобу стосувалися сутності «небезпідставної заяви» за Конвенцією та надавали відповідне відшкодування. Зміст зобов'язань за ст. 13 також залежить від характеру скарги заявника за Конвенцією. Тим не менше, засіб захисту, що вимагається згаданою статтею повинен бути «ефективним» як у законі, так і на практиці, зокрема, у тому сенсі, щоб його використання не було ускладнене діями або недоглядом органів влади відповідної держави (п. 75 рішення Європейського суду з прав людини у справі «Афанасьєв проти України» від 5 квітня 2005 року (заява N 38722/02)).

З урахуванням наведеного, ефективний засіб захисту повинен забезпечити поновлення порушеного права, а у разі неможливості такого поновлення - гарантувати особі можливість отримання нею відповідного відшкодування. Права особи в суді повинні бути захищені таким способом, який реально відновить її порушені інтереси.

Враховуючи наведене, суд зазначає, що вимога позивача про стягнення з відповідача суми завданих збитків є ефективним способом захисту порушеного права в розумінні Конвенції про захист прав людини і основоположних свобод та фактично призведе до відновлення його порушених прав.

На підставі вищевикладеного, враховуючи фактичні обставини справи та наведені норми законодавства, суд доходить висновку про задоволення позову у повному обсязі.

При зверненні з позовом позивач не сплачував судовий збір, оскільки звільнений від його сплати в силу приписів п. 22 частини 1 статті 5 Закону України «Про судовий збір» - від сплати судового збору під час розгляду справи в усіх судових інстанціях звільняються позивачі - у справах за позовами до держави-агресора Російської Федерації про відшкодування завданої майнової та/або моральної шкоди у зв'язку з тимчасовою окупацією території України, збройною агресією, збройним конфліктом, що призвели до вимушеного переселення з тимчасово окупованих територій України, загибелі, поранення, перебування в полоні, незаконного позбавлення волі або викрадення, а також порушення права власності на рухоме та/або нерухоме майно.

Відповідно до частини 2 статті 129 Господарського процесуального кодексу України судовий збір, від сплати якого позивач у встановленому порядку звільнений, стягується з відповідача в дохід бюджету пропорційно розміру задоволених вимог, якщо відповідач не

звільнений від сплати судового збору.

Згідно зі статтею 4 Закону України «Про судовий збір» судовий збір справляється у відповідному розмірі від прожиткового мінімуму для працездатних осіб, встановленого законом на 1 січня календарного року, в якому відповідна заява або скарга подається до суду, - у відсотковому співвідношенні до ціни позову та у фіксованому розмірі. За подання до господарського суду позовної заяви майнового характеру ставка судового збору складає 1,5 відсотка ціни позову, але не менше 1 розміру прожиткового мінімуму для працездатних осіб і не більше 350 розмірів прожиткового мінімуму для працездатних осіб.

Оскільки 1,5% від суми позову (за офіційним курсом НБУ) перевищує суму 350 розмірів прожиткового мінімуму для працездатних осіб, то судовий збір за розгляд даної справи складає максимальну суму 939 400,00 грн.

Так як позов задоволено повністю, то зазначений розмір судового збору підлягає стягненню з відповідача до Державного бюджету України у повному обсязі.

Відповідно до пункту 1 частини 4 статті 129 Господарського процесуального кодексу України судові витрати, пов'язані з розглядом справи, покладаються у разі задоволення позову - на відповідача.

Керуючись ст. ст. 7, 9 Кодексу України з процедур банкрутств, ст. ст. 46, 74, 80, 129, 238, 240, 241 Господарського процесуального кодексу України, господарський суд

**ВИРІШИВ:**

**1. Позов задовольнити у повному обсязі.**

**2. Стягнути** з держави Російська Федерація (119991, м. Москва, вул. Житня, 14, будівля 1) на користь Товариства з обмеженою відповідальністю «НАУКОВО-ВИРОБНИЧЕ ПІДПРИЄМСТВО «ЗОРЯ» (69001, Запорізька область, місто Запоріжжя, вул. Перемоги, буд. 2, код ЄДРПОУ 36999957) в рахунок відшкодування збитків 10 087 163 678,13 грн. (десять мільярдів вісімдесят сім мільйонів сто шістдесят три тисячі шістсот сімдесят вісім гривень 13 копійок), що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ – 275 842 216,34 доларів США (двісті сімдесят п'ять мільйонів вісімсот сорок дві тисячі двісті шістнадцять доларів США 34 центи) або 259 530 439,90 Євро (двісті п'ятдесят дев'ять мільйонів п'ятсот тридцять тисяч чотириста тридцять дев'ять Євро 90 євроцентів), з яких:

- сума збитків у вигляді втрачених активів внаслідок збройної агресії Російської Федерації в розмірі 948 865 685,00 грн. (дев'ятсот сорок вісім мільйонів вісімсот шістдесят п'ять тисяч шістсот вісімдесят п'ять гривень 00 копійок) (без ПДВ), що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ на дату оцінки – 25 947 552.80 доларів США (двадцять п'ять мільйонів дев'ятсот сорок сім тисяч п'ятсот п'ятдесят два долари США 80 центів) або 25 776 715.05 Євро (двадцять п'ять мільйонів сімсот сімдесят шість тисяч сімсот п'ятнадцять Євро 05 євроцентів);

- сума збитків у вигляді упущеної вигоди за період з 24.02.2022 року по 06.06.2023 року в розмірі 497 503 441,72 грн. (чотириста дев'яносто сім мільйонів п'ятсот три тисячі чотириста сорок одна гривня 72 копійки), що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ – 13 604 661,97 доларів США (тринадцять мільйонів шістсот чотири тисячі шістсот шістдесят один долар США 97 центів) або 12 725 923.66 Євро (дванадцять мільйонів, сімсот двадцять п'ять тисяч дев'ятсот двадцять три Євро 66 євроцентів);

- сума збитків у вигляді упущеної вигоди за період з 06.06.2023 року по 06.06.2028 року в розмірі 8 640 794 551,41 грн. (вісім мільярдів шістсот сорок мільйонів сімсот дев'яносто чотири тисячі п'ятсот п'ятдесят одна гривня 41 копійка), що відповідає за офіційним курсом гривні щодо іноземних валют встановлених НБУ на дату оцінки – 236 290 001,57 доларів США (двісті тридцять шість мільйонів двісті дев'яносто тисяч один долар США 57 центів) або 221 027 801,19 Євро (двісті двадцять один мільйон двадцять сім тисяч вісімсот один Євро 19 євроцентів).

*9*2387518*1*0*

**3.** **Стягнути** з держави Російська Федерація (119991, м. Москва, вул. Житня, 14, будівля 1) в дохід Державного бюджету України (<u>отримувач: ГУК</u> у Зап.обл/м.Зап.Вознес./22030101, код отримувача (код за ЄДРПОУ) 37941997, Банк отримувача: Казначейство України (ел.адм.подат.), код банку отримувача (МФО) 899998, рахунок отримувача) 939 400,00 грн. (дев'ятсот тридцять дев'ять тисяч чотириста гривень 00 коп.) судового збору.

**4. Видати накази.**

Повний текст судового рішення складено та підписано-01.12.2023р.

**Суддя**                                         **О.О. Юлдашев**

**Рішення господарського суду набирає законної сили після закінчення строку подання апеляційної скарги, якщо апеляційну скаргу не було подано. У разі подання апеляційної скарги рішення, якщо його не скасовано, набирає законної сили після повернення апеляційної скарги, відмови у відкритті чи закриття апеляційного провадження або прийняття постанови суду апеляційної інстанції за наслідками апеляційного перегляду. Відповідно до ст. 256 ГПК України апеляційна скарга на рішення суду подається протягом двадцяти днів з дня його проголошення, якщо в судовому засіданні було оголошено лише вступну та резолютивну частини рішення суду, або у разі розгляду справи (вирішення питання) без повідомлення (виклику) учасників справи, зазначений строк обчислюється з дня складення повного судового рішення.**

ВЕРХОВНИЙ СУД ШТАТУ НЬЮ-ЙОРК ОКРУГ
НЬЮ-ЙОРК

-----------------------------------------------------------------X

ТОВ «НАУКОВО-ВИРОБНИЧЕ ПІДПРИЄМСТВО
«ЗАРЯ»,

                        Позивач

              -Проти-

Російська Федерація,

                      Відповідач.

-----------------------------------------------------------------X

**Номер справи:**
**Номер клопотання:**

### АФІДЕВІТ СОСНОВСЬКОЇ НАТАЛІЇ НА ПІДТРИМКУ КЛОПОТАННЯ ПОЗИВАЧА ПРО ВИНЕСЕННЯ СУДОВОГО РІШЕННЯ У СПРОЩЕНОМУ ПОРЯДКУ

**Наталія Сосновська цим стверджує наступне:**

Я вільно володію англійською та українськими мовами і засвідчую, що доданий документ є точним перекладом з української мови на англійську документа під назвою «Господарський суд Запорізької області, Додаткове рішення іменем України від 14.12.2023, справа № 908/1242/22(908/2670/23)», який додається.

_____ **Наталія Сосновська**

*13 серпня 2024 року*

Місто Київ, Україна, тринадцятого серпня дві тисячі двадцять четвертого року.

Я, Сидоренко А.В., приватний нотаріус Київського міського нотаріального округу засвідчую справжність підпису гр. Сосновської Наталії Володимирівни, який зроблено у моїй присутності.

Особу Сосновської Наталії Володимирівни, яка підписала документ, встановлено, дієздатність перевірено.

Зареєстровано в реєстрі за № 1153

1       **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

2       **COUNTY OF SACRAMENTO**

3

4    ZORYA RESEARCH AND PRODUCTION                    **Case No.:**
     ENTERPRISES,
5
              Plaintiff,
6
     v.
7
     THE RUSSIAN FEDERATION,
8
              Defendant.
9

10

11
                        **DECLARATION OF NATALIIA SOSNOVSKA**
12

13   **Nataliia Sosnovska hereby affirms as follows:**

14          I am fluent in English and Ukrainian languages and certify that the attached document is an

15   accurate translation from Ukrainian to English of the document entitled "Commercial Court of

16   Zaporizhzhya Oblast, Additional decision in the Name of Ukraine dated 14.12.2023, case No.

17   908/1242/22(908/2670 /23)", which is attached.

18   _____**Nataliia Sosnovska**

19   *August 13, 2024*

20

21   I, A.V. Sydorenko, a private notary of the Kyiv City Notarial District, hereby certify the authenticity of

22   the signature of Nataliia Volodymyrivna Sosnovska, which was made in my presence.

23   The identity of Nataliia Volodymyrivna Sosnovska, who signed the document, has been verified and her

24   legal capacity has been confirmed.

25   Registered in the register under No. 1153

26   Private Notary

27

28

Цей переклад з української мови на англійську мову зроблено мною, перекладачем,

Сосновською Наталією Володимирівною _____

Місто Київ, Україна, тринадцятого серпня дві тисячі двадцять четвертого року.

Я, Сидоренко А.В., приватний нотаріус Київського міського нотаріального округу засвідчую справжність підпису перекладача Сосновської Наталії Володимирівни, який зроблено у моїй присутності.

Особу перекладача встановлено, її дієздатність та кваліфікацію перевірено.

Зареєстровано в реєстрі за № _ll 60_



Приватний нотаріус



Всього прошито, пронумеровано та скріплено печаткою (____) аркуша.

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

Issued and Filed
Superior Court of California,
Sacramento

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

09/09/2024

leurgac

By _____, Deputy

24CV017784

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RUSSIAN FEDERATION; and DOES 1-20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ZORYA RESEARCH AND PRODUCTION ENTERPRISES

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: Sacramento County Superior Court
*(El nombre y dirección de la corte es):*

CASE NUMBER:
*(Número del Caso):*

720 9th Street, Sacramento, CA 95814

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kurt A. Kappes (SBN CA 146384); Alexander L. Nowinski (SBN CA 304967) 400 Capitol Mall, Suite 2400, Sacramento, CA 95814 (916) 442-1111
Jason H. Kislin (*pro hac vice pending*) 500 Campus Drive, Suite 400, Florham Park, New Jersey 07932 (973) 360-7900

DATE: SEP - 9 2024          Clerk, by _____, Deputy
*(Fecha)*                   *(Secretario)*                      *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: Russian Federation
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☒ other *(specify)*: C.C.P. ss. 1713 et seq.; 28 U.S.C. ss. 1330, 1441, 1602-1611.
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

BY FAX

Kurt A. Kappes (SBN 146384)
Alexander L. Nowinski (SBN 304967)
GREENBERG TRAURIG, LLP
400 Capitol Mall, Suite 2400
Sacramento, California 95814
Telephone: 916.442.1111
Facsimile: 916.448.1709
kappesk@gtlaw.com
alexander.nowinski@gtlaw.com

Jason H. Kislin (*pro hac vice pending*)
GREENBERG TRAURIG, LLP
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
Telephone: 973.360.7900
Facsimile: 973.301.8410
kislinj@gtlaw.com

Attorneys for Plaintiff
ZORYA RESEARCH AND PRODUCTION ENTERPRISES

**ELECTRONICALLY FILED**
Superior Court of California
County of Sacramento
11/25/2024
By: _____ L. Baldwin _____ Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SACRAMENTO

| | |
|---|---|
| ZORYA RESEARCH AND PRODUCTION ENTERPRISES,<br><br>Plaintiff,<br><br>v.<br><br>THE RUSSIAN FEDERATION,<br><br>Defendant. | Case No. 24CV017784<br><br>**SUMMONS**<br><br>Hon. Jill H. Talley<br>Department 23 |

TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED and required to serve upon Plaintiff's attorneys your response to Plaintiff's Complaint within sixty (60) days, pursuant to 28 U.S.C. 1608(d).  In case of your failure to timely respond, judgment may be taken against you by default for the relief demanded.

DATED: November 25, 2024                    GREENBERG TRAURIG, LLP

By: _____
Kurt A. Kappes
Jason H. Kislin (*pro hac vice pending*)
Alexander L. Nowinski

Attorneys for Plaintiff
ZORYA RESEARCH AND PRODUCTION
ENTERPRISES