**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ZORYA RESEARCH AND PRODUCTION ENTERPRISES, <br><br> *Plaintiff*, <br><br> v. <br><br> THE RUSSIAN FEDERATION, <br><br> *Defendant*. | Case No. 1:25-cv-03543-TJK <br><br> ORAL ARGUMENT REQUESTED |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
THE RUSSIAN FEDERATION'S MOTION FOR JUDGMENT ON THE PLEADINGS**

*(Fed. R. Civ. P. 12(c); Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611)*

David P. Riesenberg (D.C. Bar No. 1033269)
Dilmurod Satvaldiev (D.C. Bar No. 90027884)
PINNA GOLDBERG U.S. PLLC
10 G Street NE, Suite 600
Washington, D.C., 20002, U.S.A.
T: +1 (202) 549-2477
E: driesenberg@pinna-goldberg.com

January 8, 2026                                   *Counsel for Defendant*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ........................................................................................................ 4

    A.   ZORYA ALLEGES THAT THE LUGANSK COMPLEX WAS SUPPOSEDLY DESTROYED DURING MILITARY OPERATIONS ...................................................................................... 5

    B.   THE 2023 JUDGMENT REFLECTS SERVICE, IMMUNITY, AND DUE-PROCESS DEFECTS .......... 5

    C.   THE EUROPEAN COURTS HAVE DECLINED TO ENFORCE SIMILAR UKRAINIAN JUDGMENTS  7

ARGUMENT ........................................................................................................... 10

    I.   APPLICABLE LEGAL STANDARDS ........................................................................ 10

    II.   PLAINTIFF CANNOT ESTABLISH SUBJECT-MATTER JURISDICTION UNDER THE FSIA .... 11

        A.   Plaintiff Cannot Establish the Required Nexus to U.S. Territory ......................... 11

        B.   Plaintiff Does Not Allege Any "Taking" in Violation of the International Law of Expropriation .............................................................................................. 14

        C.   There Are No "Rights in Property" Alleged to Be "in Issue" as Required Under § 1605(a)(3) ................................................................................................ 16

    III.   RESERVATION OF NON-JURISDICTIONAL DEFENSES ...................................... 17

CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

**U.S. Cases**

*Abelesz v. Magyar Nemzeti Bank*,
    692 F.3d 661 (7th Cir. 2012) ........................................................................................ 14

*Al-Qarqani v. Saudi Arabian Oil Co.*,
    19 F.4th 794 (5th Cir. 2021) ............................................................................ 4, 16, 17

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989)...................................................................................................... 11

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co*,
    581 U.S. 170 (2017)...................................................................................................... 10

*Dames & Moore v. Regan,*
    453 U.S. 654 (1981)...................................................................................................... 15

*\*De Csepel v. Republic of Hungary*,
    859 F.3d 1094 (D.C. Cir. 2017)...................................................................... 3, 11, 12, 14, 16

*Dist. No. 1, Pac. Coast Dist., Marine Engineers Beneficial Association, AFL-CIO*
*v. Liberty Mar. Corp.,*
    933 F.3d 751 (D.C. Cir. 2019)...................................................................................... 10

*\*Federal Republic of Germany v. Philipp*,
    592 U.S. 169 (2021)................................................................................................ 2, 3, 14

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
    905 F.2d 438 (1990)...................................................................................................... 10

*\*Lord Day & Lord v. Socialist Republic of Vietnam,*
    134 F. Supp. 2d 549 (S.D.N.Y. 2001).......................................................................... 17

*Phoenix Consulting, Inc. v. Republic of Angola*,
    216 F.3d 36 (D.C. Cir. 2000)........................................................................................ 11

*Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*,
    962 F.3d 576 (D.C. Cir. 2020)...................................................................................... 17

ii

*Republic of Hungary v. Simon*,
　　604 U.S. 115 (2025).......................................................................................... 13

*\*Schubarth v. Federal Republic of Germany*,
　　891 F.3d 392 (D.C. Cir. 2018) ........................................................ 3, 11, 12, 14, 16

*\*Simon v. Republic of Hungary*,
　　812 F.3d 127 (D.C. Cir. 2016) .............................................................. 11, 12, 13, 16

*SI Grp. Consort Ltd. v. Ukraine*,
　　2017 U.S. Dist. LEXIS 12515 (S.D.N.Y. Jan. 30, 2017)......................................... 17

*Verlinden B.V. v. Cent. Bank of Nigeria*,
　　461 U.S. 480 (1983)................................................................................... 10, 11

## Foreign and International Cases

*Agrotek-Invest v. Russian Federation*, Lietuvos Apeliacinis Teismas [Lithuanian
　　Court of Appeal], June 18, 2025, No. e2T-32-912/2025................................... 1, 7, 9

*Jurisdictional Immunities of the State (Germany v. Italy)*,
　　2012 I.C.J. 99, 139 (Judgment of Feb. 3) .............................................................. 15

*Magnat Agrarindustrielles Unternehmen GmbH v. Russian Federation*,
　　Landgericht Berlin II [Berlin District Court II], Mar. 6, 2024, No. 51 O 128/23
　　............................................................................................................. 1, 8

*Mironenko v. Russian Federation*, Lietuvos Apeliacinis Teismas [Lithuanian Court
　　of Appeal], Feb. 13, 2025, No. 2T-5-881/2025 ................................................ 1, 7, 8

*SYU Zhnyva v. Gazprom Int'l Limited*, Rechtbank Den Haag [Hague District
　　Court], June 5, 2025, No. C/09/674766 / HA RK 24-584 ................................... 1, 9

*Tereshchenko v. Russian Federation*, Rechtbank Den Haag [Hague District Court],
　　Apr. 2, 2025, No. C/09/659657 / HA RK 24-24................................................ 1, 9

*Viza Group v. Russian Federation*, Lietuvos Apeliacinis Teismas [Lithuanian Court
　　of Appeal], Dec. 4, 2024, No. e2T-45-912/2024.......................................... 1, 7, 8, 9

**Statutes and Other Authorities**

28 U.S.C. § 1330(a) ................................................................................................ 10, 11

28 U.S.C. § 1603(b) ..................................................................................................... 14

28 U.S.C. § 1604 ...................................................................................................... 2, 11

28 U.S.C. § 1605(a)(3) ............................................................................................ *passim*

28 U.S.C. §§ 1609–1611 ............................................................................................... 18

Fed. R. Civ. P. 10(c) ..................................................................................................... 10

Fed. R. Civ. P. 12(c) ............................................................................................ 2, 10, 18

Fed. R. Civ. P. 12(h)(3) ................................................................................................. 10

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents
    in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 ............................................. 6

## PRELIMINARY STATEMENT

The Plaintiff, Zorya Research and Production Enterprises ("Zorya"), asks this Court to recognize a 2023 judgment (the "2023 Judgment"), which was entered by a Ukrainian court against the Defendant, the Russian Federation, based on alleged events that occurred during military operations in Lugansk in 2022.  Compl. 4 (ECF No. 1-1).

The 2023 Judgment is not unique.  It is one of many rulings that Ukrainian courts purported to enter against the Russian Federation based on the 2022 military operations.  Much like Zorya, many other Ukrainian plaintiffs in such cases also sought recognition of these Ukrainian judgments—including *inter alia* before the courts of Germany, Lithuania, and the Netherlands, which uniformly refused to recognize this category of Ukrainian judgments.[1]  As the European courts held consistently, the Ukrainian judgments in this category are invalid and unenforceable because the Ukrainian courts [1] violated the Russian Federation's entitlement to sovereign immunity under international law and [2] failed to comply with applicable rules of due process concerning service, notice, and the opportunity to be heard.  Here, the Russian Federation has reserved the rights to raise those same "invalidity" defenses in due course—*i.e.*, if this litigation were ultimately to proceed to the "merits" stage.  *See* Answer 23 (ECF No. 36) ("Non-Recognition of the Invalid Foreign Judgment").

---

[1] *See Magnat Agrarindustrielles Unternehmen GmbH v. Russian Federation*, Landgericht Berlin II [Berlin District Court II], Mar. 6, 2024, No. 51 O 128/23 (ECF No. 22-2); *Mironenko v. Russian Federation*, Lietuvos Apeliacinis Teismas [Lithuanian Court of Appeal], Feb. 13, 2025, No. 2T-5-881/2025 (ECF No. 22-5); *Viza Group v. Russian Federation*, Lietuvos Apeliacinis Teismas [Lithuanian Court of Appeal], Dec. 4, 2024, No. e2T-45-912/2024 (ECF No. 22-4); *Agrotek-Invest v. Russian Federation*, Lietuvos Apeliacinis Teismas [Lithuanian Court of Appeal], June 18, 2025, No. e2T-32-912/2025 (ECF No. 22-6); *Tereshchenko v. Russian Federation*, Rechtbank Den Haag [Hague District Court], Apr. 2, 2025, No. C/09/659657 / HA RK 24-24 (No. ECF 22-7); *Farm SYU Zhnyva v. Gazprom Int'l Limited*, Rechtbank Den Haag [Hague District Court], June 5, 2025, No. C/09/674766 / HA RK 24-584 (No. ECF 22-8).

This litigation cannot proceed to the merits, however, because this Court lacks subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602–1611.  As the FSIA provides, the Russian Federation is "presumptively immune from the jurisdiction of United States courts" under 28 U.S.C. § 1604, subject to the FSIA's enumerated "exceptions."  *Federal Republic of Germany v. Philipp*, 592 U.S. 169, 173 (2021).  Accordingly, unless Zorya has pleaded jurisdictional facts that will satisfy one of the FSIA's exceptions, this Court must dismiss the action for lack of subject-matter jurisdiction under Federal Rules of Civil Procedure 12(c) and 12(h)(3).

To avoid dismissal, Zorya invokes the FSIA's "expropriation exception," as codified at 28 U.S.C. § 1605(a)(3).  Compl. ¶ 21.  But Zorya's own allegations show why, as a matter of law, the "expropriation exception" is not applicable here.  Specifically, the Complaint alleges [1] that Zorya owned an industrial complex in the Lugansk Region (the "Lugansk Complex"), and [2] that the Lugansk Complex and related "improvements on the real property" were supposedly harmed by alleged military activity between March and May 2022.  *Id.* ¶¶ 1, 4–6.  Zorya further alleges that a Ukrainian court issued the 2023 Judgment based upon these 2022 military operations and ordered the Russian Federation to pay compensation of approximately US$275 million.  *Id.* ¶¶ 7–9.  Under applicable precedent, those allegations cannot satisfy § 1605(a)(3) for at least three independently dispositive reasons.

***First***, the expropriation exception under § 1605(a)(3) requires a nexus with U.S. territory.  When the defendant is the foreign state itself—such as the Russian Federation—the FSIA requires that the allegedly expropriated property (or "property exchanged for such property") must be "present in the United States in connection with a commercial activity carried on in the United States by the foreign state."  28 U.S.C. § 1605(a)(3).

2

The Complaint acknowledges, of course, that the Lugansk Complex is located in Lugansk—more than 5,000 miles from U.S. territory. The Complaint does not allege that any legally relevant "property" is located within the United States, whether in connection with the Russian Federation's purported "commercial activity" or otherwise. The D.C. Circuit has consistently ruled that such allegations do not satisfy § 1605(a)(3). *See, e.g., Schubarth v. Federal Republic of Germany*, 891 F.3d 392, 395 (D.C. Cir. 2018) (citing *De Csepel v. Republic of Hungary*, 859 F.3d 1094, 1107 (D.C. Cir. 2017)).

***Second***, § 1605(a)(3) is limited to cases involving "rights in property taken in violation of international law." The U.S. Supreme Court has explained that this phrase refers only to violations of "the international law of expropriation." *Philipp*, 592 U.S. at 180–83. This statutory phrase does not contemplate any other asserted violation of international law, such as the international law of human rights or the international law applicable to military operations. *Id.* Whether lawful or unlawful, destruction in the course of military operations—as Zorya alleges here—does not constitute a "taking" within the meaning of § 1605(a)(3). *See, e.g.*, *De Csepel*, 752 F. Supp. 3d at 160–61 ("[A]t the time of the FSIA's enactment, the international law of expropriation did not include takings in violation of the international laws of war.").

***Third***, this is not a case where "rights in property" are placed "in issue" before this Court, as § 1605(a)(3) also requires. On the contrary, Zorya seeks only to litigate the enforceability and validity of a foreign money judgment—*i.e.*, a claim to *in personam* monetary relief. Zorya has not pleaded any freestanding cause of action for injury to "rights in property," such as conversion, trespass, or replevin. Nor does Zorya ask this Court to adjudicate title to any identified asset, evaluate liability (and contributory liability), or determine how much compensation should be awarded based on the (alleged) value of the Lugansk Complex.

3

Accordingly, even if property rights were "in issue" before the Ukrainian court during the 2023 proceedings, there are not presently any property rights "in issue" before this Court, as § 1605(a)(3) requires explicitly. "This exception does not apply because, even assuming that [the Russian Federation] unlawfully expropriated the [Lugansk Complex], what is at issue in this case is the enforcement of [a foreign judgment] and not litigation of a property dispute involving international law." *See Al-Qarqani v. Saudi Arabian Oil Co.*, 19 F.4th 794, 801 (5th Cir. 2021) (considering recognition of an arbitral award). Reading § 1605(a)(3) to encompass ancillary claims—*i.e.*, claims that implicate not property rights but the invalidity of foreign judicial rulings—would expand the exception beyond the FSIA's text.

For these reasons, and as set forth below in greater detail, this Court should grant the Russian Federation's Motion for Judgment on the Pleadings and dismiss the Complaint. The Russian Federation enters this appearance solely to raise jurisdictional objections and immunity defenses and does not waive any immunity, privilege, or defense available to it as a foreign sovereign.

## BACKGROUND

The Russian Federation disputes and rejects many of the factual allegations set forth in Zorya's Complaint, which reflect significant misrepresentations and material omissions. This Court, however, need not resolve the parties' factual disputes because the Complaint should be dismissed at the outset for lack of subject-matter jurisdiction.

Zorya cannot, as a matter of law, satisfy the "expropriation" exception under 28 U.S.C. § 1605(a)(3). Even assuming the factual accuracy of the Zorya's allegations and the findings set forth in the appended judgment of the Ukrainian Court—*i.e.*, for the sake of argument only and

4

without prejudice to future arguments—even such assumed facts would be legally insufficient to establish subject-matter jurisdiction under the FSIA.

A.    ZORYA ALLEGES THAT THE LUGANSK COMPLEX WAS SUPPOSEDLY DESTROYED DURING MILITARY OPERATIONS

Zorya alleges that, before March 2022, it owned and operated the Lugansk Complex in the city of Rubizhne. Compl. ¶ 1. Zorya alleges that this facility was used to produce "inorganic chemicals, explosives and other intermediate products." *Id.* Zorya further alleges that, between March and May 2022, military personnel that Zorya attributes to the Russian Federation supposedly conducted military operations in and around Rubizhne, including shelling and other military activities. *Id*. ¶¶ 4–5.

Based on those allegations, Zorya asserts that its assets at the Lugansk Complex were "destroyed." *Id*. ¶ 6. Zorya claims that it lost "significant real estate, improvements on the real estate, and substantial physical assets" pertaining to the Lugansk Complex, which Zorya values at approximately $30 million. *Id.* Zorya also alleges that the Lugansk Complex "generated approximately $27.9 million of income per year." *Id.*

B.    THE 2023 JUDGMENT REFLECTS SERVICE, IMMUNITY, AND DUE-PROCESS DEFECTS

Zorya does not bring any freestanding claim in this action for injury to the Lugansk Complex. Instead, Zorya seeks to enforce the 2023 Judgment, which was entered—without the Russian Federation's participation—by a Ukrainian court. *See* 2023 Judgment (ECF No. 1-1). According to Zorya's pleadings, the 2023 Judgment awarded Zorya damages for alleged destruction of property at the Lugansk Complex and for purported lost profits. Compl. ¶¶ 8–9; *see also* 2023 Judgment 33–34.

5

The 2023 Judgment, however, was invalid based upon specific defects—*i.e.*, relating to service of process, sovereign immunity, and basic procedural fairness—that other courts have found incompatible with recognition and enforcement.

***First*,** the Ukrainian court authorized service of process by methods that violated the applicable international treaty.  Both the Russian Federation and Ukraine are parties to the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Service Convention") (Riesenberg 3d Decl., Annex U).[2]  Under the Hague Service Convention, judicial documents to be served abroad in civil or commercial matters are transmitted in accordance with the procedures set forth in Articles 2 through 6. *See* Annex U. The Russian Federation has designated its Ministry of Justice as the Central Authority pursuant to Article 2 and has objected to alternative methods of service under Article 10.  *Id*.  In addition, documents intended for service upon the Russian Federation itself must be transmitted "through diplomatic channels."  *Id.* at 115 (Section IV of the Russian Federation's Declaration, Dec. 9, 2004).[3]

In Zorya's case, however, the Ukrainian court authorized service of process in derogation of the Hague Service Convention.  Specifically, the Ukrainian court approved service by private courier (DHL) to Russian embassies in foreign territory—not to the Central Authority or through diplomatic channels to the Ministry of Foreign Affairs—and, separately, by publication on a

---

[2] *See also* List of Parties to the Hague Service Convention, U.N. Treaties Collection (Riesenberg 3d Decl., Annex V).

[3] Under the Hague Service Convention, "service through diplomatic channels" is a term of art. It refers to formal intergovernmental transmission of documents by official diplomatic communication, typically from the Ministry of Foreign Affairs of the requesting State to the Ministry of Foreign Affairs of the receiving State.  *See* Section IV of the Russian Federation's Declaration, Dec. 9, 2004 (Annex U).

website.  2023 Judgment 18–19 (ECF No. 1-1).  Those methods are not authorized substitutes for lawful service, as multiple European courts have concluded.[4]

*Second*, the damages award is extraordinary and largely speculative.  The Ukrainian court awarded approximately US$275 million—predominantly for projected future lost profits—despite Zorya's allegation that the physical assets were worth no more than US$30 million.  2023 Judgment 33–34 (ECF No. 1-1).  The Ukrainian court thus relied upon unchallenged assertions about future operations that were not subjected to discovery, cross-examination, or adversarial scrutiny.

*Third*, the proceedings were conducted too rapidly and without sufficient rigor for a controversy involving hundreds of millions of U.S. dollars.  The case was filed in August 2023 and concluded in November 2023.  2023 Judgment 10–11 (ECF No. 1-1).  Such a compressed timeline highlights the absence of due process and procedural fairness.

## C.   THE EUROPEAN COURTS HAVE DECLINED TO ENFORCE SIMILAR UKRAINIAN JUDGMENTS

Zorya's attempt to enforce the 2023 Judgment is not unique.  Since the beginning of the military operations in 2022, Ukrainian courts have entered multiple judgments awarding damages against the Russian Federation (and, in some cases, Russian state-owned enterprises) for alleged losses attributed to military activities.

Where the Ukrainian plaintiffs sought recognition in European jurisdictions, the European courts uniformly declined to recognize or enforce this category of Ukrainian judgments against the Russian Federation.  Those courts have emphasized principles of sovereign immunity, as well as

---

[4] *Mironenko*, Lietuvos Apeliacinis Teismas, Feb. 13, 2025, No. 2T-5-881/2025 (ECF No. 22-5), ¶ 17; *Viza Group*, Lietuvos Apeliacinis Teismas, Dec. 4, 2024, No. e2T-45-912/2024 (ECF No. 22-4), ¶ 29; *Agrotek-Invest*, Lietuvos Apeliacinis Teismas, June 18, 2025, No. e2T-32-912/2025 (ECF No. 22-6), ¶ 24.

the fundamental requirement that a sovereign be properly served with process in accordance with applicable treaties and basic due process.

Set forth below are at least six representative decisions where European courts refused enforcement.  Subject to obtaining English translations, the Russian Federation also reserves the right to supplement this list with additional, similar judicial decisions.

1. *Magnat* **(Germany).**  In the *Magnat* case, a Ukrainian creditor sought recognition and enforcement in Germany of two judgments issued by the Commercial Court of Chernihiv Oblast. These Ukrainian judgments awarded monetary compensation for alleged damage to the creditor's property attributed to the conflict.  The German court dismissed the application, explaining that recognition would be incompatible with fundamental principles of international law, including state immunity, and noting defects in service and notice. *See Magnat*, Landgericht Berlin II, Mar. 6, 2024, No. 51 O 128/23 (ECF No. 22-2).

2. *Mironenko* **(Lithuania).**  In the *Mironenko* case, a Ukrainian individual sought enforcement in Lithuania of a default judgment issued by the Bohorodchany District Court of the Ivano-Frankivsk Region.  The Ukrainian judgment awarded compensation for non-pecuniary damage allegedly linked to the military activities.  The Lithuanian Court of Appeal refused to recognize the judgment, emphasizing that the Russian Federation was not properly served and concluding that enforcement would be contrary to international public order. *See Mironenko*, Lietuvos Apeliacinis Teismas, Feb. 13, 2025, No. 2T-5-881/2025 (ECF No. 22-5).

3. *Viza Group* **(Lithuania).**  In *Viza Group*, a Ukrainian creditor sought enforcement in Lithuania of a judgment issued by the Kyiv Regional Economic Court of Ukraine awarding compensation for alleged property damage. The Lithuanian Court of Appeal refused enforcement, explaining that recognition would violate international public order where service was deficient

8

and sovereign immunity was denied in the underlying proceedings. *See Viza Group*, Lietuvos Apeliacinis Teismas, Dec. 4, 2024, No. e2T-45-912/2024 (ECF No. 22-4).

4. ***Agrotek-Invest* (Lithuania).** In *Agrotek-Invest*, a Ukrainian creditor sought enforcement in Lithuania of a judgment issued by the Economic Court of the Kyiv Region of Ukraine awarding compensation for alleged loss of real estate and other assets. The Lithuanian Court of Appeal refused enforcement, again citing deficient service and the unlawfulness of denying sovereign immunity for claims connected to military actions, and concluding that recognition would contradict international public policy. *See Agrotek-Invest*, Lietuvos Apeliacinis Teismas, June 18, 2025, No. e2T-32-912/2025 (ECF No. 22-6).

5. ***Tereshchenko* (the Netherlands).** In *Tereshchenko*, a Ukrainian individual sought enforcement in the Netherlands of a judgment issued by the Kyiv-Svyatoshynskyi District Court of Ukraine awarding compensation for alleged damage to an apartment. The Hague District Court refused enforcement, holding that the Russian Federation was entitled to immunity from jurisdiction under international law and that the claimant had not established a basis for an exception. *See Tereshchenko*, Rechtbank Den Haag, Apr. 2, 2025, No. C/09/659657 / HA RK 24-24 (ECF No. 22-7).

6. ***Farm SYU Zhnyva* (the Netherlands).** In *Farm SYU Zhnyva*, a Ukrainian agricultural company sought enforcement in the Netherlands of a judgment issued by the Commercial Court of the Zaporozhye Region of Ukraine awarding damages for alleged loss of grain attributed to the conflict. The Hague District Court refused enforcement, concluding that recognition would be incompatible with the international legal principle of state sovereignty because court had to respect the state-owned entity's immunity from jurisdiction. *See Farm SYU Zhnyva*, Rechtbank Den Haag, June 5, 2025, No. C/09/674766 / HA RK 24-584 (ECF No. 22-8).

## ARGUMENT

### I.     APPLICABLE LEGAL STANDARDS

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is appropriate once "the pleadings are closed." Fed. R. Civ. P. 12(c).

In deciding a Rule 12(c) motion, the Court may consider the complaint and answer, documents attached to or incorporated by reference in the pleadings, and matters subject to judicial notice. *See* Fed. R. Civ. P. 10(c); *Dist. No. 1, Pac. Coast Dist., Marine Engineers Beneficial Association, AFL-CIO v. Liberty Mar. Corp.*, 933 F.3d 751, 760 (D.C. Cir. 2019) ("Pleadings include . . . relevant and authentic documents attached to the complaint."). Here, the Complaint relies on the 2023 Judgment, which is attached to the Complaint and incorporated by reference. *See* 2023 Judgment (ECF No. 1-1).

This motion also presents a jurisdictional issue under the FSIA. *See Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493–94 (1983). If the Court concludes that no FSIA exception applies, it must dismiss for lack of subject-matter jurisdiction. *See* 28 U.S.C. § 1330(a); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

The Court must decide "as near to the outset of the case as is reasonably possible" whether an FSIA exception applies, because sovereign immunity is not only a defense to liability but "an immunity from trial and the attendant burdens of litigation." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 187 (2017); *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443 (D.C. Cir. 1990) (internal quotation marks and citation omitted).

10

II.    **PLAINTIFF CANNOT ESTABLISH SUBJECT-MATTER JURISDICTION UNDER THE FSIA**

Congress has provided that a foreign state "shall be immune from the jurisdiction" of the United States' courts unless a statutory exception applies. 28 U.S.C. § 1604. The FSIA "must be applied by the district courts in every action against a foreign sovereign." *Verlinden*, 461 U.S. at 493–94; *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434-39 (1989). If no exception to the foreign state's immunity applies, the Court lacks subject-matter jurisdiction and must dismiss. 28 U.S.C. § 1330(a). As the plaintiff, Zorya bears the burden of invoking an FSIA exception sufficient to place jurisdiction in issue. *See Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000).

Zorya relies here on § 1605(a)(3), whereunder a foreign state is not immune in cases "in which rights in property taken in violation of international law are in issue" and one of the two alternative territorial-nexus requirements is satisfied. 28 U.S.C. § 1605(a)(3).

Courts in this Circuit generally describe the exception as requiring three elements: [1] rights in property are in issue; [2] the property was taken in violation of international law; and [3] the foreign state's commercial activity had a sufficient nexus with U.S. territory. *See, e.g., Simon v. Republic of Hungary*, 812 F.3d 127, 141 (D.C. Cir. 2016); *Schubarth*, 891 F.3d at 395, 398–399; *De Csepel*, 859 F.3d at 1104.

Zorya cannot satisfy these requirements based on the allegations in its Complaint, as detailed below.

A.    **Plaintiff Cannot Establish the Required Nexus to U.S. Territory**

Section 1605(a)(3) contains two clauses that provide alternative requirements for a nexus between U.S. territory and the foreign state's commercial activity, depending on the identity of the defendant.

11

Where the defendant is the "foreign state" <u>itself</u>, the plaintiff must show that the "property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3). Where the defendant is an "agency or instrumentality" of a foreign state, the plaintiff must prove that the "property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States." *Id.* The D.C. Circuit has repeatedly confirmed this interpretation. *E.g.*, *Simon*, 812 F.3d at 146; *Schubarth*, 891 F.3d at 401 (explaining that the second commercial-activity nexus clause of § 1605(a)(3) does not apply where the foreign state <u>itself</u> is the defendant); *De Csepel*, 859 F.3d at 1106–07 (same).

Here, Zorya is suing the Russian Federation <u>itself</u>. It does not sue any "agency or instrumentality" of the Russian Federation—or, indeed, mention any "agency or instrumentality" in the Complaint. In order to satisfy § 1605(a)(3), therefore, the Complaint would need to state a claim based upon "rights in property" where the relevant property "is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." 28 U.S.C. § 1605(a)(3). This requirement, however, is not satisfied in the present case for the following reasons.

*First*, the only "property" identified by Zorya is the Lugansk Complex. This property is not "present in the United States" and is located, rather, thousands of miles away in the City of Rubizhne. Compl. ¶¶ 1, 4–6. The Complaint does not allege that any relevant "property" is present in the United States.

This omission is dispositive under the FSIA, as the D.C. Circuit has explained in multiple decisions. *See Schubarth*, 891 F.3d at 401 (the foreign state retains its immunity unless "the first

12

clause of the commercial-activity nexus" is satisfied); *Simon*, 812 F.3d at 147–48 (dismissing where plaintiffs did not identify property present in the United States and did not plausibly plead the nexus).

**Second**, Zorya also does not allege that any relevant property was "exchanged" for the Lugansk Complex. To satisfy this clause, "the plaintiff would have to put forth some facts that support tracing" the property "to a location in the United States," such as—for example—where the foreign-state defendant "sells expropriated property" and transfers "the cash proceeds" to a bank account in the United States. *See, e.g.*, *Republic of Hungary v. Simon*, 604 U.S. 115, 127–128, 134 (2025) ("[O]ne way a plaintiff can do so is by identifying an account within the United States that holds the proceeds from the sale of seized property.").

Here, Zorya alleges that the Lugansk Complex was "destroyed," and never suggests that any part of the Lugansk Complex was sold or converted into monetary proceeds—let alone then transferred to the United States. Compl. ¶ 6.

**Third**, Zorya's allegations also fail to satisfy any of the "commercial activity" requirements of § 1605(a)(3). That is, Zorya alleges only that the Russian Federation "continues to engage in commercial activity in the United States," by which it means the alleged "purchase of mined uranium from U.S. companies" and the alleged "sale and delivery of enriched uranium to U.S. companies." *Id.* ¶¶ 2, 21.

The Complaint does not allege, however, that any property related to the Lugansk Complex is "present in the United States in connection with" any of these supposed uranium transactions, as § 1605(a)(3) requires. (Emphasis added.)

**Fourth**, the second nexus clause also does not assist Zorya. That clause requires [1] that the relevant property must be "owned or operated by an agency or instrumentality of the foreign

13

state" and [2] that this same agency or instrumentality must also be "engaged in a commercial activity in the United States." 28 U.S.C. § 1605(a)(3).

Here, Zorya failed to name any "agency or instrumentality" as a defendant in this case—and, indeed, the Complaint never even mentions any "agency or instrumentality" at all. To qualify as an "agency or instrumentality," an entity must be "a separate legal person, corporate or otherwise." 28 U.S.C. § 1603(b). Zorya has neither [1] identified any such entity, nor [2] alleged that any such entity "owned or operated" the Lugansk Complex, while also engaging in the "commercial activity in the United States" required by § 1605(a)(3).

To summarize, the Complaint fails to satisfy the requirement of a commercial nexus between the purportedly expropriated property and U.S. territory. Accordingly, this Court must dismiss the Complaint for lack of subject-matter jurisdiction under the FSIA. *See Schubarth*, 891 F.3d at 401–402.

**B.      Plaintiff Does Not Allege Any "Taking" in Violation of the International Law of Expropriation**

The Complaint also fails for a second independent reason. Zorya has not alleged any "taking" in violation of the international law of expropriation.

As the Supreme Court has explained, the reference to "international law" at § 1605(a)(3) contemplates only "the international law of expropriation." *See Philipp*, 592 U.S. at 180. That body of law addresses a particular kind of sovereign act—*i.e.*, the nationalization of property for a public purpose during peacetime—similar to the Anglo-American concept of eminent domain. *See, e.g., Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 674–75 (7th Cir. 2012) (distinguishing between expropriation and other wrongs).

Section 1605(a)(3) does not, however, broadly abrogate foreign states' sovereign immunity for any and all categories of violations of international law, such as injuries resulting from military

operations.  *See, e.g.*, *De Csepel*, 752 F. Supp. 3d at 160–161 ("[A]t the time of the FSIA's enactment, the international law of expropriation did not include takings in violation of the international laws of war.").

Congress narrowed § 1605(a)(3) in this way because, fundamentally, "a State is <u>not deprived of immunity</u> by reason of the fact that it is accused of serious violations of international human rights law <u>or the international law of armed conflict</u>."  *Jurisdictional Immunities of the State (Germany v. Italy)*, 2012 I.C.J. 99, 139 (Judgment of Feb. 3) (emphasis added) (Riesenberg 3d Decl., Annex W).

The Complaint does not allege that the Russian Federation nationalized or transferred title to Zorya's property.  Instead, the Complaint alleges that "troops" engaged in military operations in the vicinity of the Lugansk Complex, that these "troops" occupied the Lugansk Complex, and that the Lugansk Complex was "destroyed" as a result.  Compl. ¶¶ 4–6.  The Complaint further alleges that these actions supposedly violated the United Nations Charter and a number of other international treaties.  *Id.* ¶ 18.

These allegations, however, bear no resemblance to peacetime eminent domain.  Such allegations, therefore, do not establish violations of the international law of expropriation, as required under § 1605(a)(3).  Fundamentally, the alleged destruction of property during military operations does not qualify as a "taking" under § 1605(a)(3).

Indeed, the FSIA was not intended to create a vehicle for adjudicating claims arising from military operations.  On the contrary, as the U.S. Supreme Court has explained, the "only hope of obtaining any payment at all" for this category of claims would result from "a diplomatic settlement."  *Dames & Moore v. Regan*, 453 U.S. 654, 679 (1981).  Zorya's interpretation of § 1605(a)(3), however, would thwart this understanding.

15

**C.      There Are No "Rights in Property" Alleged to Be "in Issue" as Required Under § 1605(a)(3)**

Zorya's Complaint fails for a third independent reason.  This is not a "case . . . in which rights in property taken in violation of international law are in issue" before this Court.  28 U.S.C. § 1605(a)(3) (emphasis added).

In cases under § 1605(a)(3), plaintiffs typically raise claims sounding in property, tort, or contract—such as conversion, trespass, or replevin.  They ask the U.S. court to award relief based upon the property rights themselves—thereby placing "rights in property" directly "in issue" before the U.S. court.  *See, e.g., De Csepel*, 859 F.3d at 1104–05 (artworks); *Simon*, 812 F.3d at 132–34 (property taken from minority groups); *Schubarth*, 891 F.3d at 394–95.

This case is different.  Zorya does not ask this Court to resolve competing rights to property or award compensation based upon injuries to property.  On the contrary, Zorya brings only a recognition action based upon a foreign money judgment.  Accordingly, Zorya is specifically not asking this Court to revisit any issues concerning the underlying property rights—*i.e.*, the ownership of the Lugansk Complex, the allocation of liability for purported harms, or the actual value of the Lugansk Complex.  On the contrary, Zorya has only put "in issue" the validity or invalidity of the 2023 Judgment.  That is not a property right.

In a similar case, the Fifth Circuit considered whether § 1605(a)(3) could be applied to establish jurisdiction in a case involving certain plaintiffs' alleged title to land in Saudi Arabia.  *See Al-Qarqani*, 19 F. 4th at 801.  As the Fifth Circuit observed, the plaintiffs in that case did not want the U.S. courts to adjudicate the "property dispute" itself.  *Id.*  On the contrary, the *Al-Qarqani* plaintiffs wanted the U.S. courts only to recognize and enforce the award issued by an arbitration tribunal, which—the plaintiff asserted—had *already* decided the dispute over rights in property.  *Id.*

16

The Fifth Circuit held that such recognition actions cannot satisfy § 1605(a)(3). On the contrary, "[t]his exception does not apply because, even assuming that [the foreign state] unlawfully expropriated the [property], what is at issue in this case is the enforcement of an arbitral award and not litigation of a property dispute involving international law." *Id*. Other courts have reached similar conclusions. *See, e.g., SI Grp. Consort Ltd. v. Ukraine*, No. 15 CV 3047-LTS, 2017 U.S. Dist. LEXIS 12515, at *11–12 (S.D.N.Y. Jan. 30, 2017) ("Mere failure to pay is not a 'taking' — if it were, the Section 1605(a)(3) exception would apply in every case seeking enforcement of a judgment, because the logical predicate to such cases is that the judgment in question is unpaid. This is a plainly untenable result."); *Lord Day & Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 560–62 (S.D.N.Y. 2001) (the "rights in property" requirement was not satisfied by a fee dispute and request for money damages).

Reading § 1605(a)(3) to cover recognition and enforcement of a foreign money judgment, therefore, would transform a narrow jurisdictional exception into a *de facto* clearinghouse for foreign judgments against foreign states. Nothing in the text of § 1605(a)(3), however, suggests that Congress had any such intention. Accordingly, because Zorya's claim seeks only recognition of a foreign-country money judgment, it does not place "rights in property" at issue within the meaning of § 1605(a)(3).

## III.    RESERVATION OF NON-JURISDICTIONAL DEFENSES

The Russian Federation brings this motion to assert its threshold jurisdictional immunities under the FSIA. Based on the D.C. Circuit's precedents, the Russian Federation is entitled to a threshold determination of sovereign immunity before being compelled to brief or litigate the merits of any claim. *See Process & Industrial Developments Ltd. v. Federal Republic of Nigeria*, 962 F.3d 576, 585–86 (D.C. Cir. 2020).

The Russian Federation therefore expressly reserves all defenses on the merits, including under applicable federal, state, or local law, as well as international law and the public policy of the United States, until after resolution of all jurisdictional questions under the FSIA.

## CONCLUSION

For the foregoing reasons, the Court should grant the Russian Federation's Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c).  The Complaint must be dismissed for lack of subject-matter jurisdiction under the FSIA.

Date:  January 8, 2026

Respectfully submitted,
*/s/ David P. Riesenberg*
David P. Riesenberg (D.C. Bar No. 1033269)
Dilmurod Satvaldiev (D.C. Bar No. 90027884)
PINNA GOLDBERG U.S. PLLC
10 G Street NE, Suite 600
Washington, D.C., 20002, U.S.A.
T: 202-549-2477
E: driesenberg@pinna-goldberg.com

*Counsel for Defendant*

18