**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ZORYA  RESEARCH  AND  PRODUCTION ENTERPRISES,<br><br>*Plaintiff*,<br><br>v.<br><br>THE RUSSIAN FEDERATION,<br><br>*Defendant*. | Civil Action No. 25-3543 (TJK) |

**MEMORANDUM OPINION**

Zorya Research and Production Enterprises owned a factory in eastern Ukraine that made explosives and chemicals.  Zorya alleges that after the Russian Federation invaded Ukraine in 2022, Russian forces came to occupy the factory, destroying most of its facilities and bankrupting Zorya.  Zorya sued the Russian Federation for damages in Ukrainian court, winning over $275 million.  Zorya then sued the Russian Federation in California state court to seek recognition and enforcement of that award.  The Russian Federation removed the case to federal court and had it transferred to the District of Columbia.  Now the Russian Federation moves to dismiss for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act, or FSIA.  The Court agrees, and so it will grant the motion and dismiss the case.

**I.      Factual and Procedural Background**

Zorya is a Ukrainian company.  ECF No. 1-1 ¶ 1.  Before the Russian invasion in 2022, it produced "inorganic chemicals, explosives and other intermediate products" at a "complex industrial site" located in Luhansk Oblast, Ukraine.  *Id.*  Then the Russian Federation invaded Ukraine in February 2022.  ECF No. 1-1 ¶ 4.  Luhansk Oblast—in the far east of Ukraine, close to Russia—was overrun by the invasion.  *Id.*  Zorya alleges that Russian forces shelled its industrial site and

within about a month, it had to evacuate its personnel to more stable areas of the country. *Id.* A few months later, Russian forces took control of Zorya's factory. *Id.* ¶ 5. Russian forces hoisted the Russian flag over the complex and released a press release about it. *Id.* Zorya alleges that Russia still controls the site but has "destroyed virtually all the facilities that existed" on the complex. *Id.* ¶¶ 5–6. Zorya says it filed for bankruptcy because of the loss of its facilities in Luhansk Oblast. *Id.* ¶ 7.

Zorya sued Russian Federation in Ukrainian court over the loss of its facilities, winning over $275 million. ECF No. 1-1 ¶ 7–8. Zorya sought recognition of the Ukrainian judgment in California state court. *See generally* ECF No. 1-1. The Russian Federation removed the case to the Eastern District of California and then successfully moved to transfer the case here under 28 U.S.C. § 1404(a). *See* ECF Nos. 1, 22, 33. In January 2026, after it answered, the Russian Federation moved to dismiss for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA").[1]  *See* ECF No. 41. Zorya opposes. *See* ECF No. 47.

## II.    Legal Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court must have subject-matter jurisdiction, "the power to decide the claim before it." *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017). And "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss

---

[1] The Russian Federation styles its motion as a "Motion for Judgment on the Pleadings" under Rule 12(c). *See* ECF No. 41. But in its Memorandum in support, it asks the Court to dismiss the case "because this Court lacks subject-matter jurisdiction under the Foreign Sovereign Immunities Act." ECF No. 41-1 at 7. Because "[o]bjections to subject-matter jurisdiction . . . may be raised at any time," *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011), the Court construes the Motion as one to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3). By contrast, when a court lacks subject-matter jurisdiction over a claim, it has no power to resolve a motion for judgment on the pleadings. *Cf. Auster v. Ghana Airways Ltd.*, 514 F.3d 44, 48 (D.C. Cir. 2008).

the action." Fed. R. Civ. P. 12(h)(3). A plaintiff has the burden to establish the court's subject-matter jurisdiction. *Kokkonen*, 511 U.S. at 377. Suits governed by the FSIA follow that general rule. And so the initial burden is on an FSIA plaintiff to show that a claim fits into one of the FSIA exceptions that allow for subject-matter jurisdiction. *See Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013).

## III.   Analysis

First, the Court resolves the parties' disagreement about what law applies to their dispute: the law in this Circuit—not the Ninth—applies. Second, applying that law, and for the reasons explained below, the Court concludes that it lacks subject-matter jurisdiction over this case because the Russian Federation is immune from suit.

### A.   Choice of Law

At the outset, the parties disagree about what law governs this dispute. The Russian Federation argues that D.C. Circuit precedent governs, because, well, this Court sits within that Circuit. *See* ECF No. 49 at 9–14. Zorya argues that, because the case was initially removed to the Eastern District of California, despite its transfer here under 28 U.S.C. § 1404(a), Ninth Circuit precedent applies. ECF No. 47 at 9–12. The Russian Federation is right that this Court must apply the law of *this* Circuit.

Where a transferred case implicates an "interpretation of federal law," the default rule is that federal courts apply the law of the transferee circuit rather than the law of the transferor circuit. *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1175 (D.C. Cir. 1987) (R.B. Ginsburg, J.), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122 (1989).[2] The rationale

---

[2] Indeed, that is the rule in this Circuit, the Ninth Circuit, and at least six others. *See Newton v. Thomason*, 22 F.3d 1455, 1460 (9th Cir. 1994) ("[W]e are persuaded by the approach taken by

underlying the rule is that "there is no compelling reason to allow [a] plaintiff to capture the most favorable interpretation" of federal law "simply and solely by virtue of his or her right to choose the place to open the fray." *Korean Air Lines*, 829 F.2d at 1175.

This rule dictates that the Court apply D.C. Circuit precedent to resolve the Russian Federation's motion. This case was transferred here, to a court within the D.C. Circuit. And, as the parties agree, the motion turns on an "interpretation of federal law," *In re Korean Air Lines*, 829 F.2d at 1175—the scope of the FSIA's "expropriation exception," 28 U.S.C. § 1605(a)(3), discussed below. Thus, the law of the transferee circuit—the D.C. Circuit—applies. Applying D.C. Circuit precedent is especially appropriate here, given that this Circuit is the "dedicated venue for actions against foreign states." *See Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 332 (D.C. Cir. 2003) (citing 28 U.S.C. § 1391(f)(4)).

There are some situations in which a transferee court applies the law of the transferor court, but this case does not involve one of those situations. For example, this is not a diversity jurisdiction case, in which a federal court, to the extent it must apply state law, applies the law of the state in which it sits. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). In those cases, to preserve the plaintiff's state-law advantages and prevent forum-shopping by the defendant, transferee courts receiving a case under 28 U.S.C. § 1404(a) must apply the state law that a transferor court would have applied. *See Ferens v. John Deere Co.*, 494 U.S. 516, 526 (1990). But those concerns "do not figure in the calculus" in cases like this one that do not involve the Court's diversity jurisdiction and that turn on "interpretation[s] of *federal* law." *In re Korean Air Lines*, 829 F.2d at 1174 (emphasis added). Nor is this the exceedingly rare case in which a federal statute "instructs" courts to

---

the D.C. Circuit in *In re Korean Air Lines Disaster*."); *AER Advisors, Inc. v. Fid. Brokerage Servs., LLC*, 921 F.3d 282, 289 n.5 (1st Cir. 2019) (collecting cases).

"act differently" by codifying a geographically "fractured" state of federal law in a particular area. *Eckstein v. Balcor Film Intervenors*, 8 F.3d 1121, 1127 (7th Cir. 1993). In contrast, the FSIA was enacted to establish clear, uniformly applied rules for when foreign states assert sovereign immunity from suit in federal court. *See CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223, 229 (2025).

### B.    Subject-Matter Jurisdiction

28 U.S.C. § 1330 grants original subject-matter jurisdiction to district courts in "any non-jury civil action against a foreign state . . . as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." 28 U.S.C. § 1330(a). In other words, this Court's subject-matter jurisdiction turns on whether the Russian Federation is entitled to sovereign immunity. The FSIA provides, in turn, that "a foreign state shall be immune from the jurisdiction of the courts of the United States," unless the suit falls within the FSIA's listed exceptions. *See* 28 U.S.C. § 1604.

The "expropriation exception," provides, as relevant here, that a "foreign state shall not be immune" from jurisdiction "in any case" where "rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state." *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 581 U.S. 170, 173 (2017); 28 U.S.C. § 1605(a)(3). This exception is interpreted narrowly. *See de Csepel v. Republic of Hungary*, 165 F.4th 572, 586 (D.C. Cir. 2026). And for foreign state defendants, it is limited by geography. The D.C. Circuit has held that "there is no jurisdiction over a claim against a foreign state under the FSIA's expropriation exception unless the expropriated

property is located in the United States." *Agudas Chasidei Chabad of United States v. Russian Fed'n*, 110 F.4th 242, 252 (D.C. Cir. 2024), *cert. denied*, 223 L.Ed.2d 574 (Jan. 20, 2026).

That geographical limitation alone dooms Zorya, which has not carried its burden of showing that the expropriated property is in the United States. To the contrary, Zorya alleges that "the place of damage is the territory of the sovereign state of Ukraine." ECF No. 1-1 ¶ 18. And nothing in Zorya's briefing suggests otherwise, or more specifically, that its expropriated property is in the United States. In response, Zorya retreats to its argument that "D.C. Circuit law does not govern this dispute." *See* ECF 47 at 18. Regrettably for Zorya, as discussed above, that is not so.[3]

Finally, Zorya also argues that holding the Russian Federation immune from suit would produce a result "fundamentally at odds with the FSIA's purpose of ensuring that foreign states are held accountable for their commercial and property-related acts." ECF No. 47 at 15. That argument is no match for the binding precedent cited above, but in any event it misunderstands the purpose of the FSIA, which was to "clarify[] the rules that judges should apply in resolving sovereign immunity claims" and to eliminate "political participation in the resolution of such claims."

---

[3] Zorya also fails to satisfy the expropriation exception because of the wartime context in which its claim arose. The FSIA provides that a claim only falls under the expropriation exception where "rights in property taken in violation of international law are in issue." 28 U.S.C. § 1605(a)(3). The upshot of this is that a plaintiff "must show that the challenged taking violated the international law of expropriation" as it stood at the time of the FSIA's enactment. *De Csepel*, 165 F.4th at 584. And the D.C. Circuit in *de Csepel v. Republic of Hungary* recently declined to extend this exception to a claim based on a taking by an occupying foreign state during war. *See id.* The Circuit reasoned that "[n]o international authorities of which we have been made aware support plaintiffs' assertions that a nation-state's taking of property . . . from a foreign national during a wartime military occupation . . . violates the international law of expropriation as it stood when the FSIA was enacted." *Id.* at 576. The Court acknowledges that at the time Zorya opposed the Russian Federation's motion, the D.C. Circuit had not issued its opinion in *de Csepel. See* ECF No. 49 at 14. Still, Zorya cites no facts or law suggesting that the alleged confiscation at issue here violated the international law of expropriation at the time of the FSIA's enactment. *De Csepel*, 165 F. 4th at 586.

*Republic of Austria v. Altmann*, 541 U.S. 677, 699 (2004).  And as the D.C. Circuit has acknowledged, sometimes applying those rules can mean that alleged victims of wrongdoing by a foreign state cannot vindicate their claims in the courts of the United States.  *See Agudas Chasidei Chabad*, 110 at 256.  The Court's dismissal of this case for lack of subject-matter jurisdiction is not an endorsement of the Russian Federation's alleged conduct.  It is "a consequence of the statute Congress enacted and the limits it chose to set."  *Id.*

## IV.    Conclusion

For all these reasons, the Court will grant the Russian Federation's motion and dismiss the case for lack of subject-matter jurisdiction.  A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 13, 2026

7